# EXHIBIT D

*Execution*

## PLEDGE AGREEMENT

This PLEDGE AGREEMENT, dated as of April 15, 2015 (as amended, supplemented or otherwise modified from time to time in accordance with the provisions hereof, this "**Agreement**"), made by and between China Branding Global Limited, an exempted company incorporated under the laws of the Cayman Islands (the "**Pledgor**"), in favor of Tony Bobulinski, an individual who resides in Los Angeles, California or his assigns (the "**Secured Party**").

WHEREAS, on the date hereof, the Secured Party has made a loan to the Pledgor in an aggregate principal amount of US$100,000 and may make others up to the amount of $500,000 (collectively, the "**Loan**"), evidenced by that certain Senior Secured Convertible Promissory Note of even date herewith (as amended, supplemented or otherwise modified from time to time, the "**Note**") made by the Pledgor and payable to the order of the Secured Party; and

WHEREAS, this Agreement is given by the Pledgor in favor of the Secured Party to secure the payment and performance of all of the Secured Obligations.

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Definitions</u>.

(a) Unless otherwise specified herein, all references to Sections and Schedules herein are to Sections and Schedules of this Agreement.

(b) Unless otherwise defined herein, terms used herein that are defined in the UCC shall have the meanings assigned to them in the UCC. However, if a term is defined in Article 9 of the UCC differently than in another Article of the UCC, the term has the meaning specified in Article 9.

(c) For purposes of this Agreement, the following terms shall have the following meanings; each capitalized term used but not otherwise defined herein shall have the meaning ascribed to it in the Note:

"**Collateral**" has the meaning set forth in *Section* **2**.

"**Event of Default**" has the meaning set forth in the Note.

"**Secured Obligations**" has the meaning set forth in *Section* **3**.

"**UCC**" means the Uniform Commercial Code as in effect from time to time in the State of California or, when the laws of any other state govern the method or manner of the perfection or enforcement of any security interest in any of the Collateral, the Uniform Commercial Code as in effect from time to time in such state.

2. <u>Pledge</u>. The Pledgor hereby pledges, assigns and grants to the Secured Party as primary obligor and not merely as surety, and hereby creates a continuing first priority lien and security

interest in favor of the Secured Party in and to all of its right, title, benefit and interest in and to the following, wherever located, whether now existing or hereafter from time to time arising or acquired (collectively, the "**Collateral**"):

(a) all assets (including intangible assets) of the Pledgor in the United States, including without limitation its content library, license agreements, and physical assets, such as production equipment.

3. <u>Secured Obligations</u>. The Collateral secures the due and prompt payment and performance of:

(a) the obligations of the Pledgor from time to time arising under the Note, this Agreement or otherwise with respect to the due and prompt payment of the Principal Loan Amount (as defined in the Note) of, and premium, on the Loan, when and as due; and

(b) all other covenants, duties, debts, obligations and liabilities of any kind of the Pledgor under or in respect of the Note and this Agreement (all such obligations, covenants, duties, debts, and liabilities set forth in *Section* **3** being herein collectively called the "**Secured Obligations**").

4. <u>Perfection of Pledge</u>.

(a) The Pledgor shall, from time to time, promptly take all actions as may be reasonably requested by the Secured Party to perfect the security interest of the Secured Party in the Collateral. All of the foregoing shall be at the sole cost and expense of the Secured Party.

(b) The Pledgor hereby irrevocably authorizes the Secured Party at any time and from time to time to file in any relevant jurisdiction any financing statements and amendments thereto that contain the information required by Article 9 of the UCC of each applicable jurisdiction for the filing of any financing statement or amendment relating to the Collateral, without the signature of the Pledgor where permitted by law. The Pledgor agrees to provide all information required by the Secured Party pursuant to this Section promptly to the Secured Party upon reasonable request.

5. <u>Representations and Warranties</u>. The Pledgor represents and warrants as follows:

(a) At the time the Collateral becomes subject to the lien and security interest created by this Agreement, the Pledgor will be the sole, direct, legal and beneficial owner thereof, free and clear of any lien, security interest, encumbrance, claim, option or right of others except for the security interest created by this Agreement.

(b) The pledge of the Collateral pursuant to this Agreement creates a valid first priority security interest in the Collateral, securing the payment and performance when due of the Secured Obligations.

(c) It is duly formed and has full power, authority and legal right to borrow the Loan, pledge the Collateral pursuant to this Agreement and perform its obligations under this Agreement.

2

(d)     Each of this Agreement and the Note has been duly authorized, executed and delivered by the Pledgor and constitutes a legal, valid, enforceable and binding obligation of the Pledgor enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and subject to equitable principles (regardless of whether enforcement is sought in equity or at law).

6.     Further Assurances.

(a)     The Pledgor shall, at its own cost and expense, defend title to the Collateral and the first priority lien and security interest of the Secured Party therein against the claim of any Person claiming against or through the Pledgor and shall maintain and preserve such perfected first priority security interest for so long as this Agreement shall remain in effect.

(b)     The Pledgor agrees that at any time and from time to time, at the expense of the Pledgor, the Pledgor will promptly execute and deliver all further instruments and documents, obtain such agreements from third parties, and take all further action, that may be necessary or desirable in order to perfect and protect any security interest granted hereby or to enable the Secured Party to exercise and enforce its rights and remedies hereunder, under the Note, or under any other agreement related to any Collateral.

(c)     The Pledgor will not, without providing at least 5 days' prior written notice to the Secured Party, change its legal name, identity, type of organization, jurisdiction of organization, corporate structure, location of its chief executive office or its principal place of business or its organizational identification number. The Pledgor will, prior to any change described in the preceding sentence, promptly take all actions necessary to maintain the perfection and priority of the Secured Party's security interest in the Collateral.

7.     Transfers and Other Liens. The Pledgor agrees that it will not sell, offer to sell, dispose of, convey, assign or otherwise transfer, grant any option with respect to, restrict, or grant, create, permit or suffer to exist any mortgage, pledge, Lien, security interest, option, right of first offer, encumbrance or other restriction or limitation of any nature whatsoever on, any of the Collateral or any interest therein except as expressly provided for herein or with the prior written consent of the Secured Party, which may be granted or withheld in its sole and absolute discretion.

8.     Secured Party Appointed Attorney-in-Fact. The Pledgor hereby appoints the Secured Party the Pledgor's attorney-in-fact, with full power and authority in the place and stead of the Pledgor and in the name of the Pledgor or otherwise, from time to time during the continuance of an Event of Default in the Secured Party's discretion to take any action and to execute any instrument which the Secured Party may deem necessary or advisable to accomplish the purposes of the Note and this Agreement. Such appointment, being coupled with an interest, shall be irrevocable, but shall terminate in accordance with the termination of this Agreement pursuant to **Section** **16**. The Pledgor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof.

9.     Secured Party May Perform. If the Pledgor fails to perform any obligation contained in this Agreement, the Secured Party may itself perform, or cause performance of, such obligation, and the reasonable expenses of the Secured Party incurred in connection therewith shall be

3

payable by the Pledgor; <u>provided</u> <u>that</u> the Secured Party shall not be required to perform or discharge any obligation of the Pledgor.

10. <u>Reasonable Care</u>. The Secured Party shall have no duty with respect to the care and preservation of the Collateral beyond the exercise of reasonable care. The Secured Party shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which the Secured Party accords its own property, it being understood that the Secured Party shall not have any responsibility for (a) ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relative to any Collateral, whether or not the Secured Party has or is deemed to have knowledge of such matters, or (b) taking any necessary steps to preserve rights against any parties with respect to any Collateral. Nothing set forth in this Agreement, nor the exercise by the Secured Party of any of the rights and remedies hereunder, shall relieve the Pledgor from the performance of any obligation on the Pledgor's part to be performed or observed in respect of any of the Collateral.

11. <u>Remedies Upon Default</u>. If any Event of Default shall have occurred and be continuing:

(a) The Secured Party may, in accordance with, and to the extent permitted by, applicable law, without any other notice to or demand upon the Pledgor, assert all rights and remedies of a secured party under the UCC or other applicable law, including, without limitation, the right to take possession of, hold, collect, sell, lease, deliver, grant options to purchase or otherwise retain, liquidate, transfer or dispose of all or any portion of the Collateral. If notice prior to disposition of the Collateral or any portion thereof is necessary under applicable law, written notice mailed to the Pledgor at its notice address as provided in **Section 14** hereof at least ten days prior to the date of such disposition shall constitute reasonable notice.

(b) If the Secured Party shall determine to exercise its rights to sell all or any of the Collateral pursuant to this Section, the Pledgor agrees that, upon reasonable request by the Secured Party, the Pledgor will, at its own expense, do or cause to be done all such acts and things as may be necessary to make such sale of the Collateral or any part thereof valid and binding and in compliance with applicable law.

12. <u>No Waiver and Cumulative Remedies</u>. The Secured Party shall not by any act (except by a written instrument pursuant to **Section 13**), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any default or Event of Default. All rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies provided by law.

13. <u>Amendments</u>. None of the terms or provisions of this Agreement may be amended, modified, supplemented, terminated or waived, and no consent to any departure by the Pledgor therefrom shall be effective unless the same shall be in writing and signed by the Secured Party and the Pledgor, and then such amendment, modification, supplement, waiver or consent shall be effective only in the specific instance and for the specific purpose for which made or given.

14. <u>Addresses For Notices</u>. All notices and other communications provided for in this Agreement shall be in writing and shall be given in the manner and become effective as set forth

4

in the Note, and addressed to the respective parties at their addresses as specified in the Note or as to either party at such other address as shall be designated by such party in a written notice to each other party.

15.     Continuing Security Interest; Further Actions. This Agreement shall create a continuing first priority lien and security interest in the Collateral and shall (a) subject to **Section 16**, remain in full force and effect until payment and performance in full of the Secured Obligations, (b) be binding upon the Pledgor, its successors and assigns, and (c) inure to the benefit of the Secured Party and its successors, transferees and assigns; *provided that* the Pledgor may not assign or otherwise transfer any of its rights or obligations under this Agreement without the prior written consent of the Secured Party and the Secured Party may not assign or otherwise transfer any of its rights or obligations under this Agreement without the prior written consent of the Pledgor. Without limiting the generality of the foregoing clause (c), any assignee of the Secured Party's interest in any agreement or document which includes all or any of the Secured Obligations shall, upon assignment in accordance with Section 9.8 of the Note, become vested with all the benefits granted to the Secured Party herein with respect to such Secured Obligations.

16.     Termination; Release. On the date on which all Loans and other Secured Obligations have been paid and performed in full, the Secured Party shall, at the sole expense of the Pledgor, (a) duly assign, transfer and deliver to or at the direction of the Pledgor such of the Collateral as may then remain in the possession of the Secured Party, together with any monies at the time held by the Secured Party hereunder, and (b) execute and deliver to the Pledgor a proper instrument or instruments acknowledging the satisfaction and termination of this Agreement.

17.     GOVERNING LAW. This Agreement and the Note and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement or the Note and the transactions contemplated hereby and thereby shall be governed by, and construed in accordance with, the laws of the State of California. The other provisions of Sections 9.4, 9.5 and 9.6 of the Note are incorporated herein, mutatis mutandis, as if a part hereof.

18.     Counterparts. This Agreement and any amendments, waivers, consents or supplements hereto may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement. This Agreement and the Note constitute the entire contract among the parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto.

*[SIGNATURE PAGE FOLLOWS]*

5

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

China Branding Global Limited, as Pledgor

By: *Adam Roseman*
     BF1FA506B8C4402...

Name:

Title:

Tony Bobulinski, as Secured Party

*[signature]*
9F195104C77F45D...

DocuSign Envelope ID: 56058929-309A-4529-8019-672CC3AABB20

2