Robert W. Cohen (SBN 150310)
Mariko Taenaka (SBN 273895)
**LAW OFFICES OF ROBERT W. COHEN**
A Professional Corporation
1901 Avenue of the Stars, Suite 1900
Los Angeles, California   90067
Telephone: (310) 282-7586
Facsimile: (310) 282-7589
rwc@robertwcohenlaw.com
mt@robertwcohenlaw.com

Attorneys for Plaintiff
CHINA BRANDING GROUP LIMITED
(IN OFFICIAL LIQUIDATION)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHINA BRANDING GROUP LIMITED (IN OFFICIAL LIQUIDATION), by and through its Joint Official Liquidators, Hugh Dickson of Grant Thornton Specialist Services (Cayman), Limited and David Bennett of Grant Thornton Recovery & Reorganisation Limited,<br><br>          Plaintiff,<br><br>     v.<br><br>TONY BOBULINSKI,<br><br>          Defendant. | Case No.  2:20-cv-06759 RGK (JCx)<br><br>**PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  October 19, 2020<br>Time:  9:00 a.m.<br>Courtroom:   850 |

1

# **TABLE OF CONTENTS**

2

Prefatory Statements re Rule 7-3…………………………………………2

I.     INTRODUCTION..………………………………….…………….…..3

II.    THE OPPOSITION DOES NOT RAISE A GENUINE ISSUE OF
       FACT NECESSARY TO DEFEAT SUMMARY
       JUDGMENT…………………………….……………………….....…6

       A. Mr. Bobulinski's Allegations Do Not Constitute Fraud Necessary for
          Nonrecognition………………………………………………..........6

       B.  The Cayman Island Judgment is Not Repugnant to Public Policy ..…9

       C.  The Cayman Islands Proceeding Was Not Contrary to Any
           Agreement……………………………………………………….…..12

       D.  There Was No Due Process Violation………………………………..12

       E.  Summary Judgment Is Not Premature…………………………….…13

III.   CONCLUSION……………………………………………...……......……..14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Cases

*AO Alfa-Bank v. Yakovlev*,
     21 Cal.App.5th 189 (2018)…………………………………………3, 4, 13

*Bank Melli Iran v. Pahlavi*,
     58 F.3d 1406 (9th Cir. 1995)…………………………………………13

*British Midland Airways Ltd. v. Int'l Travel, Inc.*,
     497 F.2d 869 (9th Cir. 1994)…………………………………………10

*CarMax Auto Superstores Cal. LLC v. Hernandez*,
     94 F. Supp. 3d 1078 (C.D. Cal. 2015)………………………………..2

*Clay v. Hilton Worldwide Holdings, Inc.*,
     2020 U.S. Dist. LEXIS 7320, (W.D. Wash. April 27, 2020)……………..5

*In re Deep Vein Thrombosis*,
     356 F.Supp.2d 1055 (N.D. Cal. 2005)………………………………14

*de Fontbrune v. Wofsy*,
     409 F.Supp.3d 823 (N.D. Cal. 2019)………………………………......8

*Estate of Bir*,
     83 Cal.App.2d 256 (1948)……………………………………………10

*Family Home & Fin. Ctr., Inc. v. Fed Home Loan Mortg. Corp.*,
     525 F.3d 822 (9th Cir. 2008)…………………………………………14

*Folex Golf Indus. v. China Shipbuilding Indus.*,
     2013 U.S. Dist. LEXIS 67044 (C.D. Cal. May 9, 2013)……………………..5

*FTC v. J.K. Publs., Inc.*,
     99 F.Supp.2d 1176 (C.D. Cal. 2000)…………………………………14

*Great Lakes Reinsurance UK SE v. Ace Am. Ins. Co.*,
     2018 U.S. Dist. LEXIS 238204 (C.D. Cal. Feb. 8, 2019)……………………3

*Green v. Ancora-Citronelle Corp.*,
     577 F.2d 1380 (9th Cir. 1978)…………………………………………9

*In re Hashim*,
     213 F.3d 1169 (9th Cir. 2000)…………………………………………10

*Hilton v. Guyot*,
     159 U.S. 113 (1895)…………………………………………………4

*Java Oil Ltd. v. Sullivan*,
     168 Cal. App. 4th 1178 (2008)…………………………………..10, 11, 12

*Los Angeles Airways, Inc. v Hughes Tool Co.,*
    95 Cal.App.3d 1 (1979)……………………………………………...8

*Loucks v. Standard Oil Co.,*
    224 N.Y. 99, 110 [120 N.E. 198] (N.Y. 1918)……………………………..10

*Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.,*
    874 F.3d 604 (2017)………………………………………………13, 14

*Milhoux v. Linder,*
    902 P.2d 856 (Colo. Ct. App. 1995)………………………………………..10

*Ohno v. Yasuma,*
    723 F.3d 984, 991 (9th Cir. 2013)……………………………………..3, 10

*Overseas Inns S.A.P.A. v. United States,*
    911 F.2d 1146 (5th Cir. 1990)……………………………………………11

*Pentz v. Kuppinger,*
    31 Cal.App.3d 590 (1973)………………………………………………..10

*Resaipour v. City of Los Angeles,*
    2014 U.S. Dist. LEXIS 199114 (Aug. 26, 2014)……………………………..2

*Samyang Food Co. v. Pneumatic Scale Corp.,*
    2005 U.S. Dist. LEXIS 25374 (N.D. Ohio Oct. 21, 2005)………………..3-4

*S.A.R.L. Louis Feraud Int'l v. Viewfinder, Inc.,*
    489 F.3d 474 (2007)…………………………………………………3

*Smith v. Superior Court,*
    41 Cal.App.4th 1014 (1996)……………………………………………..11

*Society of Lloyd's v. Ashenden,*
    233 F.3d 473 (7th Cir. 2000)…………………………………………3

*Tataragasi v. Tataragasi,*
    477 S.E.2d 239 (N.C. App. 1996)……………………………………….11

*Turner Entertainment Co. v. Degeto Film,*
    25 F.3d 1512 (11th Cir. 1994)…………………………………………3

*United States ex rel. Afflatooni v. Kitsap Physicians Serv.,*
    314 F.3d 995 (9th Cir. 2002)…………………………………………14

*Wong v. Tenneco, Inc.,*
    39 Cal.3d 126 (1985)……………………………………………….10

iii
TABLE OF AUTHOTITIES

**<u>Statutes</u>**

Cal. Code Civ Proc. § 1715……………………………………………….3, 11

Cal. Code Civ Proc. § 1716……………………………………………...4, 5

Cal. Code Civ Proc. § 1722…………………………………………...5

Federal Rule of Civil Procedure 56(d)……………………...…………6, 13, 14

Uniform Foreign-Country Money Judgments Recognition Act……..………*passim*

1   *Prefatory Statement re Rule 7-3*

2        The defendant's opposition papers is right in objecting to plaintiff's failure to

3   comply with the requirements of Local Civil Rule 7-13 before filing this motion.

4   The failure was a result of inadvertence on the part of plaintiff's counsel who

5   apologizes for the fault.  Though defendant is certainly correct that denial of the

6   motion is an available remedy against the violation, plaintiff submits that it would be

7   an inappropriate use of the Court's discretion under these circumstances.  *See*

8   *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D.

9   Cal. 2015) (failure to comply with Local Rule 7-3 "does not automatically require

10  the denial of a party's motion ... particularly where the non-moving party has

11  suffered no apparent prejudice as a result.")  Here, Mr. Bobulinski has filed a full and

12  substantive opposition contesting the summary judgment motion on the merits and,

13  though it notes the violation, it does not complain of any resulting prejudice.  And

14  though plaintiff concededly did not meet and confer prior to filing the motion in the

15  sense the Rule requires, the record does show that the parties did rather extensively

16  exchange views regarding the core contents of the motion.  Weeks before the motion

17  was filed, for example, plaintiff filed a motion for a prejudgment writ of attachment

18  in this case, relying on the same evidence and law presented in the summary

19  judgment motion, which defendant opposes.  Likewise, as the opposition points out,

20  immediately after the motion was filed, counsel exchanged emails regarding the

21  defendant's position that the motion was premature in light of his purported need for

22  discovery and plaintiff's disagreement regarding the relevance of any such discovery.

23  It is plaintiff's counsel's fault that exchanges of views were not conducted earlier as

24  they should have been.  But under the circumstances, it seems highly unlikely that it

25  would have obviated the filing of the same motion.  *See Resaipour v. City of Los*

26  *Angeles*, 2014 U.S. Dist. LEXIS 199114, at *2-5 (Aug. 26, 2014) (court declined to

27  strike or continue motion where failure to comply with Rule 7-13 did not cause

28  prejudice and it appeared that compliance would not have avoided the filing of the

1  motion); *Great Lakes Reinsurance UK SE v. Ace Am. Ins. Co.*, No. 2018 U.S. Dist.

2  LEXIS 238204, at *9 (C.D. Cal. Feb. 8, 2019) (summary judgment motion heard on

3  merits where Rule 7-13 violation caused minimal prejudice.)

4  **I.    INTRODUCTION**

5        The JOLs' moving papers make it clear why summary judgment is now

6  appropriate under the UFMJRA's burden-shifting framework.  The Cayman Island

7  judgment is a money judgment that is final and enforceable under the laws where it

8  was rendered, and is not a judgment for taxes, a fine or other penalty, or a judgment

9  arising from domestic relations.  Cal. Code Civ Proc. § 1715;[1] *Ohno v. Yasuma*, 723

10 F.3d 984, 991 (9th Cir. 2013).  Recognition of the Cayman Island judgment therefore

11 follows as a matter of law *unless* the defendant establishes a ground for

12 nonrecognition upon the grounds set forth in section 1716.  *Id.*; *see AO Alfa-Bank v.*

13 *Yakovlev*, 21 Cal.App.5th 189, 199 (2018) ("Once the initial showing is made, there

14 is a presumption in favor of enforcement, and the party resisting recognition bears

15 the burden of establishing that one of the statute's enumerated bases for non-

16 recognition applies.")

17       This framework is reflective of the recognition act's commitment to simple

18 court procedures suited to a respect for international comity. *Turner Entertainment*

19 *Co. v. Degeto Film*, 25 F.3d 1512, 1519-21 (11th Cir. 1994); s*ee Society of Lloyd's v.*

20 *Ashenden*, 233 F.3d 473, 477 (7th Cir. 2000) (noting the UFCMJRA's purpose of

21 "providing a streamlined, expeditious method for collecting money judgments

22 rendered by courts in other jurisdictions"); s*ee also* Uniform Foreign-Country Money

23 Judgments Recognition Act (the "Uniform Act"), prefatory note, 13 U.L.A. pt. II, at

24 17 (parties "may not relitigate the merits of the underlying dispute that gave rise to

25 the foreign-country judgment"); *Samyang Food Co. v. Pneumatic Scale Corp.*, 2005

26 U.S. Dist. LEXIS 25374 at *22-23 (N.D. Ohio Oct. 21, 2005) ("The core of the

27 _____

[1]      Unless otherwise noted, further statutory references are to the California Code
28 of Civil Procedure.

[Uniform Act] is that a foreign judgment is conclusive between the parties to avoid re-litigation of a case in the same manner as the judgment of a sister state which is entitled to full faith and credit"); *S.A.R.L. Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 479 (2007) ("[w]e cannot second guess the French court's finding that Viewfinder's actions were 'without the necessary authorization.' Viewfinder had the opportunity to dispute the factual basis of plaintiffs' claims in the French court.... ")[2] In its classic rendition, the Supreme Court in *Hilton v. Guyot*, 159 U.S. 113, 202-203 (1895), wrote:

> Where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings . . . under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh as on the mere assertion of the party that the judgment was erroneous in law or in fact.

By his opposition, Mr. Bobulinski claims that he has established grounds for nonrecognition sufficient to escape summary judgment, contending that: (1) the Cayman Island judgment was "based on fraud" within the meaning of section

---

[2]     The decisions of sister states and circuits on their enactments of the Uniform Act are and common law comity principles persuasive authorities in the interpretation of California's UFCMJRA.  Cal. Code Civ Proc. § 1716. ("In applying and construing this uniform act, consideration shall be given to the need to promote uniformity of the law with respect to its subject matter among the states that enact it"); *AO Alfa-Bank v. Yakovlev, supra,* 21 Cal.App.5th at 199.

1  1716(c)(1)(B)—allegedly because the judgment was tainted by false testimony and

2  premised in China Branding's "sham liquidation" and "manufactured" inability to

3  pay its debts; (2) that the judgment is repugnant to public policy under section

4  1716(c)(1)(C), again because it was purportedly based upon false representations and

5  because the cost orders "unduly penalize him" for asserting his rights as a creditor in

6  a liquidation; (3) that the judgment is unenforceable under section 1716(c)(1)(D)

7  because the Cayman Island proceedings allegedly violated a forum selection clause

8  in Mr. Bobulinski's agreement with China Branding; and (4) that the Cayman Island

9  judgment "violated due process of law" within the meaning of section 1716(c)(1)(G)

10  because Mr. Bobulinski "was unable to develop a full factual record of the evidence

11  the Court relied on in its decision and was not able to impeach the underpinnings of

12  the Cayman Liquidation."

13        Mr. Bobulinski's claims, however, cannot create a triable issue in this case

14  because none of them amounts to a defense against recognition under the standards

15  employed by the UFCMJRA.  The fraud assertions, even if true, can have no affect

16  on the recognition question because the supposed misrepresentations Mr. Bobulinski

17  points to do not qualify as fraud that "deprived the losing party of an adequate

18  opportunity to prevent its case" as the statute requires.  Section 1716(c)(1)(B).

19  Evidenced by Mr. Bobulinski's own declaration and the Cayman Island judgment

20  itself—which sets out a thoroughgoing analysis in lengthy detail of the same

21  arguments Mr. Bobulinski, his witnesses, his experts, and his counsel presented to

22  the Cayman court—Mr. Bobulinski indisputably *did* present his case there, and his

23  bid to relitigate those matters here, as noted, is impermissible.  *See also Clay v.*

24  *Hilton Worldwide Holdings, Inc.*, 2020 U.S. Dist. LEXIS 7320, at *19-20 (W.D.

25  Wash. April 27, 2020) (collateral estoppel bars relitigation of matters adjudicated by

26  Thai court); *Folex Golf Indus. v. China Shipbuilding Indus.,* 2013 U.S. Dist. LEXIS

27  67044, at *13-14 (C.D. Cal. May 9, 2013) (collateral estoppel applied to Chinese

28  judgment).  And the opposition's remaining arguments fail for similar reasons—the

1   facts asserted do not amount to actual defenses under the UFCMJRA each relies on

2   assertions and legal conclusions that are either belied by the actual record or

3   irrelevant to the statute.

4        Mr. Bobulinski asks that the Court withhold ruling on this motion so that he

5   can first conduct discovery about the Cayman Island lawsuit he prosecuted, and this,

6   he says, might enable him to identify facts supportive of these same purported

7   defenses.  But Federal Rule of Civil Procedure 56(d) requires the nonmovant to show

8   that "for specified reasons, it cannot present facts *essential* to justify its opposition."

9   Again, then, because the "defenses" Mr. Bobulinski asserts *cannot* prevent

10  recognition of the Cayman Island judgment under the UFCMJRA, the discovery he

11  wants cannot be essential to his opposition to the summary judgment motion.  The

12  motion, then, is not premature as Mr. Bobulinski contends.  On the contrary, since it

13  is now clear that Mr. Bobulinski *cannot* establish a cognizable ground for

14  nonrecognition, plaintiff is now entitled to summary judgment by operation of law.

15       For these reasons, and as more fully explained below, summary judgment

16  should now be granted.

17  **II.    THE OPPOSITION DOES NOT RAISE A GENUINE ISSUE OF FACT**

18  **        NECESSARY TO DEFEAT SUMMARY JUDGMENT**

19       **A.    Mr. Bobulinski's Allegations Do Not Constitute Fraud Necessary**

20  **           For Nonrecognition**

21       As the moving papers explain—and as remains undisputed now—the Cayman

22  Island judgment awards money to the JOLs as compensation to them under Cayman

23  law for the fees they expended in contesting Mr. Bobulinski's appeal of the JOLs'

24  determination regarding the proof of debt he submitted in the liquidation proceeding.

25  The JOLs allowed his claim with respect to the principal amount of his loan to China

26  Branding but rejected his claimed status as a secured creditor and his asserted

27  entitlement to a multiplier.  That determination was upheld in Mr. Bobulinski's

28  appeal to the Cayman Island Grand Court.

1    Much of the opposition brief is devoted to castigating the Cayman Island court
2  for its disagreement with Mr. Bobulinski about the facts and law governing his
3  claims, and many pages are given over to reiterating the same facts and contentions
4  he presented and lost in that court.  In light of the prohibition against relitigation of
5  these matters, it is hard to see the relevance of the opposition's profusion of issues
6  that Mr. Bobulinski thinks the Cayman Island court got wrong.  Nonetheless, with
7  respect to his instant fraud allegations, he singles out two purported instances,
8  asserting at page 16 that:

9              Roseman [i.e., China Branding's former president who, Mr.
10             Bobulinski says, lied to him as a means to induce his loans
11             to China Branding] did not fully inform the Cayman court
12             of the true nature and effect of CBG's agreements with
13             Bobulinski.  More importantly, the initiation of the Cayman
14             Liquidation also appeared to be premised in a sham Event
15             of Default.  Based in part upon its reliance on CBG's (and
16             potential [sic] others') extrinsic fraud as to the triggering
17             events behind the liquidation, the Cayman court did not
18             sufficiently consider these issues or allow for meaningful
19             discovery on them.

20  Opp'n p. 16.  Interspersed throughout his brief, Mr. Bobulinski reiterates these
21  claims, accusing Mr. Roseman of fraudulently inducing Mr. Bobulinski's execution
22  of the note and pledge agreements, that Mr. Roseman gave false testimony in the
23  Cayman Island litigation about his many promises, and contending that China
24  Branding's liquidation was a sham because China Branding wasn't "really"
25  bankrupt.  See, e.g., p. 5, asserting that "CBG sent out false and/or fraudulent
26  correspondence to its Noteholders regarding its inability to pay its outstanding debts,
27  despite the fact that the Promissory Notes signed by Bobulinski and other
28  Noteholders did not have any debts due."

1        These allegations, Mr. Bobulinski says, amount to "extrinsic fraud" and,

2   likening this case to *de Fontbrune v. Wofsy*, 409 F.Supp.3d 823 (N.D. Cal. 2019),

3   argues that they may prevent recognition under the UFCMJRA.  But this case is

4   nothing like *de Fontbrune*.  Though the opposition chooses not to mention it, the

5   foreign judgment at issue in *de Fontbrune* arose from a *default* proceeding in France

6   conducted in the defendant's absence—the defendants were not served with the

7   summons and complaint and were unaware of the hearing—and the fraud consisted

8   in the plaintiff's failure to inform the French court that they no longer owned the

9   copyrights they were suing upon, meaning that they lacked standing to sue under

10  French law.  *Id.* at 829-30.  In opposition to the plaintiff's summary judgment motion

11  in their UFCMJRA action that followed, then, the defendants presented evidence that

12  the plaintiff intentionally misled the French court about its very jurisdiction; and

13  since the defendants were unavailable to contest the subterfuge, the court found they

14  demonstrated a genuine issue of fact as to whether the judgment "was obtained by

15  fraud that deprived the losing party of an adequate opportunity to present its case"

16  sufficient to defeat summary judgment.  *Id.;* section 1716(c)(1)(B).

17       In its discussion of the "fraud" basis for nonrecognition, the *de Fontbrune*

18  court cited the comments to the Uniform Act, noting that "only extrinsic fraud—that

19  is 'conduct of the prevailing party that deprived the losing party of an adequate

20  opportunity to present its case'—provides a ground for nonrecognition."  *de*

21  *Fontbrune* at 839, citing the Uniform Act Comments, §4 comment 7, noting as an

22  example of extrinsic fraud a plaintiff's "'obtain[ing] a default judgment against the

23  defendant based on a forged confession of judgment.'"  *Id.*  "'Extrinsic fraud should

24  be distinguished from intrinsic fraud, such as false testimony of a witness or

25  admission of a forged document into evidence during the foreign proceeding;'

26  intrinsic evidence is not a basis for nonrecognition."  *Id.*; *see Los Angeles Airways,*

27  *Inc. v Hughes Tool Co.*, 95 Cal.App.3d 1, 8-9 (1979) ("the test of extrinsic fraud is

28  fraud that prevented a fair adversary hearing by deliberately keeping a party ignorant

of the action or otherwise fraudulent preventing his claim or defense.  Normally, if the party was award of the proceeding, the fraud is intrinsic, but if the fraud totally precluded his raising a claim or defense it will be grounds for relief.")  "In order to be considered extrinsic fraud, the alleged fraud must be such that it prevents a party from having an opportunity to present his claim or defense in court . . . or deprives a party of his right to a day in court."  *Green v. Ancora-Citronelle Corp*., 577 F.2d 1380, 1384 (9th Cir. 1978).

Mr. Bobulinski's allegations do not help him, of course, because the "fraud" he describes is plainly of the intrinsic variety and cannot serve as a predicate for nonrecognition.  Far from being *deprived* of an adequate opportunity to present his case, it was Mr. Bobulinski himself who brought and prosecuted the Cayman Island appeal, and the record puts it beyond cavil that he *did* press a full and vigorous litigation, complete with cross-examination, counsel, and experts of his choosing. He indisputably received a full, thoughtful, and attentive hearing on the very same issues he now attempts to raise here, which the Cayman Island court expressly considered and rejected.  See, for example, among many others, paragraph 167 of the judgment:  "With all due respect to Mr Bobulinski, who is a professional investor and business person, it is highly improbable that Mr Bobulinski could not have been aware of the Company's financial difficulties, given *inter alia* the Company's need to borrow further funds from him.  The Court notes that this is a matter of relevance to Mr Bobulinki's realism and reliability as a witness rather than to his integrity as such."  (Kendall Decl., (Cayman Judgment) ¶ 167.  See also, e.g., ¶¶ 14, 15, 16, 167, 178, 179, 180, 181, 183, 194, 195, 199, 200.)  These findings are binding upon Mr. Bobulinski here; he plainly had his day in court and he may not second guess those rulings now.

**B.   The Cayman Island Judgment Is Not Repugnant To Public Policy**

"California courts have set a high bar for repugnancy under the Uniform Act. The standard . . . measures not simply whether the foreign judgment or cause of

action is contrary to our public policy, but whether either is 'so offensive to our public policy as to be 'prejudicial to recognized standards of morality and to the general interests of the citizens.' [citations]." *Ohno v. Yasuma,* 723 F.3d 984, 991, 1002 (9th Cir. 2013) (citing *Java Oil Ltd. v. Sullivan*, 168 Cal. App. 4th 1178, 1189-92 (2008), *Wong v. Tenneco, Inc.*, 39 Cal.3d 126, 135-36 (1985).) The public policy exception does not apply unless a foreign-country judgment or law on which it is based is "so antagonistic to California [or federal] public policy interests as to preclude the extension of comity." *Ohno,* 723 F.3d at 991.

In Justice Cardozo's memorable formulation, "[w]e are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home." *Loucks v. Standard Oil Co.*, 224 N.Y. 99, 110 [120 N.E. 198] (N.Y. 1918). Thus, an American court should only "refuse to enforce a foreign right" where to do so would "violate some fundamental principle of justice, some prevalent conception of good morals, some deep rooted tradition of the common weal." *Id.* at 111. Recognition, then, may not be denied "unless a foreign country's judgments are the result of outrageous departures from our own notions of civilized jurisprudence." *British Midland Airways Ltd. v. Int'l Travel, Inc.*, 497 F.2d 869, 871 (9th Cir. 1994). *See, e.g., In re Hashim,* 213 F.3d 1169, 1172 (9th Cir. 2000) (reversing bankruptcy court's refusal to enforce English court's award of $10 million in costs against debtors whose assets had been frozen by Saddam Hussein); *Milhoux v. Linder*, 902 P.2d 856, 861-862 (Colo. Ct. App. 1995) (recognizing Belgian judgment based upon 30-year statute of limitations); *Estate of Bir*, 83 Cal.App.2d 256 (1948) (in context of intestate succession, India's law permitting polygamy applied under principles of comity.)

In contrast, true repugnance is found where real world enforcement would offend our sense of what is just and decent. *See Pentz v. Kuppinger*, 31 Cal.App.3d 590, 597 (1973) (refusing to recognize Mexican judgment requiring payment of alimony after remarriage because it was "manifestly contrary to California public

policy"); *Overseas Inns S.A.P.A. v. United States*, 911 F.2d 1146, 1149 (5th Cir. 1990) (refusing to recognize Luxembourg bankruptcy judgment purporting to discharge U.S. income tax debt—"inexpugnable public policy that favors payment of lawfully owed federal income taxes"); *Tataragasi v. Tataragasi*, 477 S.E.2d 239, 246 (N.C. App. 1996) ("The Turkish court's order did not discuss the best interests of the children, but instead talked about . . . the importance of Islam, circumcision and defendant's place in society"); *Smith v. Superior Court*, 41 Cal.App.4th 1014, 1025 (1996) (refusing to enforce Michigan injunction against expert's testifying about GM vehicles as it "blatantly and irreconcilably conflicts with our fundamental public policy against the suppression of evidence.")

Mr. Bobulinski claims repugnancy here because he "intends to discover and prove that the Cayman Judgment is based on CBG's false representations as to the nature of Bobulinski's creditor status and the false pretenses upon which the liquidation was based." Opp'n p. 17. He also thinks it's repugnant because the Cayman Island court disagreed with him about his contractual entitlements under Cayman law. *Id.* But these contentions, of course, cannot avail him for the reasons already explained and even if he could raise them now, they are manifestly insufficient to establish repugnancy under these standards.

He goes on to claim that public policy is offended by the Cayman Island judgment's departure from the traditional American Rule, by which a party ordinarily bears its own attorney's fees; he says recognition is precluded because an attorney fee award constitutes a "fine or other penalty" prohibited by section 1715(b)(2). But as the moving papers indicated, the attorney fee award is not a penalty under the UFCMJRA. *Java Oil, Ltd. v. Sullivan*, 168 Cal.App.4th 1178, 1187 (2008). The opposition tries to distinguish *Java Oil*, claiming that it "allowed the domestication of a fee award based upon a malicious and/or fraudulent filing, [while] the awards here punish Bobulinski merely for objecting to a sham liquidation and asserting his rights as a creditor." Opp'n, p. 18. But that ignores the point of the

1   case.  Instead, a fee award like this one, compensating the prevailing party for costs
2   expended defending the lawsuit, is not "penal within the rules of private international
3   law.  A statute penal in that sense is one that awards a penalty to the state, or to a
4   public officer in its behalf, or to a member of the public, suing in the interest of the
5   whole community to redress a public wrong. . . .  The purpose must be, not
6   reparation to one aggrieved, but vindication of the public justice . . .' [Citations.]"
7   *Java Oil*, at 1187.  Mr. Bobulinski complains the fees "punished" him for his
8   supposed pursuit of his rights, but like the defendant in *Java Oil*, he "was not being
9   punished for an offense against the public but instead was ordered to compensate
10  respondents for the fees they incurred in defending a lawsuit."  *Id.* at 1188.  "No
11  mandatory fine, sanction, or multiplier was imposed.  Thus, although Sullivan views
12  the attorney fee award as a penalty for groundless litigation, it was not a penalty
13  within the meaning of the UFMJRA."  *Id.* at 188-89.  And though the English Rule is
14  not the American Rule, its recognition is not contrary to public policy.  "That there is
15  a difference in the law of the two countries does not show that the British law applied
16  is repugnant to public policy."  *Id.* at 1192.

### C.   The Cayman Islands Proceeding Was Not Contrary to Any Agreement

Mr. Bobulinski's contention here, based upon the forum selection clause in his agreement with China Branding, does not appear to be serious.  The judgment at issue here, of course, arose from the suit Mr. Bobulinski initiated himself against the JOLs with respect to liquidation proceedings in the Cayman Islands; the forum selection provision in his agreement with China Branding was not implicated.

### D.   There Was No Due Process Violation

Mr. Bobulinski finally contends the Cayan Islands Judgment violated his due process rights but the reasons he gives are little more than a reiteration of his "fraud" claims and they thus fail for the same reasons.  He adds that he "was unable to develop a full factual record of the evidence the Court relied on in its decision

1  (Opp'n, p. 20), and complains in his declaration that he "attempted to conduce
2  discovery typical to that available to litigants in U.S. Courts" but was denied that
3  opportunity.  Bobulinski Decl., ¶17.  But these claims, even if it were true, could not
4  amount to a due process violation under the UFCMJRA.  Nonrecognition on due
5  process grounds is "reserved for challenges as to the integrity or fundamental
6  fairness with regard to the particular proceeding leading to the foreign county
7  judgment." *See, e.g., Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1413 (9th Cir. 1995)
8  (evidence established that defendant "could not expect fair treatment from the courts
9  of Iran, could not personally appear before those courts, could not obtain proper
10 representation, and not obtain local witnesses.)  These are the sorts of deprivations
11 the UFCMJRA when it speaks of due process violations.
12      But "[f]oreign courts are not required to adopt 'every jot and title of American
13 due process.'  [Citation.]"  *AO Alfa-Bank v. Yakovlev, supra,* 21 Cal.App.5th 189,
14 215.  Foreign nations "[are] not bound by our notions of due process and we do not
15 insist on the additional niceties of domestic jurisprudence in deciding whether to
16 enforce a [foreign] judgment." *Id.* at 215-16.  (recognizing Russian judgment under
17 the UFCMJRA.)  Mr. Bobulinski's claimed inability, then, to conduct the American
18 style discovery he says he wanted, then, is plainly a far cry from a cognizable due
19 process violation.  On the contrary, "'[t]he right to pretrial discovery is not a part of
20 the U.S. concept of due process, let alone of international due process.'  [Citation.]"
21 *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604,
22 617 (affirming summary judgment in UFCMJRA action on Dutch judgment
23 notwithstanding the defendant's claim of a due process violation in its inability to
24 conduct full discovery in Holland.)
25      **E.    Summary Judgment Is Not Premature**
26      A continuance or denial of summary judgment would not be appropriate here
27 because Mr. Bobulinski has not pointed to facts he hopes to find that would be
28 "essential to justify [his] opposition."  Rule 56(d).  In his 20-page opposition to

plaintiff's motion, Mr. Bobulinski alleged a wide variety of grounds that he says would permit nonrecognition under the UGCMJRA; but as demonstrated, those grounds *cannot* entail nonrecognition as a matter of law, meaning that even if he could discover further facts supportive of his contentions, they could not help him. Mr. Bobulinski was, after all, intimately familiar with the Cayman Island litigation he prosecuted; if he really had been denied due process or suffered other deprivations sufficient to enable him to establish a basis for nonrecognition, glaring examples should be readily identifiable by him.

To prevail on a request for additional discovery under Rule 56(d), a party must show that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed Home Loan Mortg. Corp.,* 525 F.3d 822, 827 (9th Cir. 2008). The request is properly denied if the information appears to be either only "generically relevant" (*Id.*) or that its basis is speculation. *In re Deep Vein Thrombosis*, 356 F.Supp.2d 1055, 1065 (N.D. Cal. 2005). The requesting party must point to specific information that would actually defeat summary judgment. *United States ex rel. Afflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002). A continuance is inappropriate if the information sought is already available to the moving party. *FTC v. J.K. Publs., Inc.*, 99 F.Supp.2d 1176, 1199-1200 (C.D. Cal. 2000) (continuance should not be granted to litigant who has personal knowledge of facts about which she seeks discovery.)

The court's concluding remarks in *Midbrook Flowerbulbs, supra,* 874 F.3d at 618, 620, rejecting the defendant's bid to conduct discovery into the same topics it wanted to discover in the Dutch proceedings are particularly apt here: "this discovery would not 'preclude summary judgment,' because it had no bearing on whether the proceedings in the Dutch courts were 'compatible with the requirements of due process of law' under [Washington's UFCMJRA]. Rather, Holland America sought

1 this discovery because it would 'conclusively determine whether Midbook was in
2 fact entitled to any judgment whatsoever in the Dutch proceedings.' Because this
3 fact was not relevant—let alone 'essential'—to the issues raised by Midbook's
4 motion for summary judgment, the district court did not abuse its discretion in
5 denying Holland America's request for additional discovery." The discovery Mr.
6 Bobulinski likewise cannot be relevant, and his request should be likewise denied.

**III.    CONCLUSION**

Since there is accordingly no genuine issue of fact suitable for trial in this
case, and because plaintiff is entitled to judgment as a matter of law, summary
judgment should now be granted.

Respectfully submitted.

DATED: October 5, 2020                    LAW OFFICES OF ROBERT W. COHEN
                                          A Professional Corporation

                                          By   /s/   Robert W. Cohen
                                             Robert W. Cohen
                                             Mariko Taenaka
                                             Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 5, 2020 a copy of the foregoing document was filed electronically via the Court's CM/ECF system. Pursuant to Local Rule 5-3.2.1 notice of filing will be served on all parties by operation of the Court's CM/ECF system, and parties may access this filing through the Court's CM/ECF system.

/s/ Mariko Taenaka
Mariko Taenaka