# EXHIBIT C

*Execution*

# SENIOR SECURED CONVERTIBLE PROMISSORY NOTE

## April ___, 2015

FOR VALUE RECEIVED, and subject to the terms and conditions set forth herein, China Branding Group Limited, an exempted company incorporated under the laws of the Cayman Islands (the "**Borrower**"), hereby promises to pay to the order of Tony Bobulinski, an individual who resides ___Xxx_____ or his assigns (the "**Noteholder**", and together with the Borrower, the "**Parties**"), the principal amount of the Principal Loan Amount, up to US$500,000 (the "**Loan**"), subject to terms and conditions as provided in this Senior Secured Convertible Promissory Note (the "**Note**").

WHEREAS, the Noteholder agreed to loan up to US$500,000 to the Borrower pursuant to the terms and conditions of this Note.

NOW, THEREFORE, in consideration of the foregoing premises and the respective representations, warranties, covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Borrower hereby agrees as follows:

1. <u>Definitions</u>. Certain capitalized terms used herein shall have the meanings set forth in this **Section 1**.

"**Borrower**" has the meaning set forth in the introductory paragraph.

"**Business Day**" means a day other than a Saturday, Sunday or other day on which commercial banks in the Cayman Islands and the State of California are authorized or required by Law to close.

"**Default**" means any of the events specified in **Section 7** which constitutes an Event of Default or which, upon the giving of notice, the lapse of time, or both pursuant to **Section 7** would, unless cured or waived, become an Event of Default.

"**Event of Default**" has the meaning set forth in **Section 7**.

"**Governmental Authority**" means the government of any nation or any political subdivision thereof, whether at the national, state, territorial, provincial, municipal or any other level, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of, or pertaining to, government.

"**Indebtedness**" of the Borrower, means all (a) indebtedness for borrowed money; (b) obligations for the deferred purchase price of property or services, except trade payables arising in the ordinary course of business; (c) obligations evidenced by notes, bonds, debentures or other similar instruments; and (d) obligations as lessee under capital leases.

"**Law**" as to any Person, means any law (including common law), statute, ordinance, treaty, rule, regulation, policy or requirement of any Governmental Authority and authoritative

interpretations thereon, whether now or hereafter in effect, in each case, applicable to or binding on such Person or any of its assets or properties or to which such Person or any of its assets or properties is subject.

"**Lien**" means any mortgage, pledge, hypothecation, encumbrance, lien (statutory or other), charge or other security interest.

"**Liquidity Event**" means (a) any consolidation, amalgamation, scheme of arrangement or merger of the Borrower with or into any other Person or other reorganization in which the shareholders of the Borrower immediately prior to such consolidation, amalgamation, merger, scheme of arrangement or reorganization own less than fifty percent (50%) of the Borrower's voting power in the aggregate immediately after such consolidation, merger, amalgamation, scheme of arrangement or reorganization, or any transaction or series of related transactions to which the Borrower is a party in which in excess of fifty percent (50%) of the Borrower's voting power is transferred provided that the foregoing shall not include a bona fide equity financing of the Borrower; or (b) a sale, transfer, lease or other disposition of all or substantially all of the assets of the Borrower (or any series of related transactions resulting in such sale, transfer, lease or other disposition of all or substantially all of the assets of the Borrower).

"**Loan**" has the meaning set forth in the introductory paragraph.

"**Material Adverse Effect**" means a material adverse effect on (a) the business, assets, properties, liabilities (actual or contingent), operations or condition (financial or otherwise) of the Borrower; (b) the validity or enforceability of the Note or Pledge Agreement; (c) the perfection or priority of any Lien purported to be created under the Pledge Agreement; (d) the rights or remedies of the Noteholder hereunder or under the Pledge Agreement; or (e) the Borrower's ability to perform any of its material obligations hereunder or under the Pledge Agreement.

"**Maturity Date**" means the one (1) year anniversary of the date hereof.

"**Note**" has the meaning set forth in the introductory paragraph.

"**Noteholder**" has the meaning set forth in the introductory paragraph.

"**Order**" as to any Person, means any order, decree, judgment, writ, injunction, settlement agreement, requirement or determination of an arbitrator or a court or other Governmental Authority, in each case, applicable to or binding on such Person or any of its assets or properties or to which such Person or any of its assets or properties is subject.

"**Parties**" has the meaning set forth in the introductory paragraph.

"**Person**" means any individual, corporation, limited liability company, trust, joint venture, association, company, limited or general partnership, unincorporated organization, Governmental Authority or other entity.

"**Pledge Agreement**" means the Pledge Agreement, dated as of the date hereof, by and between the Borrower and Noteholder, as the same may be amended, restated, supplemented or otherwise modified from time to time in accordance with its terms.

2. Drawdowns.   The Noteholder shall pay to the Borrower US$100,000 (the "**Initial Drawdown**") by wire transfer of a bank account designated by the Borrower (the "**Designated Account**") of immediately available USD funds within two (2) Business Days after the date hereof. Thereafter, the Borrower shall request each additional drawdown of the Loan in writing, and the Noteholder shall pay the requested amount (each such payment, a "**Subsequent Drawdown**," and together with the Initial Drawdown in the aggregate, the "**Principal Loan Amount**") to the Borrower by wire transfer to the Designated Account of immediately available USD funds within two (2) Business Days after the date the Noteholder receives the request.

3. Conversion; Fractional Shares.

3.1 Conversion Upon Liquidity Event. Upon the consummation of a Liquidity Event on or before the Maturity Date, the Principal Loan Amount shall automatically convert into a new class of preferred equity securities (the "**New Equity Securities**") of the Borrower at a pre-money as-converted, fully-diluted valuation of the Borrower of US$39 million based on using the treasury method to account for all authorized and issued securities as of the date of the closing. Such New Equity Securities shall be entitled to an initial liquidation preference, prior and in preference to any distributions to any holder of equity securities, in the amount of two and one half (2.5) times the aggregate Principal Loan Amount. Thereafter, such New Equity Securities shall be entitled to participate with the other equity securities of the Borrower in any remaining distributions in accordance with the charter documents of the Borrower then in effect based on the as-converted ownership of the Borrower.

3.2 Payment Upon Financing. If a bona fide equity financing of the Borrower is consummated on or before the Maturity Date, then the Borrower shall pay the Noteholder in cash two and one half (2.5) times the amount of the Principal Loan Amount on or prior to the Maturity Date. For the avoidance of doubt, the conversion of a loan (whether originally in the form of a convertible loan or otherwise) into equity shall not constitute a "bona fide equity financing" for the purposes of this Note.

3.3 Conversion after Maturity. If neither (a) a Liquidity Event nor (b) a bona fide equity financing of the Borrower has been consummated on or before the Maturity Date, then the Principal Loan Amount shall convert into equity securities of the Borrower on terms and conditions to be negotiated in good faith by the Borrower and the Noteholder. In addition, upon the Maturity Date, each holder of a promissory note payable by the Company and issued on or after the date hereof, including the Noteholder (collectively, the "**Creditors**"), shall automatically and without further action by any Creditor be deemed to constitute a committee (the "**Creditors' Committee**"), to which certain rights relating to key corporate and operational actions by the Company and other rights to be negotiated between the Company and the Creditors shall be granted by the Company.

3.4 Mechanics and Effect of Conversion. No fractional shares of the Borrower's capital stock will be issued upon conversion of this Note. In lieu of any fractional share to which the

Noteholder would otherwise be entitled, the Borrower will pay to the Noteholder in cash the amount of the unconverted principal balance of this Note that would otherwise be converted into such fractional share. Upon conversion of this Note pursuant to this **Section 3**, the Noteholder shall surrender this Note, duly endorsed, at the principal offices of the Borrower. The Borrower will, as soon as practicable thereafter, issue and deliver to the Noteholder, at such principal office, a certificate or certificates for the number of shares to which the Noteholder is entitled upon such conversion, together with any other securities and property to which the Noteholder is entitled upon such conversion under the terms of this Note, including a check payable to the Noteholder for any cash amounts payable as described herein. Upon conversion of this Note, the Borrower will be forever released from all of its obligations and liabilities under this Note.

4. Pledge Agreement.

The Borrower's performance of its obligations hereunder is secured by a first priority security interest in the collateral specified in the Pledge Agreement.

5. Interest.

The outstanding Principal Loan Amount hereunder shall not bear interest.

6. Representations and Warranties. The Borrower hereby represents and warrants to the Noteholder on the date hereof as follows:

6.1   Existence; Compliance With Laws. The Borrower is (a) a limited liability company duly formed, validly existing and in good standing under the laws of the Cayman Islands and has the requisite power and authority, and the legal right, to own, lease and operate its properties and assets and to conduct its business as it is now being conducted, and (b) in compliance with all Laws and Orders except to the extent that the failure to comply therewith would not, in the aggregate, reasonably be expected to have a Material Adverse Effect.

6.2   Power and Authority. The Borrower has the power and authority, and the legal right, to execute and deliver this Note and the Pledge Agreement and to perform its obligations hereunder and thereunder.

6.3   Enforceability. Each of the Note and the Pledge Agreement is a valid, legal and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and by general equitable principles (whether enforcement is sought by proceedings in equity or at law).

6.4   Ranking. As of the date hereof, the Borrower has not permitted to exist or otherwise become directly or indirectly liable with respect to, any Indebtedness that ranks senior to the Loan. As of the date hereof, the Borrower has not permitted to exist any security interest which is senior to the security interest granted to Noteholder with respect to the Collateral (as defined in the Pledge Agreement).

7. Affirmative Covenants. Until all amounts outstanding in this Note have been converted in full, the Borrower shall:

DocuSign Envelope ID: 42E41824-F5EF-4D8C-BF68-2F873D9ABCC6

7.1 Financial Reporting. Deliver to the Noteholder as soon as available, but in any event within 60 days after the end of each fiscal quarter of the Borrower (commencing with the fiscal quarter ended June 30, 2015), a consolidated balance sheet of the Borrower and its subsidiaries as at the end of such fiscal quarter, and the related consolidated statements of operations and cash flows for such fiscal quarter;

7.2 Use of Proceeds. Use the proceeds of the Loan received by Borrower from the Noteholder for (a) long-term license fees for major events and the associated programming and promotional costs, (b) working capital to support expansion of the sales force in China, and (c) other general working capital and operating capital purposes.

8. Events of Default. The occurrence and continuance of any of the following shall constitute an Event of Default hereunder:

8.1 Failure to Pay. The Borrower fails to pay (a) any principal amount of the Loan when due or (b) any other amount when due and such failure continues for thirty (30) Business Days after written notice has been sent to the Borrower.

8.2 Breach of Covenants. The Borrower fails to observe or perform any material covenant, obligation, condition or agreement contained in this Note or the Pledge Agreement other than those specified **Section 8.1** and such failure continues for 30 days after written notice to the Borrower; *provided that* an Event of Default shall not be triggered if the Borrower disputes the alleged failures in the Noteholder's written notice to the Borrower, and such alleged failures shall not constitute an Event of Default unless and until the dispute has been resolved in the Noteholder's favor in accordance with the procedures set forth in this Note.

8.3 Bankruptcy.

(a) the Borrower commences any case, proceeding or other action (i) under any existing or future Law relating to bankruptcy, insolvency, reorganization, or other relief of debtors, seeking to have an order for relief entered with respect to it, or seeking to adjudicate it as bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to it or its debts or (ii) seeking appointment of a receiver, trustee, custodian, conservator or other similar official for it or for all or any substantial part of its assets, or the Borrower makes a general assignment for the benefit of its creditors;

(b) there is commenced against the Borrower any case, proceeding or other action of a nature referred to in **Section 8.3(a)** above which (i) results in the entry of an order for relief or any such adjudication or appointment or (ii) remains undismissed, undischarged or unbonded for a period of 60 days;

(c) there is commenced against the Borrower any case, proceeding or other action seeking issuance of a warrant of attachment, execution or similar process against all or any substantial part of its assets which results in the entry of an order for any such relief which has not been vacated, discharged, or stayed or bonded pending appeal within 60 days from the entry thereof;

5

(d) the Borrower takes any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the acts set forth in **Section 8.3(a)**, **Section 8.3(b)** or **Section 8.3(c)** above; or

(e) the Borrower is generally not, or shall be unable to, or admits in writing its inability to, pay its debts as they become due.

9. Remedies. Upon the occurrence of any Event of Default and at any time thereafter during the continuance of such Event of Default, the Noteholder may at its option, by written notice to the Borrower (a) declare the entire principal amount of this Note immediately due and payable; and (b) exercise any or all of its rights, powers or remedies under the Pledge Agreement or applicable Law; provided, however that, if an Event of Default described in **Section 8.3** shall occur, the Principal Loan Amount shall become immediately due and payable without any notice, declaration or other act on the part of the Noteholder. In addition to any amount due hereunder, upon the occurrence of an Event of Default, the Borrower shall reimburse the Noteholder for its reasonable out-of-pocket costs of collections (including reasonable fees of its counsel).

10. Miscellaneous.

10.1 Notices.

(a) All notices, requests or other communications required or permitted to be delivered hereunder shall be delivered in writing, in each case to the address specified below or to such other address as such Party may from time to time specify in writing in compliance with this provision:

    (i) If to the Borrower:

        China Branding Group Limited
        [_____]
        Attention:
        Email:
        Facsimile:

    with a copy (which shall not constitute notice) to:

        Sheppard Mullin Richter & Hampton LLP
        26th Floor, Wheelock Square
        1717 Nanjing Road West
        Jing An District
        Attention: Don Williams
        Email: dwilliams@sheppardmullin.com
        Facsimile: +8621 2321 6001

    (ii) If to the Noteholder:

> Tony Bobulinski
> Email: Tonyb@nazent.com
> Facsimile: Xxx

(b) Notices if (i) mailed by certified or registered mail or sent by hand or overnight courier service shall be deemed to have been given when received; (ii) sent by facsimile during the recipient's normal business hours shall be deemed to have been given when sent (and if sent after normal business hours shall be deemed to have been given at the opening of the recipient's business on the next business day); and (iii) sent by e-mail shall be deemed received upon the sender's receipt of an acknowledgment from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgment).

10.2 Expenses. The Borrower and the Noteholder shall each be responsible for the fees and expenses incurred by or on behalf of each such party in connection with the transactions contemplated by this Note and the Pledge Agreement.

10.3 Governing Law. This Note, the Pledge Agreement and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Note, the Pledge Agreement and the transactions contemplated hereby and thereby shall be governed by the Laws of the State of California.

10.4 Submission to Jurisdiction.

(a) The Borrower hereby irrevocably and unconditionally (i) agrees that any legal action, suit or proceeding arising out of or relating to this Note or the Pledge Agreement may be brought in the courts of the State of California or of the United States of America for the Southern District of California and (ii) submits to the exclusive jurisdiction of any such court in any such action, suit or proceeding. Final judgment against the Borrower in any action, suit or proceeding shall be conclusive and may be enforced in any other jurisdiction by suit on the judgment.

(b) Nothing in this **Section 10.4** shall affect the right of the Noteholder to (i) commence legal proceedings or otherwise sue the Borrower in any other court having jurisdiction over the Borrower or (ii) serve process upon the Borrower in any manner authorized by the laws of any such jurisdiction.

10.5 Venue. The Borrower irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Note or the Pledge Agreement in any court referred to in **Section 10.4** and the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

10.6 Waiver of Jury Trial. THE BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS NOTE, THE PLEDGE AGREEMENT OR THE

TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

10.7 <u>Counterparts; Integration; Effectiveness</u>. This Note, the Pledge Agreement and any amendments, waivers, consents or supplements hereto and thereto may be executed in counterparts, each of which shall constitute an original, but all taken together shall constitute a single contract. This Note and the Pledge Agreement constitute the entire contract between the Parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. Delivery of an executed counterpart of a signature page to this Note or the Pledge Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Note or the Pledge Agreement, as applicable.

10.8 <u>Successors and Assigns</u>. The Noteholder may not assign or transfer this Note or any of its rights hereunder without the prior written consent of the Borrower; <u>provided, however</u>, that Noteholder may assign or transfer this Note to any Affiliate of the Noteholder. The Borrower may not assign or transfer this Note or any of its rights hereunder without the prior written consent of the Noteholder. This Note shall inure to the benefit of, and be binding upon, the Parties and their permitted assigns.

10.9 <u>Waiver of Notice</u>. The Borrower hereby waives demand for payment, presentment for payment, protest, notice of payment, notice of dishonor, notice of nonpayment, notice of acceleration of maturity and diligence in taking any action to collect sums owing hereunder.

10.10 <u>Interpretation</u>. For purposes of this Note (a) the words "include," "includes" and "including" shall be deemed to be followed by the words "without limitation"; (b) the word "or" is not exclusive; and (c) the words "herein," "hereof," "hereby," "hereto" and "hereunder" refer to this Note as a whole. The definitions given for any defined terms in this Note shall apply equally to both the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. Unless the context otherwise requires, references herein: (x) to Schedules, Exhibits and Sections mean the Schedules, Exhibits and Sections of this Note; (y) to an agreement, instrument or other document means such agreement, instrument or other document as amended, supplemented and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. This Note shall be construed without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted.

10.11 <u>Amendments and Waivers</u>. No term of this Note may be waived, modified or amended except by an instrument in writing signed by both of the parties hereto. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

10.12 <u>Headings</u>. The headings of the various Sections and subsections herein are for reference only and shall not define, modify, expand or limit any of the terms or provisions hereof.

8

10.13    No Waiver; Cumulative Remedies. No failure to exercise and no delay in exercising on the part of the Noteholder, of any right, remedy, power or privilege hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege. The rights, remedies, powers and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers and privileges provided by law.

10.14    Electronic Execution. The words "execution," "signed," "signature," and words of similar import in the Note shall be deemed to include electronic or digital signatures or the keeping of records in electronic form, each of which shall be of the same effect, validity and enforceability as manually executed signatures or a paper-based recordkeeping system, as the case may be, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 USC § 7001 et seq.), the California Uniform Electronic Transactions Act (Cal. Civ. Code §§ 1633.1-1633.17), or any other similar state laws based on the Uniform Electronic Transactions Act.

10.15    Severability. If any term or provision of this Note or the Pledge Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Note or the Pledge Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the parties hereto shall negotiate in good faith to modify this Note so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

*[SIGNATURE PAGE FOLLOWS]*

IN WITNESS WHEREOF, the Borrower has executed this Note as of the date first written above.

                    CHINA BRANDING GROUP LIMITED

                    By:_____

                    Name:

                    Title:

ACKNOWLEDGED AND ACCEPTED:

TONY BOBULINSKI

*[DocuSigned by: signature / 9F195104C77F45D]*

[Signature Page to Promissory Note]

21

DocuSign Envelope ID: 42E41824-F5EF-4D8C-BF68-2F873D9ABCC6

IN WITNESS WHEREOF, the Borrower has executed this Note as of the date first written above.

CHINA BRANDING GROUP LIMITED

By: _____
Name: Adam R~~~~
Title: CEO

ACKNOWLEDGED AND ACCEPTED:

TONY BOBULINSKI

DocuSigned by: _____
9F195104C77F45D...

[Signature Page to Promissory Note]

22