Robert W. Cohen (SBN 150310)
Mariko Taenaka (SBN 273895)
**LAW OFFICES OF ROBERT W. COHEN**
A Professional Corporation
1901 Avenue of the Stars, Suite 1900
Los Angeles, California   90067
Telephone: (310) 282-7586
Facsimile: (310) 282-7589
rwc@robertwcohenlaw.com
mt@robertwcohenlaw.com

Attorneys for Plaintiff
CHINA BRANDING GROUP LIMITED
(IN OFFICIAL LIQUIDATION)

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHINA BRANDING GROUP LIMITED (IN OFFICIAL LIQUIDATION), by and through its Joint Official Liquidators, Hugh Dickson of Grant Thornton Specialist Services (Cayman), Limited and David Bennett of Grant Thornton Recovery & Reorganisation Limited,<br><br>        Plaintiff,<br><br>   v.<br><br>TONY BOBULINSKI,<br><br>        Defendant. | Case No.  2:20-cv-06759 RGK (JCx)<br><br>**PLAINTIFF'S REPLY TO OPPOSITION TO APPLICATION FOR PREJUDGMENT RIGHT TO ATTACH ORDER**<br><br>Date:       October 13, 2020<br>Time:      9:30 a.m.<br>Courtroom: 750 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION...……………………………….………………...….1

II.     PLAINTIFF'S CLAIMS ARE CLAIMS UPON WHICH AN
        ATTACHEMENT MAY ISSUE……..…………………...………....….2

III.    PLAINTIFF HAS ESTABLISHED THE PROBABLY VALIDITY OF
        ITS CLAIMS…………………………………………...…………….....2

        A. The UFMJRA and Principles of Comity…..…………………………2

        B. Mr. Bobulinski's Allegations Do Not Constitute Fraud Necessary for
           Nonrecognition……………………………………………………...........5

        C. The Cayman Island Judgment is Not Repugnant to Public Policy ..…6

        D. The Cayman Islands Proceeding Was Not Contrary to Any
           Agreement……………………………………………………….…..10

        E. There Was No Due Process Violation………………………………..10

        F. Mr. Bobulinski Has Not Demonstrated Any
           Entitlement to Set-Off………………………………………………12

        G. Continuance of the Hearing is Not Warranted………………………13

IV.     CONCLUSION………………………………………...……...……..15

# TABLE OF AUTHORITIES

## Cases

*AO Alfa-Bank v. Yakovlev*,
   21 Cal.App.5th 189 (2018)……………………………………….……2, 3, 11

*Bank Melli Iran v. Pahlavi*,
   58 F.3d 1406 (9th Cir. 1995)……………………………………………….11

*British Midland Airways Ltd. v. Int'l Travel, Inc.*,
   497 F.2d 869 (9th Cir. 1994)……………………………………….……..9

*Clay v. Hilton Worldwide Holdings, Inc.*,
   2020 U.S. Dist. LEXIS 7320, (W.D. Wash. April 27, 2020)…………..…...5

*de Fontbrune v. Wofsy*,
   409 F.Supp.3d 823 (N.D. Cal. 2019)………………………………...6, 7

*Estate of Bir*,
   83 Cal.App.2d 256 (1948)……………………………………….……..9

*Folex Golf Indus. v. China Shipbuilding Indus.*,
   2013 U.S. Dist. LEXIS 67044 (C.D. Cal. May 9, 2013)…………………..5

*Green v. Ancora-Citronelle Corp.*,
   577 F.2d 1380 (9th Cir. 1978)……………………………………….……..7

*In re Hashim*,
   213 F.3d 1169 (9th Cir. 2000)……………………………………….……..9

*Hilton v. Guyot*,
   159 U.S. 113 (1895)…………………………………………………….3

*Hobbs v. Weiss*,
   73 Cal.App.4th 76 (1999)………………………………………………….1

*Home & Land Publ., Ltd. v. ApartmentNet Corp.*,
   100 F. Supp. 2d 1248 (2000)……………………………………………..14

*Java Oil Ltd. v. Sullivan*,
   168 Cal. App. 4th 1178 (2008)……………………………………….8, 9

*Korea Water Res. Corp. v. Lee*,
   115 Cal.App.4th 389 (2004)…………………………………………….2

*Loeb & Loeb v. Beverly Glen Music, Inc.*,
   166 Cal.App.3d 1110 (1985)………………………………..…………….1

*Los Angeles Airways, Inc. v Hughes Tool Co.*,
   95 Cal.App.3d 1 (1979)…………………………………………………...7

*Loucks v. Standard Oil Co.,*
   224 N.Y. 99, 110 [120 N.E. 198] (N.Y. 1918)……………………...……..8

*Lydig Construction, Inc. v. Martinez Steel Corp.,*
   234 Cal.App.4th 937 (2015)………………………………………………..13

*Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.,*
   874 F.3d 604 (2017)……………………………………………………12, 14

*Milhoux v. Linder,*
   902 P.2d 856 (Colo. Ct. App. 1995)……………………………………..…9

*Ohno v. Yasuma,*
   723 F.3d 984, 991 (9th Cir. 2013)…………………………………..…2, 8, 14

*Overseas Inns S.A.P.A. v. United States,*
   911 F.2d 1146 (5th Cir. 1990)………………………………………..………9

*Pentz v. Kuppinger,*
   31 Cal.App.3d 590 (1973)………………………………………………...…9

*Samyang Food Co. v. Pneumatic Scale Corp.,*
   2005 U.S. Dist. LEXIS 25374 (N.D. Ohio Oct. 21, 2005)………………..…3

*S.A.R.L. Louis Feraud Int'l v. Viewfinder, Inc.,*
   489 F.3d 474 (2007)…………………………………………………………3

*Smith v. Superior Court,*
   41 Cal.App.4th 1014 (1996)………………………………………………9

*Society of Lloyd's v. Ashenden,*
   233 F.3d 473 (7th Cir. 2000)………………………………………………2

*Tataragasi v. Tataragasi,*
   477 S.E.2d 239 (N.C. App. 1996)………………………………………..…9

*Turner Entertainment Co. v. Degeto Film,*
   25 F.3d 1512 (11th Cir. 1994)………………………………………………2

*Wong v. Tenneco, Inc.,*
   39 Cal.3d 126 (1985)…………………………………………………..…8

**Statutes**

Cal. Code Civ Proc. § 1715………………………………………..…………9

Cal. Code Civ Proc. § 1716…………………………………………………..2, 4

Cal. Code Civ Proc. § 1722………………………………………………...…3

Cal. Code Civ. Proc. § 484.090………………………………………..……1, 13

Cal. Code Civ. Proc. § 481.190……………………………………………………1

Cal. Code Civ. Proc. § 483.015……………………..…………………………………13

Uniform Foreign-Country Money Judgments Recognition Act……..…………*passim*

iv

TABLE OF AUTHOTITIES

## I.    INTRODUCTION

As the JOLs' moving papers explain, applicable California law provides that a court "shall" issue a right to attach order where it finds that "(1) the claim upon which the attachment is based is one upon which an attachment may be issued" and "(2) the plaintiff has established the probable validity of the claim upon which the attachment is based."  Cal. Code Civ. Proc. § 484.090.[1]  "A claim has 'probable validity' where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim.  Section 481.190.  In determining "probable validity," the court "must consider the relative merits of the positions of the respective parties. . . ."  *Loeb & Loeb v. Beverly Glen Music, Inc.*, 166 Cal.App.3d 1110, 1120 (1985).  In contrast to summary judgment motions, then, attachment applications empower the Court to determine disputed facts on the basis of a preponderance of the evidence submitted.  *Hobbs v. Weiss*, 73 Cal.App.4th 76, 800 (1999).

By his opposition to the application, Mr. Bobulinski argues that: (1) the JOLs' claim is not one upon which an attachment may be issued, allegedly because "no competent or sufficient evidence" supports the cost orders at issue; (2) that the JOLs have not established a probability of prevailing on the merits, allegedly because the Cayman Island judgment suffers an assortment of infirmities that Mr. Bobulinski says prevents its recognition under the UFCMJRA and principles of comity; and (3) that the attachment fails in light of various set-off claims Mr. Bobulinski thinks he's entitled to.

Mr. Bobulinski's arguments lack merit and the right to attach order should therefore now issue as more fully explained below.

---

[1]    Unless otherwise noted, further statutory references are to the California Code of Civil Procedure.

**II.    PLAINTIFF'S CLAIMS ARE CLAIMS UPON WHICH AN ATTACHMENT MAY ISSUE**

It is frankly hard to make sense of Mr. Bobulinski's initial argument.  He says there is no evidence of the cost orders but the orders are authenticated and attached to Mr. Kendall's declaration supporting the motion.  And the fact of the cost orders as well as Mr. Bobulinski's partial payments on them are admitted in his answer to the complaint.  See Dkt. No. 30, ¶¶9, 11.  On their face and as Mr. Kendall explains, the orders are a component of the judgment and they are final and enforceable.  This action on a money judgment is one "arising on a contract" within the meaning of the attachment statute.  *Korea Water Res. Corp. v. Lee*, 115 Cal.App.4th 389, 401, fn. 11 (2004).

**III.   PLAINTIFF HAS ESTABLISHED THE PROBABLE VALIDITY OF ITS CLAIMS**

**A.  The UFMJRA and Principles of Comity**

Since the Cayman Island judgment is a money judgment that is final and enforceable where it was rendered, it is presumptively subject to recognition here. Section 1715; *Ohno v. Yasuma*, 723 F.3d 984, 991 (9th Cir. 2013).  Recognition follows as a matter of law *unless* the defendant establishes a ground for nonrecognition upon the grounds enumerated in the UFCMJRA.  Section 1716; *see AO Alfa-Bank v. Yakovlev*, 21 Cal.App.5th 189, 199 (2018) ("Once the initial showing is made, there is a presumption in favor of enforcement, and the party resisting recognition bears the burden of establishing that one of the statute's enumerated bases for non-recognition applies.")

This framework is reflective of the recognition act's commitment to simple court procedures suited to a respect for international comity. *Turner Entertainment Co. v. Degeto Film*, 25 F.3d 1512, 1519-21 (11th Cir. 1994); s*ee Society of Lloyd's v. Ashenden*, 233 F.3d 473, 477 (7th Cir. 2000) (noting the UFCMJRA's purpose of "providing a streamlined, expeditious method for collecting money judgments

rendered by courts in other jurisdictions"); s*ee also* Uniform Foreign-Country Money Judgments Recognition Act (the "Uniform Act"), prefatory note, 13 U.L.A. pt. II, at 17 (parties "may not relitigate the merits of the underlying dispute that gave rise to the foreign-country judgment"); *Samyang Food Co. v. Pneumatic Scale Corp.*, 2005 U.S. Dist. LEXIS 25374 at *22-23 (N.D. Ohio Oct. 21, 2005) ("The core of the [Uniform Act] is that a foreign judgment is conclusive between the parties to avoid re-litigation of a case in the same manner as the judgment of a sister state which is entitled to full faith and credit"); *S.A.R.L. Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 479 ("[w]e cannot second guess the French court's finding that Viewfinder's actions were 'without the necessary authorization.'  Viewfinder had the opportunity to dispute the factual basis of plaintiffs' claims in the French court.... ")[2] In its classic rendition, the Supreme Court in *Hilton v. Guyot*, 159 U.S. 113, 202-203 (1895), wrote:

> Where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings . . . under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the

_____

[2]    The decisions of sister states and circuits on their enactments of the Uniform Act are and common law comity principles persuasive authorities in the interpretation of California's UFCMJRA.   Section 1722 ("In applying and construing this uniform act, consideration shall be given to the need to promote uniformity of the law with respect to its subject matter among the states that enact it"); *AO Alfa-Bank v. Yakovlev, supra,* 21 Cal.App.5th at 199.

> case should not, in an action brought in this country upon
> the judgment, be tried afresh as on the mere assertion of
> the party that the judgment was erroneous in law or in
> fact.

Mr. Bobulinski claims that he has established grounds for nonrecognition, contending that: (1) the Cayman Island judgment was "based on fraud" within the meaning of section 1716(c)(1)(B)—allegedly because the judgment was tainted by false testimony and premised in China Branding's "sham liquidation" and "manufactured" inability to pay its debts; (2) that the judgment is repugnant to public policy under section 1716(c)(1)(C), again because it was purportedly based upon false representations and because the cost orders "unduly penalize him" for asserting his rights as a creditor in a liquidation; (3) that the judgment is unenforceable under section 1716(c)(1)(D) because the Cayman Island proceedings allegedly violated a forum selection clause in Mr. Bobulinski's agreement with China Branding; and (4) that the Cayman Island judgment "violated due process of law" within the meaning of section 1716(c)(1)(G) because Mr. Bobulinski "was unable to develop a full factual record of the evidence the Court relied on in its decision and was not able to impeach the underpinnings of the Cayman Liquidation."

These assertions, however, cannot avail Mr. Bobulinski because none of them amounts to a defense against recognition under the standards employed by the UFCMJRA. The fraud assertions, even if true, can have no affect on the recognition question because the supposed misrepresentations Mr. Bobulinski points to do not qualify as fraud that "deprived the losing party of an adequate opportunity to prevent its case" as the statute requires. Section 1716(c)(1)(B). Evidenced by Mr. Bobulinski's own declaration and the Cayman Island judgment itself—which sets out a thoroughgoing analysis in lengthy detail of the same arguments Mr. Bobulinski, his witnesses, his experts, and his counsel presented to the Cayman court—Mr. Bobulinski indisputably *did* present his case there, and his bid to relitigate those

matters here, as noted, is impermissible.  *See also Clay v. Hilton Worldwide Holdings, Inc.*, 2020 U.S. Dist. LEXIS 7320, at *19-20 (W.D. Wash. April 27, 2020) (collateral estoppel bars relitigation of matters adjudicated by Thai court); *Folex Golf Indus. v. China Shipbuilding Indus.,* 2013 U.S. Dist. LEXIS 67044, at *13-14 (C.D. Cal. May 9, 2013) (collateral estoppel applied to Chinese judgment).  And his remaining arguments fail for similar reasons—the facts asserted do not amount to actual defenses under the UFCMJRA and each relies on assertions and legal conclusions that are either belied by the actual record or irrelevant to the statute.

**B.  Mr. Bobulinski's Allegations Do Not Constitute Fraud Necessary For Nonrecognition**

As the moving papers explain—and as remains undisputed now—the Cayman Island judgment awards money to the JOLs as compensation to them under Cayman law for the fees they expended in contesting Mr. Bobulinski's appeal of the JOLs' determination regarding the proof of debt he submitted in the liquidation proceeding. The JOLs allowed his claim with respect to the principal amount of his loan to China Branding but rejected his claimed status as a secured creditor and his asserted entitlement to a multiplier.  That determination was upheld in Mr. Bobulinski's appeal to the Cayman Island Grand Court.

Much of the opposition brief is devoted to castigating the Cayman Island court for its disagreement with Mr. Bobulinski about the facts and law governing his claims, and many pages are given over to reiterating the same facts and contentions he presented and lost in that court.  In light of the prohibition against relitigation of these matters, it is hard to see the relevance of the opposition's profusion of issues that Mr. Bobulinski thinks the Cayman Island court got wrong.  Nonetheless, with respect to his instant fraud allegations, he singles out two purported instances, asserting at page 16 that:

> Roseman [i.e., China Branding's former president who, Mr.
> Bobulinski says, lied to him as a means to induce his loans

to China Branding] did not fully inform the Cayman court of the true nature and effect of CBG's agreements with Bobulinski.  More importantly, the initiation of the Cayman Liquidation also appeared to involve fraudulent and nefarious circumstances and to be based on a sham Event of Default.  Based in part upon its reliance on CBG's (and potential [sic] others') extrinsic fraud as to the triggering events behind the liquidation, the Cayman court did not sufficiently consider these issues or allow for meaningful discovery on them.

Opp'n p. 16.  Interspersed throughout his brief, Mr. Bobulinski reiterates these claims, accusing Mr. Roseman of fraudulently inducing Mr. Bobulinski's execution of the note and pledge agreements, that Mr. Roseman gave false testimony in the Cayman Island litigation about his many promises, and contending that China Branding's liquidation was a sham because China Branding wasn't "really" bankrupt.

These allegations, Mr. Bobulinski says, amount to "extrinsic fraud" and, likening this case to *de Fontbrune v. Wofsy*, 409 F.Supp.3d 823 (N.D. Cal. 2019), argues that they may prevent recognition under the UFCMJRA.  But this case is nothing like *de Fontbrune*.  Though the opposition chooses not to mention it, the foreign judgment at issue in *de Fontbrune* arose from a *default* proceeding in France conducted in the defendant's absence—the defendants were not served with the summons and complaint and were unaware of the hearing—and the fraud consisted in the plaintiff's failure to inform the French court that they no longer owned the copyrights they were suing upon, meaning that they lacked standing to sue under French law.  *Id.* at 829-30.  In opposition to the plaintiff's summary judgment motion in their UFCMJRA action that followed, then, the defendants presented evidence that the plaintiff's intentionally misled the French court about its very jurisdiction; and

1  since the defendants were unavailable to contest the subterfuge, the court found they

2  demonstrated a genuine issue of fact as to whether the judgment "was obtained by

3  fraud that deprived the losing party of an adequate opportunity to prevent its case"

4  sufficient to defeat summary judgment.  *Id.;* section 1716(c)(1)(B).

5      In its discussion of the "fraud" basis for nonrecognition, the *de Fontbrune*

6  court cited the comments to the Uniform Act, noting that "only extrinsic fraud—that

7  is 'conduct of the prevailing party that deprived the losing party of an adequate

8  opportunity to present its case'—provides a ground for nonrecognition."  *de*

9  *Fontbrune* at 839, citing the Uniform Act Comments, §4 comment 7, noting as an

10  example of extrinsic fraud a plaintiff's "'obtain[ing] a default judgment against the

11  defendant based on a forged confession of judgment.'"  *Id.*  "'Extrinsic fraud should

12  be distinguished from intrinsic fraud, such as false testimony of a witness or

13  admission of a forged document into evidence during the foreign proceeding;'

14  intrinsic evidence is not a basis for nonrecognition."  *Id.*; *see Los Angeles Airways,*

15  *Inc. v Hughes Tool Co.*, 95 Cal.App.3d 1, 8-9 (1979) ("the test of extrinsic fraud is

16  fraud that prevented a fair adversary hearing by deliberately keeping a party ignorant

17  of the action or otherwise fraudulent preventing his claim or defense.  Normally, if

18  the party was award of the proceeding, the fraud is intrinsic, but if the fraud totally

19  precluded his raising a claim or defense it will be grounds for relief.")  "In order to

20  be considered extrinsic fraud, the alleged fraud must be such that it prevents a party

21  from having an opportunity to present his claim or defense in court . . . or deprives a

22  party of his right to a day in court."  *Green v. Ancora-Citronelle Corp.*, 577 F.2d

23  1380, 1384 (9th Cir. 1978).

24      Mr. Bobulinski's allegations do not help him, of course, because the "fraud"

25  he describes is plainly of the intrinsic variety and cannot serve as a predicate for

26  nonrecognition.  Far from being *deprived* of an adequate opportunity to present his

27  case, it was Mr. Bobulinski himself who brought and prosecuted the Cayman Island

28  appeal, and the record puts it beyond cavil that he *did* press a full and vigorous

litigation, complete with cross-examination, counsel, and experts of his choosing. He indisputably received a full, thoughtful, and attentive hearing on the very same issues he now attempts to raise here, which the Cayman Island court expressly considered and rejected.  See, for example, among many others, paragraph 167 of the judgment:  "With all due respect to Mr Bobulinski, who is a professional investor and business person, it is highly improbable that Mr Bobulinski could not have been aware of the Company's financial difficulties, given *inter alia* the Company's need to borrow further funds from him.  The Court notes that this is a matter of relevance to Mr Bobulinki's realism and reliability as a witness rather than to his integrity as such."  (Kendall Decl., (Cayman Judgment) ¶ 167.  See also, e.g., ¶¶ 14, 15, 16, 167, 178, 179, 180, 181, 183, 194, 195, 199, 200.)  These findings are binding upon Mr. Bobulinski here; he plainly had his day in court and he may not second guess those rulings now.

### C.  The Cayman Island Judgment Is Not Repugnant To Public Policy

"California courts have set a high bar for repugnancy under the Uniform Act. The standard . . . measures not simply whether the foreign judgment or cause of action is contrary to our public policy, but whether either is 'so offensive to our public policy as to be 'prejudicial to recognized standards of morality and to the general interests of the citizens.' [citations]."  *Ohno v. Yasuma,* 723 F.3d 984, 991, 1002 (9th Cir. 2013) (citing *Java Oil Ltd. v. Sullivan*, 168 Cal. App. 4th 1178, 1189-92, (2008), *Wong v. Tenneco, Inc*., 39 Cal.3d 126, 135-36, (1985).)  The public policy exception does not apply unless a foreign-country judgment or law on which it is based is 'so antagonistic to California [or federal] public policy interests as to preclude the extension of comity."  *Ohno,* 723 F.3d at 991.

In Justice Cardozo's memorable formulation, "[w]e are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home."  *Loucks v. Standard Oil Co.*, 224 N.Y. 99, 110 [120 N.E. 198] (N.Y. 1918). Thus, an American court should only "refuse to enforce a foreign right" where to do

1   so would "violate some fundamental principle of justice, some prevalent conception

2   of good morals, some deep rooted tradition of the common weal." *Id.* at 111.

3   Recognition, then, may not be denied "unless a foreign country's judgments are the

4   result of outrageous departures from our own notions of civilized jurisprudence."

5   *British Midland Airways Ltd. v. Int'l Travel, Inc.*, 497 F.2d 869, 871 (9th Cir. 1994).

6   *See, e.g., In re Hashim,* 213 F.3d 1169, 1172 (9th Cir. 2000) (reversing bankruptcy

7   court's refusal to enforce English court's award of $10 million in costs against

8   debtors whose assets had been frozen by Saddam Hussein); *Milhoux v. Linder*, 902

9   P.2d 856, 861-862 (Colo. Ct. App. 1995) (recognizing Belgian judgment based upon

10  30-year statute of limitations);  *Estate of Bir*, 83 Cal.App.2d 256 (1948) (in context

11  of intestate succession, India's law permitting polygamy applied under principles of

12  comity.)

13      In contrast, true repugnance is found where real world enforcement would

14  offend our sense of what is just and decent.  *See Pentz v. Kuppinger*, 31 Cal.App.3d

15  590, 597 (1973) (refusing to recognize Mexican judgment requiring payment of

16  alimony after remarriage because it was "manifestly contrary to California public

17  policy"); *Overseas Inns S.A.P.A. v. United States*, 911 F.2d 1146, 1149 (5th Cir.

18  1990) (refusing to recognize Luxembourg bankruptcy judgment purporting to

19  discharge U.S. income tax debt—"inexpugnable public policy that favors payment of

20  lawfully owed federal income taxes"); *Tataragasi v. Tataragasi*, 477 S.E.2d 239, 246

21  (N.C. App. 1996) ("The Turkish court's order did not discuss the best interests of the

22  children, but instead talked about . . . the importance of Islam, circumcision and

23  defendant's place in society"); *Smith v. Superior Court*, 41 Cal.App.4th 1014, 1025

24  (1996) (refusing to enforce Michigan injunction against expert's testifying about GM

25  vehicles as it "blatantly and irreconcilably conflicts with our fundamental public

26  policy against the suppression of evidence.")

27      Mr. Bobulinski claims repugnancy here because he "intends to discover and

28  prove that the Cost Certificates are based on CBG's false representations as to the

REPLY TO OPPOSITION TO APPLICATION FOR ATTACHMENT ORDER

nature of Bobulinski's creditor status and the false pretenses upon which the liquidation was based." Opp'n p. 17.  He also thinks it's repugnant because the Cayman Island court disagreed with him about his contractual entitlements under Cayman law.  *Id.*  But these contentions, of course, cannot avail him for the reasons already explained and even if he could raise them now, they are manifestly insufficient to establish repugnancy under these standards.

He goes on to claim that public policy is offended by the Cayman Island judgment's departure from the traditional American Rule, by which a party ordinarily bears its own attorney's fees; he says recognition is precluded because an attorney fee award constitutes a "fine or other penalty" prohibited by section 1715(b)(2).  Opp'n, p. 18.  But as the moving papers indicated, the attorney fee award is not a penalty under the UFCMJRA.  *Java Oil, Ltd.*, *supra,* 168 Cal.App.4th at 1187.  The opposition tries to distinguish *Java Oil*, claiming that it "allowed the domestication of a fee award based upon a malicious and/or fraudulent filing, [while] the awards here punish Bobulinski merely for objecting to a sham liquidation and asserting his rights as a creditor."  Opp'n, p. 18.  But that ignores the point of the case.  Instead, a fee award like this one, compensating the prevailing party for costs expended defending the lawsuit, is not "penal within the rules of private international law.  A statute penal in that sense is one that awards a penalty to the state, or to a public officer in its behalf, or to a member of the public, suing in the interest of the whole community to redress a public wrong. . . .  The purpose must be, not reparation to one aggrieved, but vindication of the public justice . . .' [Citations.]" *Java Oil*, *supra,* 168 Cal. App. 4th at 1187.  Mr. Bobulinski complains the fees "punished" him for his supposed pursuit of his rights, but like the defendant in *Java Oil*, he "was not being punished for an offense against the public but instead was ordered to compensate respondents for the fees they incurred in defending a lawsuit." *Id.* at 1188.  "No mandatory fine, sanction, or multiplier was imposed.  Thus, although Sullivan views the attorney fee award as a penalty for groundless litigation,

REPLY TO OPPOSITION TO APPLICATION FOR ATTACHMENT ORDER

1  it was not a penalty within the meaning of the UFMJRA." *Id.* at 188-89.  And

2  though the English Rule is not the American Rule, its recognition is not contrary to

3  public policy.  "That there is a difference in the law of the two countries does not

4  show that the British law applied is repugnant to public policy." *Id.* at 1192.

5  **D.  The Cayman Islands Proceeding Was Not Contrary to Any Agreement**

6  Mr. Bobulinski's contention here, based upon the forum selection clause in his

7  agreement with China Branding, does not appear to be serious.  The judgment at

8  issue here, of course, arose from the suit Mr. Bobulinski initiated himself against the

9  JOLs with respect to liquidation proceedings in the Cayman Islands; the forum

10  selection provision in his agreement with China Branding was not implicated.

11  **E.  There Was No Due Process Violation**

12  Mr. Bobulinski finally contends the Cayan Islands Judgment violated his due

13  process rights but the reasons he gives are little more than a reiteration of his "fraud"

14  claims and they thus fail for the same reasons.  He adds that he "was unable to

15  develop a full factual record of the evidence the Court relied on in its decision"

16  (Opp'n, p. 20), and complains in his declaration that he "attempted to conduct

17  discovery typical to that available to litigants in U.S. Courts" but was denied that

18  opportunity.  Bobulinski Decl., ¶17.  But these claims, even if they were true, could

19  not amount to a due process violation under the UFCMJRA.  Nonrecognition on due

20  process grounds is "reserved for challenges as to the integrity or fundamental

21  fairness with regard to the particular proceeding leading to the foreign county

22  judgment." *See, e.g., Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1413 (9th Cir. 1995)

23  (evidence established that defendant "could not expect fair treatment from the courts

24  of Iran, could not personally appear before those courts, could not obtain proper

25  representation, and not obtain local witnesses.)  These are the sorts of deprivations

26  the UFCMJRA has in mind when it speaks of due process violations.

27  But "[f]oreign courts are not required to adopt 'every jot and title of American

28  due process.' [Citation.]" *AO Alfa-Bank v. Yakovlev, supra,* 21 Cal.App.5th 189,

215.  Foreign nations "[are] not bound by our notions of due process and we do not insist on the additional niceties of domestic jurisprudence in deciding whether to enforce a [foreign] judgment." *Id.* at 215-16 (recognizing Russian judgment under the UFCMJRA.)  Mr. Bobulinski's claimed inability, then, to conduct the American style discovery he says he wanted, then, is plainly a far cry from a cognizable due process violation.  On the contrary, "'The right to pretrial discovery is not a part of the U.S. concept of due process, let alone of international due process.'  [Citation.]" *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 617 (2017) (affirming summary judgment in UFCMJRA action on Dutch judgment notwithstanding the defendant's claim of a due process violation in its inability to conduct full discovery in Holland.)

### F.  Mr. Bobulinski Has Not Demonstrated Any Entitlement to Set-Off

Citing section 483.015, Mr. Bobulinski claims that the amount of the JOLs' attachment should be reduced by the unsecured claim for $650,000 that the JOLs allowed with respect to Mr. Bobulinski's Proof of Debt in April 2017 and "by the amounts Plaintiff owes Bobulinski as a result of its breach of its contractual obligations, which, given the 2.5x multiplier, will exceed the amount Plaintiff seeks to attach."  Opp'n, p. 22.  This claim too is wrong.

Section 483.015 provides in relevant part that the amount of an attachment "shall be reduced by the sum of the following: (para.) (b)(1) The amount of any money judgment in favor of the defendant and against the plaintiff that remains unsatisfied and is enforceable [and] [para.] (3) The amount of any claim of the defendant asserted as a defense in the answer . . . if the defendant's claim is one upon which an attachment could be issued had an action been brought on the claim. . . ." Section 483.015(b)(1) and (3).  Mr. Bobulinski does not *have* a judgment against the plaintiff here, meaning that subdivision (b)(1) cannot apply.  And subdivision (b)(3) is likewise unavailing to Mr. Bobulinski because the offsets he asserts would clearly not qualify for an attachment if Mr. Bobulinski had initiated a separate suit upon

1  them.  *Id.*; *see Lydig Construction, Inc. v. Martinez Steel Corp.*, 234 Cal.App.4th

2  937, 944-54 (2015).  No attachment could issue on those claims because they plainly

3  lack both probable validity and an amount that is "fixed or readily ascertainable."

4  *Id.;* section 483.010, subd. (a).  His claims to a multiplier, of course, are barred by

5  the preclusive effect of the Cayman Island judgment for all the reasons recounted

6  above, and there is simply no evidence, as he maintains, that he is owed anything

7  from China Branding's estate.  As the moving papers explain, the JOLs did recognize

8  an unsecured claim of $650,000 on Mr. Bobulinski's part during the liquidation

9  proceedings, but that hardly amounts to an "admission," as the opposition now has it,

10  of an existing debt for that or any other amount.  On the contrary, an unsecured claim

11  in liquidation entails nothing more than a potential for an equitable share in whatever

12  proceeds might remain in the estate in conjunction with satisfaction of senior and

13  competing claims; China Branding, as the court found, was insolvent, making it less

14  than likely that Mr. Bobulinski's claim would ever be fully satisfied.  See, e.g.,

15  Cayman Island Judgment, para. 24: "Unlike those of other Noteholders who agreed

16  to subordinate their claims in order to facilitate the sale to Remark, the Appellant's

17  claim the US$650,000 advanced pursuant to his Promissory Note is not subordinated

18  and ranks *pari passu* with other unsecured creditors."

19  **G.  Continuance of the Hearing is Not Warranted**

20  Attachment may or may not be an "extraordinary remedy" as the opposition

21  repeatedly asserts; but here, as demonstrated, plaintiff has demonstrated all of the

22  statutory requisites for attachment and Mr. Bobulinski *cannot* establish a viable

23  defense.  Plaintiff is therefore entitled to the attachment by the plain language of

24  section 484.090.

25  Mr. Bobulinski asks for a continuance "to produce additional evidence" citing

26  section 484.090(d), but the reasons he gives—his desire to conduct discovery

27  supportive of his fraud, repugnancy, and denial of due process claims—cannot

28  change things.  In his lengthy opposition, Mr. Bobulinski alleged a wide variety of

grounds that he says would permit nonrecognition under the UFCMJRA; but as demonstrated, those grounds *cannot* entail nonrecognition as a matter of law, meaning that even if he could discover further facts supportive of his contentions, they could not help him. Mr. Bobulinski was, after all, intimately familiar with the Cayman Island litigation he prosecuted; if he really had been denied due process or suffered other deprivations sufficient to enable him to establish a basis for nonrecognition, glaring examples should be readily identifiable by him. *See Home & Land Publ., Ltd. v. ApartmentNet Corp.,* 100 F. Supp. 2d 1248, 1252 n. 6 (2000) (denying defendant's request for further briefing under section 484.090(d) where counsel was unable to demonstrate that further material evidence would be offered); *Ohno v. Yasuma, supra,* 723 F.3d at 1013 n. 29 (rejecting defendant's bid for continuance to conduct discovery under Rule 56(d) in response to plaintiff's summary judgment motion on UFMJRA claim where discovery sought would not change the result).

The court's concluding remarks in *Midbrook Flowerbulbs, supra,* 874 F.3d at 620, rejecting the defendant's bid to conduct discovery into the same topics it wanted to discover in the Dutch proceedings are particularly apt here: "this discovery would not 'preclude summary judgment,' because it had no bearing on whether the proceedings in the Dutch courts were 'compatible with the requirements of due process of law' under [Washington's UFCMJRA]. Rather, Holland America sought this discovery because it would 'conclusively determine whether Midbook was in fact entitled to any judgment whatsoever in the Dutch proceedings.' Because this fact was not relevant—let alone 'essential'—to the issues raised by Midbook's motion for summary judgment, the district court did not abuse its discretion in denying Holland America's request for additional discovery." The discovery Mr. Bobulinski seeks likewise cannot be relevant, and his request should be likewise denied.

**III.    CONCLUSION**

     Since this case presents a claim subject to attachment under applicable law and the probable validity of plaintiff's claim is established, plaintiff submits that the right to attach order should now be issued.

     Respectfully submitted.

DATED: October 6, 2020           LAW OFFICES OF ROBERT W. COHEN
                                   A Professional Corporation

                                  By   /s/   Robert W. Cohen
                                   Robert W. Cohen
                                   Mariko Taenaka
                                   Attorneys for Plaintiff

1

2
## <u>CERTIFICATE OF SERVICE</u>

3      I hereby certify that on October 7, 2020 a copy of the foregoing document was

4 filed electronically via the Court's CM/ECF system. Pursuant to Local Rule 5-3.2.1

5 notice of filing will be served on all parties by operation of the Court's CM/ECF

6 system, and parties may access this filing through the Court's CM/ECF system.

7

8                                            /s/ Mariko Taenaka

9                                            Mariko Taenaka

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28