Robert W. Cohen (SBN 150310)
Mariko Taenaka (SBN 273895)
**LAW OFFICES OF ROBERT W. COHEN**
A Professional Corporation
1901 Avenue of the Stars, Suite 1900
Los Angeles, California  90067
Telephone: (310) 282-7586
Facsimile: (310) 282-7589
rwc@robertwcohenlaw.com
mt@robertwcohenlaw.com

Attorneys for Plaintiff
CHINA BRANDING GROUP LIMITED
(IN OFFICIAL LIQUIDATION)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHINA BRANDING GROUP LIMITED (IN OFFICIAL LIQUIDATION), by and through its Joint Official Liquidators, Hugh Dickson of Grant Thornton Specialist Services (Cayman), Limited and David Bennett of Grant Thornton Recovery & Reorganisation Limited,<br><br>                Plaintiff,<br><br>        v.<br><br>TONY BOBULINSKI,<br><br>                Defendant. | Case No.  2:20-cv-06759 RGK (JCx)<br><br>**PLAINTIFF'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  December 21, 2020<br>Time:  9:00 a.m.<br>Courtroom:   850 |

# TABLE OF CONTENTS

I.     INTRODUCTION...…………………………….……………...…1

II.    THE OPPOSITION DOES NOT RAISE A GENUINE ISSUE OF FACT NECESSARY TO DEFEAT SUMMARY JUDGMENT ..……………...4

    A. Mr. Bobulinski's Set-Off Defense Has No Merit……………….……4

    B. Mr. Bobulinski's Allegations Do Not Constitute Fraud Necessary For Nonrecognition…………………………………………………...........7

    C. The Cayman Island Judgment is Not Repugnant to Public Policy...…11

    D. The Cayman Islands Proceeding Was Not Contrary to Any Agreement………………………………………………………….……14

    E. There Was No Due Process Violation………………………………..14

    F. Summary Judgment Is Not Premature……...………………………..15

III.   CONCLUSION…………………………………………...……....……..16

TABLE OF CONTENTS

1

## <u>TABLE OF AUTHORITIES</u>

2

### <u>Cases</u>

3

*AO Alfa-Bank v. Yakovlev,*
    21 Cal.App.5th 189 (2018)……………………………………….……1, 2, 14

*Aquis Es Texcoco, Inc. v. Lopez,*
    2014 U.S. Dist. LEXIS 23039 (S.D. Cal. Feb. 21, 2014)……………………6

*Bank Melli Iran v. Pahlavi,*
    58 F.3d 1406 (9th Cir. 1995)…………………………………………………14

*British Midland Airways Ltd. v. Int'l Travel, Inc.,*
    497 F.2d 869 (9th Cir. 1994)………..………………………………..………12

*Bulasky v. Federal Deposit Ins. Corp.,*
    442 F.2d 341 (9th Cir. 1971)…………………………………………………6

*Citizens Bank of Maryland v. Strumpf,*
    516 U.S. 16 (1995)……………………………………………………………6

*Clay v. Hilton Worldwide Holdings, Inc.,*
    2020 U.S. Dist. LEXIS 7320 (W.D. Wash. April 27, 2020)………………..3

*In re Deep Vein Thrombosis,*
    356 F.Supp.2d 1055 (N.D. Cal. 2005)………………………………………16

*de Fontbrune v. Wofsy,*
    409 F.Supp.3d 823 (N.D. Cal. 2019)……………………………………9, 10

*Estate of Bir,*
    83 Cal.App.2d 256 (1948)……………………………………………..…..12

*Family Home & Fin. Ctr., Inc. v. Fed Home Loan Mortg. Corp.,*
    525 F.3d 822 (9th Cir. 2008)…………………………………………………15

*Folex Golf Indus. v. China Shipbuilding Indus.,*
    2013 U.S. Dist. LEXIS 67044 (C.D. Cal. May 9, 2013)……………………..4

*FTC v. J.K. Publs., Inc.,*
    99 F.Supp.2d 1176 (C.D. Cal. 2000)………………………………………16

*Green v. Ancora-Citronelle Corp.,*
    577 F.2d 1380 (9th Cir. 1978)………………………………………………10

*In re Hashim,*
    213 F.3d 1169 (9th Cir. 2000)…………………………………………..…..12

*Hilton v. Guyot,*
    159 U.S. 113 (1895)…………………………………………………………2

*Java Oil Ltd. v. Sullivan*,
　　168 Cal. App. 4th 1178 (2008)………………………………………..11, 13, 14

*Kaye v. Metz*,
　　186 Cal. 42 (1921)……………...…………………………………………6

*Los Angeles Airways, Inc. v Hughes Tool Co.*,
　　95 Cal.App.3d 1 (1979)………………………………………………10

*Los Angeles Cty. Employees Ret. Ass'n v. Towers Perrin, Forster & Corsby, Inc.*,
　　2002 U.S. Dist. LEXIS 27916 (C.D. Cal. June 20, 2002)…………………..6

*Loucks v. Standard Oil Co.*,
　　224 N.Y. 99, 110 [120 N.E. 198] (N.Y. 1918)……………………..……11

*Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*,
　　874 F.3d 604 (2017)………………………………………………………15, 16

*Milhoux v. Linder*,
　　902 P.2d 856 (Colo. Ct. App. 1995)………………………………..…12

*Newbery Corp. v. Fireman's Fund Ins. Co.*
　　95 F.3d 1392 (9th Cir. 1996)……………………………………………6-7

*Ohno v. Yasuma*,
　　723 F.3d 984, 991 (9th Cir. 2013)…………………………………..…1, 11

*Overseas Inns S.A.P.A. v. United States*,
　　911 F.2d 1146 (5th Cir. 1990)…………………………………..……12

*Pentz v. Kuppinger*,
　　31 Cal.App.3d 590 (1973)...………………………………………..12

*Samyang Food Co. v. Pneumatic Scale Corp.*,
　　2005 U.S. Dist. LEXIS 25374 (N.D. Ohio Oct. 21, 2005)……………...…..1

*S.A.R.L. Louis Feraud Int'l v. Viewfinder, Inc.*,
　　489 F.3d 474 (2007)…………………………………………………..2

*Smith v. Superior Court*,
　　41 Cal.App.4th 1014 (1996)……………………………………………..12

*Society of Lloyd's v. Ashenden*,
　　233 F.3d 473 (7th Cir. 2000)...…………………………………………1, 12

*Tataragasi v. Tataragasi*,
　　477 S.E.2d 239 (N.C. App. 1996)…………………………………………12

*In re Ter Bush*,
　　273 B.R. 625 (Bankr. S.D. Cal. 2002)………………………………………6

*Turner Entertainment Co. v. Degeto Film*,
　　25 F.3d 1512 (11th Cir. 1994)…………………………………….…..1

iii

TABLE OF AUTHOTITIES

*United States ex rel. Afflatooni v. Kitsap Physicians Serv.,*
   314 F.3d 995 (9th Cir. 2002)……………………………………………….16

*Wong v. Tenneco, Inc.,*
   39 Cal.3d 126 (1985)…………………………………………………………11

## **Statutes**

Cal. Code Civ. Proc. § 1715……………………………………...……...1, 13

Cal. Code Civ. Proc. § 1716……………………………………….……1, 3, 10

Cal. Code Civ. Proc. § 1722……………………………………….………...2

Uniform Foreign-Country Money Judgments Recognition Act……..………*passim*

TABLE OF AUTHOTITIES

# I.     INTRODUCTION

The JOLs' moving papers make it clear why summary judgment is now appropriate under the UFMJRA's burden-shifting framework.  The Cayman Island judgment is a money judgment that is final and enforceable under the laws where it was rendered, and is not a judgment for taxes, a fine or other penalty, or a judgment arising from domestic relations.  Cal. Code Civ Proc. § 1715;[1] *Ohno v. Yasuma*, 723 F.3d 984, 991 (9th Cir. 2013).  Recognition of the Cayman Island judgment therefore follows as a matter of law *unless* the defendant establishes a ground for nonrecognition upon the grounds set forth in section 1716.  *Id*.; *see AO Alfa-Bank v. Yakovlev*, 21 Cal.App.5th 189, 199 (2018) ("Once the initial showing is made, there is a presumption in favor of enforcement, and the party resisting recognition bears the burden of establishing that one of the statute's enumerated bases for non-recognition applies.")

This framework is reflective of the recognition act's commitment to simple court procedures suited to a respect for international comity. *Turner Entertainment Co. v. Degeto Film*, 25 F.3d 1512, 1519-21 (11th Cir. 1994); *see Society of Lloyd's v. Ashenden*, 233 F.3d 473, 477 (7th Cir. 2000) (noting the UFCMJRA's purpose of "providing a streamlined, expeditious method for collecting money judgments rendered by courts in other jurisdictions"); *see also* Uniform Foreign-Country Money Judgments Recognition Act (the "Uniform Act"), prefatory note, 13 U.L.A. pt. II, at 17 (parties "may not relitigate the merits of the underlying dispute that gave rise to the foreign-country judgment"); *Samyang Food Co. v. Pneumatic Scale Corp.*, 2005 U.S. Dist. LEXIS 25374 at *22-23 (N.D. Ohio Oct. 21, 2005) ("The core of the [Uniform Act] is that a foreign judgment is conclusive between the parties to avoid re-litigation of a case in the same manner as the judgment of a sister state which is

---

[1]     Unless otherwise noted, further statutory references are to the California Code of Civil Procedure.

1  entitled to full faith and credit"); *S.A.R.L. Louis Feraud Int'l v. Viewfinder, Inc.*, 489

2  F.3d 474, 479 ("[w]e cannot second guess the French court's finding that

3  Viewfinder's actions were 'without the necessary authorization.' Viewfinder had the

4  opportunity to dispute the factual basis of plaintiffs' claims in the French court…") [2]

5       In its classic formulation, the Supreme Court in *Hilton v. Guyot*, 159 U.S. 113,

6  202-203 (1895) wrote:

> Where there has been opportunity for a full and fair trial abroad
> before a court of competent jurisdiction, conducting the trial upon
> regular proceedings . . . under a system of jurisprudence likely to
> secure an impartial administration of justice between the citizens
> of its own country and those of other countries, and there is
> nothing to show either prejudice in the court, or in the system of
> laws under which it was sitting, or fraud in procuring the
> judgment, or any other special reason why the comity of this nation
> should not allow it full effect, the merits of the case should not, in
> an action brought in this country upon the judgment, be tried afresh
> as on the mere assertion of the party that the judgment was
> erroneous in law or in fact.

19       By his opposition, Mr. Bobulinski claims that he has established grounds for

20  nonrecognition sufficient to escape summary judgment, contending that: (1) debts

21  that he claims the plaintiff owes to him may serve as a set-off against the Cayman

22  Island judgment; (2) the Cayman Island judgment was "based on fraud" within the

_____

[2]       The decisions of sister states and circuits on their enactments of the Uniform
Act and common law comity principles are persuasive authorities in the
interpretation of California's UFCMJRA.   Section 1722 ("In applying and
construing this uniform act, consideration shall be given to the need to promote
uniformity of the law with respect to its subject matter among the states that enact
it"); *AO Alfa-Bank v. Yakovlev*, *supra,* 21 Cal.App.5th at 199.

1  meaning of section 1716(c)(1)(B)—allegedly because the judgment was tainted by

2  false testimony and premised in China Branding's "sham liquidation" and

3  "manufactured" inability to pay its debts; (3) that the judgment is repugnant to public

4  policy under section 1716(c)(1)(C), again because it was purportedly based upon

5  false representations and because the cost orders "unduly penalize him" for asserting

6  his rights as a creditor in a liquidation; (4) that the judgment is unenforceable under

7  section 1716(c)(1)(D) because the Cayman Island proceedings allegedly violated a

8  forum selection clause in Mr. Bobulinski's agreement with China Branding; and (5)

9  that the Cayman Island judgment "violated due process of law" within the meaning

10 of section 1716(c)(1)(G) because Mr. Bobulinski "was unable to develop a full

11 factual record of the evidence the Court relied on in its decision and was not able to

12 impeach the underpinnings of the Cayman Liquidation."

13      Mr. Bobulinski's claims, however, cannot create a triable issue in this case

14 because none of them amounts to a defense against recognition under the standards

15 employed by the UFCMJRA.  Mr. Bobulinski does not state a cognizable set-off

16 claim either factually or legally and the fraud assertions, even if true, can have no

17 affect on the recognition question because the supposed misrepresentations Mr.

18 Bobulinski points to do not qualify as fraud that "deprived the losing party of an

19 adequate opportunity to present its case" as the statute requires.  Section

20 1716(c)(1)(B).  Evidenced by Mr. Bobulinski's own declaration and the Cayman

21 Island judgment itself—which sets out a thoroughgoing analysis in lengthy detail of

22 the same arguments Mr. Bobulinski, his witnesses, his experts, and his counsel

23 presented to the Cayman court—Mr. Bobulinski indisputably *did* present his case

24 there, and his bid to relitigate those matters here, as noted, is impermissible.  *See also*

25 *Clay v. Hilton Worldwide Holdings, Inc.*, 2020 U.S. Dist. LEXIS 7320, at *19-20

26 (W.D. Wash. April 27, 2020) (collateral estoppel bars relitigation of matters

27 adjudicated by Thai court); *Folex Golf Indus. v. China Shipbuilding Indus.,* 2013

28 U.S. Dist. LEXIS 67044, at *13-14 (C.D. Cal. May 9, 2013) (collateral estoppel

applied to Chinese judgment).  And the opposition's remaining arguments fail for similar reasons—the facts asserted do not amount to actual defenses under the UFCMJRA and each relies on assertions and legal conclusions that are either belied by the actual record or irrelevant to the statute.

Mr. Bobulinski asks that the Court withhold ruling on this motion so that he can first conduct discovery about the Cayman Island lawsuit he prosecuted, and this, he says, might enable him to identify facts supportive of these same purported defenses.  But Federal Rule of Civil Procedure 56(d) requires the nonmovant to show that "for specified reasons, it cannot present facts *essential* to justify its opposition." Again, then, because the "defenses" Mr. Bobulinski asserts *cannot* prevent recognition of the Cayman Island judgment under the UFCMJRA, the discovery he wants cannot be essential to his opposition to the summary judgment motion.  The motion, then, is not premature as Mr. Bobulinski contends.  On the contrary, since it is now clear that Mr. Bobulinski *cannot* establish a cognizable ground for nonrecognition, plaintiff is now entitled to summary judgment by operation of law.

For these reasons, and as more fully explained below, summary judgment should now be granted.

## II.     THE OPPOSITION DOES NOT RAISE A GENUINE ISSUE FACT NECESSARY TO DEFEAT SUMMARY JUDGMENT

### A.  Mr. Bobulinski's Set-Off Defense Has No Merit

Mr. Bobulinski begins his opposition arguing that the plaintiff's supposed "debt" to him may serve as an offset preventing summary judgment but conspicuous by its absence is citation to any authority recognizing a set-off as a valid defense to recognition of a foreign judgment.  The UFCMJRA, as we've seen, commands recognition of the foreign judgment absent the defendant's establishment of an enumerated ground for nonrecognition, and offset is *not* among those grounds.  No offset, of course, was granted to Mr. Bobulinski in the Cayman Island judgment, and though the debt he asserts clearly predates that judgment, the opposition makes no

attempt to explain why it wasn't accounted for in those proceedings—or, if the set-off was erroneously denied, why he didn't appeal. The amount owed to the JOLs, of course, is precisely stated in the Cayman court's orders and this Court, as already demonstrated, is not the proper forum for reassessing those figures.

Nor, in any event, does Mr. Bobulinski state a cognizable set-off defense either factually or legally.  He asserts a "debt" of $874,775 the JOLs purportedly "admit" they owe to him consisting of the principal amount of his loan to China Branding plus a "finder's fee" he says is due to him under the loan agreement. Opp'n, pp. 1, 12.  But there clearly is no such debt, and certainly no such "admission" by anyone.  As the moving papers explain, the JOLs did recognize an unsecured claim of $650,000 on Mr. Bobulinski's part during the liquidation proceedings, but that hardly amounts to an "admission" of an actual debt for that or any other amount.  On the contrary, an unsecured claim in liquidation entails nothing more than a potential for an equitable share in whatever proceeds might remain in the estate in conjunction with satisfaction of senior and competing claims; China Branding, as the court found, was insolvent,[3] making it less than likely that Mr. Bobulinski's claim would ever be fully satisfied.  As the Cayman Island judgment noted at paragraph 24, "[u]nlike those of other Noteholders who agreed to subordinate their claims in order to facilitate the sale to Remark, the Appellant's claim for the US$650,000 advanced pursuant to his Promissory Note is not subordinated and ranks *pari passu* with other unsecured creditors."  *See, e.g.*,

---

[3]    *See, e.g.*, paragraph 27 of the Cayman Island judgment, observing that the balance of the China Branding Estate's proceeds, "following the payment of professional fees and other liquidation expenses, amount to approximately US$1.91 million, with in excess of US$1.4 million of professional fees and priority liquidation expenses remaining unpaid.  This is substantially exceeded by the value of creditor claims submitted by creditors in the liquidation which exceeded US$24 million, with claims totaling US$8,594,742 subsequently having been admitted by the JOLs.  The Company is therefore substantially insolvent."

1  Cayman Judgment, para. 156, approving the JOLs' concern that "it would not be fair

2  and equitable for Mr Bobulinski to be allowed to 'scoop the pool' to the detriment of

3  all other creditors by being treated as a secured creditor . . . ."

4       As the Cayman court made clear, then, the JOLs' task is to marshal the assets

5  of the China Branding estate and, after payment of priority creditor claims and

6  liquidation expenses, distribute whatever balance might remain to the unsecured

7  creditors.  But the entitlement Mr. Bobulinski claims here, i.e., to full payment now

8  before the marshalling of the assets and ahead of all the remaining creditors, would

9  utterly upend the Cayman Island judgment—the entire point of which was to *reject*

10  his claimed status as a secured creditor entitled to such priority.

11       "The right of setoff (also called 'offset') allows entities that owe each other

12  money to apply their mutual debts against each other, thereby avoiding 'the absurdity

13  of making A pay B when B owes A.' [Citation.]."  *Citizens Bank of Maryland v.*

14  *Strumpf*, 516 U.S. 16, 19 (1995).  But "[i]n order to warrant a setoff, 'the debts must

15  be mutual and the principle of mutuality requires that the debts should not only be

16  due to and from the same person, but in the same capacity.'"  *Aquis Es Texcoco, Inc.*

17  *v. Lopez*, 2014 U.S. Dist. LEXIS 23039, at *8-9 (S.D. Cal. Feb. 21, 2014) (quoting

18  *Kaye v. Metz*, 186 Cal. 42, 49 (1921).)  "The Ninth Circuit has set forth a three-prong

19  test for determining mutuality of debts: (1) the debts must be in the same right; (2)

20  the debts must be between the same individuals; and (3) those individuals must stand

21  in the same capacity."  *Los Angeles Cty. Employees Ret. Ass'n v. Towers Perrin,*

22  *Forster & Corsby, Inc.*, 2002 U.S. Dist. LEXIS 27916, at *25 (C.D. Cal. June 20,

23  2002).  "Courts have interpreted debts in the same right to mean that a 'pre-petition

24  debt cannot offset a post-petition debt.'"  *In re Ter Bush*, 273 B.R. 625, 629 (Bankr.

25  S.D. Cal. 2002).  "[E]ach debt or claim sought to be offset must have arisen prior to

26  filing of the bankruptcy petition."  *Newbery Corp. v. Fireman's Fund Ins. Co.* 95

27  F.3d 1392, 1398-99 (9th Cir. 1996).  *See Bulasky v. Federal Deposit Ins. Corp.*, 442

28  F.2d 341, 342 (9th Cir. 1971) (applying the mutuality principle to reject the

individual defendant's assertion of a set-off defense in the receiver's action against the individual on a debt owing to insolvent bank where the bank simultaneously stood as a debtor to the defendant's partnership.)  As the *Bulasky* court explained, the "[mutuality] principle is designed to secure an equitable disposition of a creditor's assets.  The allowance of the claimed offset in this case might grant to the partnership a greater proportionate recovery to the prejudice of other general creditors of the bank."  *Id.*

Mr. Bobulinski's set-off claims plainly fail the mutuality test, even if he could otherwise establish the reality of an existing debt.  His claims, of course, arise from pre-bankruptcy obligations of China Branding, not from the JOLs suing here in their capacity as liquidators of the China Branding estate.  And his claim with respect to the "finder's fee" is even worse because even if the debt had been real, it would not be owed to *Mr. Bobulinski* as it must be under the set-off rules.  Though the opposition is notably cagey in its description of the supposed debt (see Opp'n, pp. 1, 8, 12), the evidence on the record makes it clear that the "finder's fee" was claimed by Mr. Bobulinski's company, Global Investment Ventures LLC, not Mr. Bobulinski.  See Defendant's Statement of Uncontroverted Facts, ¶ 42; Cayman Island Judgment, ¶ 24.

**B.  Mr. Bobulinski's Allegations Do Not Constitute Fraud Necessary For Nonrecognition**

As the moving papers explain—and as remains undisputed now—the Cayman Island judgment awards money to the JOLs as compensation to them under Cayman law for the fees they expended in contesting Mr. Bobulinski's appeal of the JOLs' determination regarding the proof of debt he submitted in the liquidation proceeding. The JOLs allowed an unsecured claim with respect to the principal amount of his loan to China Branding, but rejected his claimed status as a secured creditor and his asserted entitlement to a multiplier.  That determination was upheld in Mr. Bobulinski's appeal to the Cayman Island Grand Court.

Much of the opposition brief is devoted to castigating the Cayman Island court for its disagreement with Mr. Bobulinski about the facts and law governing his claims, and many pages are given over to reiterating the same facts and contentions he presented and lost in that court.  In light of the prohibition against relitigation of these matters, it is hard to see the relevance of the opposition's profusion of issues that Mr. Bobulinski thinks the Cayman Island court got wrong.  Nonetheless, with respect to his instant fraud allegations, he asserts at page 16 that:

> Roseman [i.e., China Branding's former president who, Mr. Bobulinski says, lied to him as a means to induce his loans to China Branding] did not fully inform the Cayman court of the true nature of CBG's agreements with Bobulinski, and presented false testimony.  More importantly, the initiation of the Cayman Liquidation appeared to involve fraudulent circumstances and to be based upon a sham Event of Default.  Bobulinski suspects that CBG and its largest creditor, Hickory Grove, conspired to create a sham Event of Default to initiate the liquidation proceedings to their benefit, laying the foundation for CBG's sale of its assets to Remark, and in the process, sidestepping any veto rights or objections by CBG's creditors. Based in part on its reliance on CBG's extrinsic fraud as to the events behind the liquidation, the Cayman court did not consider these issues or allow for meaningful discovery on them. Bobulinski has sought discovery on these issues in this litigation.

Opp'n, p. 16.  Interspersed throughout his brief, Mr. Bobulinski reiterates these claims, accusing Mr. Roseman of fraudulently inducing Mr. Bobulinski's execution of the note and pledge agreements, insisting that Mr. Roseman gave false testimony in the Cayman Island litigation about his many promises, and contending that China Branding's liquidation was a sham because China Branding wasn't "really"

1     bankrupt.  *See, e.g*., p. 5, asserting that "CBG sent out false and/or fraudulent

2     correspondence to its Noteholders regarding its inability to pay outstanding

3     obligations, despite the fact that the Promissory Notes signed by Bobulinski and all

4     other CBG Noteholders ("Noteholders") did not have any payment obligations due."

5     Opp'n, p. 5.

6         These allegations, Mr. Bobulinski says, amount to "extrinsic fraud" and,

7     likening this case to *de Fontbrune v. Wofsy*, 409 F.Supp.3d 823 (N.D. Cal. 2019), he

8     argues that they may prevent recognition under the UFCMJRA.  But this case is

9     nothing like *de Fontbrune*.  Though the opposition barely mentions it[4], the foreign

10    judgment at issue in *de Fontbrune* arose from a *default* proceeding in France

11    conducted in the defendant's absence—the defendants were not served with the

12    summons and complaint and were unaware of the hearing—and the fraud consisted

13    in the plaintiff's failure to inform the French court that they no longer owned the

14    copyrights they were suing upon, meaning that they lacked standing to sue under

15    French law.  *Id.* at 829-30.  In opposition to the plaintiff's summary judgment motion

16    in their UFCMJRA action that followed, then, the defendants presented evidence that

17    the plaintiffs intentionally misled the French court about its very jurisdiction; and

18    since the defendants were unavailable to contest the subterfuge, the court found they

19    demonstrated a genuine issue of fact as to whether the judgment "was obtained by

20

---

21   [4]     The opposition does concede in a footnote that *de Fontbrune* arose from a

22   default in France (Opp'n, p. 16, fn. 4) but tries to minimize its importance, arguing

23   that the plaintiff's "misrepresentation [to the French court], not the default, was at
issue in the court's determination of extrinsic fraud."  Opp'n, p. 16, fn. 4.  But this

24   can't be right.  As *de Fontbrune* and the several authorities cited below make clear, a
misrepresentation by itself would at most constitute *intrinsic* fraud because the

25   opponent would ordinarily be in a position to correct the misrepresentation or

26   otherwise contend with it through the legal procedures afforded by the foreign forum.
The default and the defendant's unawareness of the French proceedings were *crucial*

27   to the determination of extrinsic fraud in *de Fontbrune* because they meant that the
defendant was unable to correct the record before the French tribunal.

28

1 fraud that deprived the losing party of an adequate opportunity to present its case"

2 sufficient to defeat summary judgment.  *Id.*; section 1716(c)(1)(B).

3       In its discussion of the "fraud" basis for nonrecognition, the *de Fontbrune*

4 court cited the comments to the Uniform Act, noting that "only extrinsic fraud—that

5 is 'conduct of the prevailing party that deprived the losing party of an adequate

6 opportunity to present its case'—provides a ground for nonrecognition." *de*

7 *Fontbrune* at 839, citing the Uniform Act Comments, §4 comment 7, noting as an

8 example of extrinsic fraud a plaintiff's "'obtain[ing] a default judgment against the

9 defendant based on a forged confession of judgment.'" *Id.*  "'Extrinsic fraud should

10 be distinguished from intrinsic fraud, such as false testimony of a witness or

11 admission of a forged document into evidence during the foreign proceeding;'

12 intrinsic evidence is not a basis for nonrecognition." *Id.*; *see Los Angeles Airways,*

13 *Inc. v Hughes Tool Co.*, 95 Cal.App.3d 1, 8-9 (1979) ("the test of extrinsic fraud is

14 fraud that prevented a fair adversary hearing by deliberately keeping a party ignorant

15 of the action or otherwise fraudulently preventing his claim or defense.  Normally, if

16 the party was aware of the proceeding, the fraud is intrinsic, but if the fraud totally

17 precluded his raising a claim or defense it will be grounds for relief.")  "In order to

18 be considered extrinsic fraud, the alleged fraud must be such that it prevents a party

19 from having an opportunity to present his claim or defense in court . . . or deprives a

20 party of his right to a day in court." *Green v. Ancora-Citronelle Corp.*, 577 F.2d

21 1380, 1384 (9th Cir. 1978).

22       Mr. Bobulinski's allegations do not help him, of course, because the "fraud"

23 he describes is plainly of the intrinsic variety and cannot serve as a predicate for

24 nonrecognition.  Far from being *deprived* of an adequate opportunity to present his

25 case, it was Mr. Bobulinski himself who brought and prosecuted the Cayman Island

26 appeal, and the record puts it beyond cavil that he *did* press a full and vigorous

27 litigation, complete with cross-examination, counsel, and experts of his choosing.

28 He indisputably received a full, thoughtful, and attentive hearing on the very same

1   issues he now attempts to raise here, which the Cayman Island court expressly

2   considered and rejected.  See, for example, among many others, paragraph 167 of the

3   judgment:  "With all due respect to Mr Bobulinski, who is a professional investor

4   and business person, it is highly improbable that Mr Bobulinski could not have been

5   aware of the Company's financial difficulties, given *inter alia* the Company's need

6   to borrow further funds from him.  The Court notes that this is a matter of relevance

7   to Mr Bobulinki's realism and reliability as a witness rather than to his integrity as

8   such."  Kendall Decl., (Cayman Judgment) ¶ 167.  *See also, e.g*., *Id.,* ¶¶ 14, 15, 16,

9   167, 178, 179, 180, 181, 183, 194, 195, 199, 200.  The Cayman Island court

10  specifically found, contrary to Mr. Bobulinski's insistence now, that China Branding

11  *was* "really insolvent," foreclosing his bid to relitigate those matters here.  These

12  findings are binding upon Mr. Bobulinski here; he plainly had his day in court and he

13  may not second guess those rulings now.

14      **C.  The Cayman Island Judgment Is Not Repugnant To Public Policy**

15          "California courts have set a high bar for repugnancy under the Uniform Act.

16  The standard . . . measures not simply whether the foreign judgment or cause of

17  action is contrary to our public policy, but whether either is 'so offensive to our

18  public policy as to be 'prejudicial to recognized standards of morality and to the

19  general interests of the citizens.' [Citations]."  *Ohno v. Yasuma,* 723 F.3d 984, 1002

20  (9th Cir. 2013) (citing *Java Oil Ltd. v. Sullivan*, 168 Cal.App.4th 1178, 1189-92

21  (2008); *Wong v. Tenneco, Inc*., 39 Cal.3d 126, 135-36 (1985).  The public policy

22  exception does not apply unless a foreign-country judgment or law on which it is

23  based is "so antagonistic to California [or federal] public policy interests as to

24  preclude the extension of comity."  *Ohno,* 723 F.3d at 991.

25          In Justice Cardozo's memorable formulation, "[w]e are not so provincial as to

26  say that every solution of a problem is wrong because we deal with it otherwise at

27  home."  *Loucks v. Standard Oil Co.*, 224 N.Y. 99, 110 [120 N.E. 198] (N.Y. 1918).

28  Thus, an American court should only "refuse to enforce a foreign right" where to do

so would "violate some fundamental principle of justice, some prevalent conception of good morals, some deep rooted tradition of the common weal." *Id.* at 111. Recognition, then, may not be denied "unless a foreign country's judgments are the result of outrageous departures from our own notions of civilized jurisprudence." *British Midland Airways Ltd. v. Int'l Travel, Inc.*, 497 F.2d 869, 871 (9th Cir. 1994). *See, e.g., In re Hashim,* 213 F.3d 1169, 1172 (9th Cir. 2000) (reversing bankruptcy court's refusal to enforce English court's award of $10 million in costs against debtors whose assets had been frozen by Saddam Hussein); *Milhoux v. Linder*, 902 P.2d 856, 861-862 (Colo. Ct. App. 1995) (recognizing Belgian judgment based upon 30-year statute of limitations); *Estate of Bir*, 83 Cal.App.2d 256 (1948) (in context of intestate succession, India's law permitting polygamy applied under principles of comity.)

In contrast, true repugnance is found where real world enforcement would offend our sense of what is just and decent.  *See Pentz v. Kuppinger*, 31 Cal.App.3d 590, 597 (1973) (refusing to recognize Mexican judgment requiring payment of alimony after remarriage because it was "manifestly contrary to California public policy"); *Overseas Inns S.A.P.A. v. United States*, 911 F.2d 1146, 1149 (5th Cir. 1990) (refusing to recognize Luxembourg bankruptcy judgment purporting to discharge U.S. income tax debt—"inexpugnable public policy that favors payment of lawfully owed federal income taxes"); *Tataragasi v. Tataragasi*, 477 S.E.2d 239, 246 (N.C. App. 1996) ("The Turkish court's order did not discuss the best interests of the children, but instead talked about . . . the importance of Islam, circumcision and defendant's place in society"); *Smith v. Superior Court*, 41 Cal.App.4th 1014, 1025 (1996) (refusing to enforce Michigan injunction against expert's testifying about GM vehicles as it "blatantly and irreconcilably conflicts with our fundamental public policy against the suppression of evidence.")

Mr. Bobulinski claims repugnancy here because he "intends to discover and prove through his served discovery that the Cayman Judgment is based on CBG's

1  false representations as to the nature of Bobulinski's creditor status and the false

2  pretenses upon which the liquidation was based." Opp'n, pp. 17-18. He also thinks

3  it's repugnant because the Cayman Island court disagreed with him about his

4  contractual entitlements under Cayman law. *Id.* But these contentions, of course,

5  cannot avail him for the reasons already explained and even if he could raise them

6  now, they are manifestly insufficient to establish repugnancy under these standards.

7      He goes on to claim that public policy is offended by the Cayman Island

8  judgment's departure from the traditional American Rule, by which a party

9  ordinarily bears its own attorney's fees. *See* section 1715(b)(2) (authorizing

10  nonrecognition of a foreign judgment consisting of a "fine or other penalty.") But as

11  the moving papers indicated, the attorney fee award is not a penalty under the

12  UFCMJRA. *Java Oil, Ltd. v. Sullivan*, 168 Cal.App.4th 1178, 1187 (2008). The

13  opposition tries to distinguish *Java Oil*, claiming that it "allowed the domestication

14  of a fee award based upon a malicious and/or fraudulent filings," while the awards

15  here "punish Bobulinski merely for asserting his rights as a creditor or 'prosecuting'

16  his claim." Opp'n, p. 18. But that ignores the point of the case. Instead, a fee award

17  like this one, compensating the prevailing party for costs expended defending the

18  lawsuit, is not "penal within the rules of private international law. A statute penal in

19  that sense is one that awards a penalty to the state, or to a public officer in its behalf,

20  or to a member of the public, suing in the interest of the whole community to redress

21  a public wrong. . . . The purpose must be, not reparation to one aggrieved, but

22  vindication of the public justice . . .' [Citations.]" *Java Oil*, at 1187. Mr. Bobulinski

23  complains the fees "punished" him for his supposed pursuit of his rights, but like the

24  defendant in *Java Oil*, he "was not being punished for an offense against the public

25  but instead was ordered to compensate respondents for the fees they incurred in

26  defending a lawsuit." *Id.* at 1188. "No mandatory fine, sanction, or multiplier was

27  imposed. Thus, although Sullivan views the attorney fee award as a penalty for

28  groundless litigation, it was not a penalty within the meaning of the UFCMJRA." *Id.*

at 188-89.  And though the English Rule is not the American Rule, its recognition is not contrary to public policy.  "That there is a difference in the law of the two countries does not show that the British law applied is repugnant to public policy." *Id.* at 1192.

### D.  The Cayman Islands Proceeding Was Not Contrary to Any Agreement

Mr. Bobulinski's contention here, based upon the forum selection clause in his agreement with China Branding, does not appear to be serious.  The judgment at issue here, of course, arose from the suit Mr. Bobulinski initiated himself against the JOLs with respect to liquidation proceedings in the Cayman Islands; the forum selection provision in his agreement with China Branding was not implicated.

### E.  There Was No Due Process Violation

Mr. Bobulinski finally contends the Cayman Islands Judgment violated his due process rights but the reasons he gives are little more than a reiteration of his "fraud" claims and they thus fail for the same reasons.  He adds that he "was unable to develop a full factual record of the evidence the Court relied on in its decision (Opp'n, p. 20), and complains that he was unable to conduct "standard trial discovery" of the type available to litigants in the United States.  Opp'n, pp. 7-8, 9, 16.  But these claims, even if it were true, could not amount to a due process violation under the UFCMJRA.  Nonrecognition on due process grounds is "reserved for challenges as to the integrity or fundamental fairness with regard to the particular proceeding leading to the foreign country judgment." *See, e.g., Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1413 (9th Cir. 1995) (evidence established that defendant "could not expect fair treatment from the courts of Iran, could not personally appear before those courts, could not obtain proper representation, and could not obtain local witnesses").  These are the sorts of deprivations the UFCMJRA has in mind when it speaks of due process violations.

But "[f]oreign courts are not required to adopt 'every jot and tittle of American due process.' [Citation]." *Alfa-Bank v. Yakovlev, supra,* 21 Cal.App.5th 189, 215.

Foreign nations "[are] not bound by our notions of due process and we do not insist on the additional niceties of domestic jurisprudence in deciding whether to enforce a [foreign] judgment." *Id.* at 215-16 (recognizing Russian judgment under the UFCMJRA). Mr. Bobulinski's claimed inability, then, to conduct the American style discovery he says he wanted, then, is plainly a far cry from a cognizable due process violation. On the contrary, "'[t]he right to pretrial discovery is not a part of the U.S. concept of due process, let alone of international due process.' [Citation]." *Midbrook Flowerbulbs Holland B.V. v. Holland Am. Bulb Farms, Inc.*, 874 F.3d 604, 617 (affirming summary judgment in UFCMJRA action on Dutch judgment notwithstanding the defendant's claim of a due process violation in its inability to conduct full discovery in Holland).

### F. Summary Judgment Is Not Premature

A continuance or denial of summary judgment would not be appropriate here because Mr. Bobulinski has not pointed to facts he hopes to find that would be "essential to justify [his] opposition." Rule 56(d). In his 20-page opposition to plaintiff's motion, Mr. Bobulinski alleged a wide variety of grounds that he says would permit nonrecognition under the UFCMJRA; but as demonstrated, those grounds *cannot* entail nonrecognition as a matter of law, meaning that even if he could discover further facts supportive of his contentions, they could not help him. Mr. Bobulinski was, after all, intimately familiar with the Cayman Island litigation he prosecuted; if he really had been denied due process or suffered other deprivations sufficient to enable him to establish a basis for nonrecognition, glaring examples should be readily identifiable by him.

To prevail on a request for additional discovery under Rule 56(d), a party must show that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed Home Loan Mortg. Corp.,* 525 F.3d 822, 827 (9th Cir. 2008). The request is

properly denied if the information appears to be either only "generically relevant" (*Id.*) or that its basis is speculation. *In re Deep Vein Thrombosis*, 356 F.Supp.2d 1055, 1065 (N.D. Cal. 2005). The requesting party must point to specific information that would actually defeat summary judgment. *United States ex rel. Afflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002). A continuance is inappropriate if the information sought is already available to the moving party. *FTC v. J.K. Publs., Inc.*, 99 F.Supp.2d 1176, 1199-1200 (C.D. Cal. 2000) (continuance should not be granted to litigant who has personal knowledge of facts about which she seeks discovery.)

The court's concluding remarks in *Midbrook Flowerbulbs, supra,* 874 F.3d at 620, rejecting the defendant's bid to conduct discovery into the same topics it wanted to discover in the Dutch proceedings are particularly apt here:

> [T]his discovery would not "preclude summary judgment," because it had no bearing on whether the proceedings in the Dutch courts were 'compatible with the requirements of due process of law' under [Washington's UFCMJRA]. Rather, Holland America sought this discovery because it would 'conclusively determine whether Midbook was in fact entitled to any judgment whatsoever in the Dutch proceedings.' Because this fact was not relevant—let alone 'essential'—to the issues raised by Midbook's motion for summary judgment, the district court did not abuse its discretion in denying Holland America's request for additional discovery.

For the same sorts of reasons, the discovery Mr. Bobulinski seeks likewise cannot be relevant, and his request should be likewise denied.

## III.  CONCLUSION

Since there is accordingly no genuine issue of fact suitable for trial in this

1  case, and because plaintiff is entitled to judgment as a matter of law, summary

2  judgment should now be granted.

3      Respectfully submitted.

4  DATED: December 4, 2020        LAW OFFICES OF ROBERT W. COHEN

5             A Professional Corporation

6             By   /s/  Robert W. Cohen

7               Robert W. Cohen

             Mariko Taenaka

8               Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2020 a copy of the foregoing document was filed electronically via the Court's CM/ECF system. Pursuant to Local Rule 5-3.2.1 notice of filing will be served on all parties by operation of the Court's CM/ECF system, and parties may access this filing through the Court's CM/ECF system.

/s/ Mariko Taenaka
Mariko Taenaka