Robert W. Cohen (SBN 150310)
Mariko Taenaka (SBN 273895)
**LAW OFFICES OF ROBERT W. COHEN**
A Professional Corporation
1901 Avenue of the Stars, Suite 1900
Los Angeles, California   90067
Telephone: (310) 282-7586
Facsimile: (310) 282-7589
rwc@robertwcohenlaw.com
mt@robertwcohenlaw.com

Attorneys for Plaintiff
CHINA BRANDING GROUP LIMITED
(IN OFFICIAL LIQUIDATION)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHINA BRANDING GROUP LIMITED (IN OFFICIAL LIQUIDATION), by and through its Joint Official Liquidators, Hugh Dickson of Grant Thornton Specialist Services (Cayman), Limited and David Bennett of Grant Thornton Recovery & Reorganisation Limited,<br><br>Plaintiff,<br><br>v.<br><br>TONY BOBULINSKI,<br><br>Defendant. | Case No.  2:20-cv-06759 RGK (JCx)<br><br>**PLAINTIFF'S REPLY TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**<br><br>Date:  December 21, 2020<br>Time:  9:00 a.m.<br>Courtroom:   850 |

Pursuant to Local Rule 56-1, Plaintiff China Branding Group Limited (In Official Liquidation), by and through its Joint Official Liquidators, Hugh Dickson and David Bennett of Grant Thornton Specialist Services (Cayman), Limited, submits the following Reply to Defendant Tony Bobulinski's responses to Plaintiff's Statement of Uncontroverted Facts and Conclusions of Law.

| Plaintiff's Uncontroverted Facts | Defendant's Response |
|---|---|
| 1.  Plaintiff China Branding Group Limited (In Official Liquidation) is a company in liquidation proceedings in the Cayman Islands, which acts by and through its Joint Official Liquidators in the Cayan Islands.<br><br>Kendall Decl., ¶ 1. | 1.  Undisputed |
| 2.  The Defendant Tony Bobulinski claims to be a creditor of Plaintiff China Branding with respect to business loans he made to it in 2015 and 2016.<br><br>Kendall Decl., ¶ 2. | 2.  Undisputed for purposes of this motion only. |
| 3.  In April 2017 Mr. Bobulinski submitted a "Proof of Debt" in the liquidation proceeding, claiming secured claim of US$1,765,000; the JOLs only allowed unsecured claim in the amount US$650,000.<br><br>Kendall Decl., ¶ 2. | 3.  Undisputed that Bobulinski's Proof of Debt totaled $1,765,000, which included legal fees to which Bobulinski should have been entitled for enforcing his rights under his Promissory Note after he was forced to file a "Proof of Debt" when CBG's largest creditor Hickory Grove initiated a wind-up proceeding. (See Declaration of Tony Bobulinski Decl. ¶ 8, (Exh. C (Note)); Bobulinski Material Facts Nos. 21-27, 40-14 below.) |
| 4.  In July 2017, Mr. Bobulinski filed suit with the Grand Court of the Cayman Islands challenging the JOLs' determination in a proceeding entitled *In the Matter of China Group Limited (In Official Liquidation)*, Cause No. FSD 52 of 2016 (RMJ) ("the Cayman Islands Action"). | 4.  Undisputed that Bobulinski was forced to file a challenge to the JOLs' determination after CBG's creditor Hickory Grove initiated a wind-up proceeding that led to the challenged JOL determinations. (See Bobulinski Material Fact Nos. 21-27, 40-41 below.) |

| | |
|---|---|
| Kendall Decl., ¶ 4. | |
| 5.  In pretrial proceedings in the Cayman Islands Action, the court issued two cost orders against Mr. Bobulinski, the first dated November 13, 2018 in the amount of US$56,431.82, and the second on January 8, 2019 in the amount of US$57,208.58.<br><br>Kendall Decl., ¶ 5. | 5.  Disputed. Assumes facts not in evidence. China Branding Group ("CBG") has introduced no competent or sufficient evidence regarding any "pretrial proceedings" in the underlying Cayman Islands litigation or the bases for any "pre-trial cost orders." Plaintiff has also introduced no evidence of any "cost orders" or that the "cost orders" were issued by the "the court." In fact, the purported "cost orders" attached as Exhibit A to the Kendall Declaration indicate they are not "cost orders" but "Cost Certificate[s]" and were signed by a "Taxing Officer" not the court. |
| **Plaintiff's Reply:**<br>Plaintiff's evidence establishes the fact and amount of the cost orders; this is not a genuine dispute. | |
| 6.  In December 2018 and December 2019, Mr. Bobulinski made payments totaling $41,417.82 to the JOLs in partial satisfaction of the first cost order.  The second cost order remains unpaid in its entirety.<br><br>Kendall Decl., ¶ 5. | 6.  Disputed. Assumes facts not in evidence. CBG has introduced no competent or sufficient evidence regarding any "pre-trial cost orders," payments or otherwise acknowledgment of any "pre-trial cost orders," or on what bases the "pre-trial cost orders" were issued. |
| **Plaintiff's Reply:**<br>Plaintiff's evidence establishes the cost orders and Mr. Bobulinski's payments; this is not a genuine dispute. | |
| 7.  A contested 5-day hearing was conducted in the Caymans Islands Action in October 2018, followed by written submissions by the parties; judgment was issued on January 23, | 7.  Disputed. Asserts a legal conclusion; assumes facts not in evidence. The hearing was not "contested" in the sense that Bobulinski was denied the opportunity |

| | |
|---|---|
| 2019, rejecting Mr. Bobulinski's claims in their entirety.<br><br>Kendall Decl., ¶ 6. | to develop an underlying factual record to present his case. Bobulinski attempted to conduct discovery typical to that available to litigants in U.S. Courts, where the forum selection clause in Bobulinski's Promissory Note determined it would be litigated. Discovery would have allowed Bobulinski to, among other things, present to the Court a full picture of the negotiations between Bobulinski and Roseman, and CBG, to discover the nature of the initiation of the sham Cayman Liquidation that forced Bobulinski into the Cayman courts and to learn more about the internal deliberative process of all relevant parties that led to the results in the Cayman Liquidation. (Bobulinski Decl. ¶¶ 8, 17 (Exh. C (Note)). |

**Plaintiff's Reply:**
Plaintiff's evidence establishes the cited facts; this is not a genuine dispute.

| | |
|---|---|
| 8.  On February 5, 2019, the Cayman Islands Grand Court issued a third order of costs against Mr. Bobulinski in the amount of US$562,170.94 for the JOLs' costs in contesting the Cayman Islands Action.  The third cost order is unpaid in its entirety.<br><br>Kendall Decl., ¶ 7. | 8.  Disputed. Assumes facts not in evidence. CBG has introduced no competent or sufficient evidence regarding the basis for the purported February 5, 2019 "order of costs." The Cayman Judgement attached to the Kendall Declaration as Exhibit B makes no mention of an order of costs or right to an order of costs. Plaintiff has also not introduced the purported "order of costs" or that the "order of costs" was issued by the "Cayman Islands Grand Court." In fact, the document attached as Exhibit C to the Kendall Declaration is not an "order of costs" but a "Default Costs Certificate" |

| | that was not signed or issued by the "Cayman Islands Grand Court" but instead a registrar of the "Financial Services Division." |
|---|---|
| **Plaintiff's Reply:** Plaintiff's evidence establishes the fact and amount of the cost orders; this is not a genuine dispute. ||
| 9.  The judgment and costs orders in the Cayman Islands Action are final and enforceable.<br><br>Kendall Decl., ¶ 8. | 9.  Disputed. Asserts a legal conclusion; assumes facts not in evidence.  CBG has introduced no competent or sufficient evidence regarding the basis for the purported "cost orders." The Cayman Judgement attached to the Kendall Declaration as Exhibit B makes no mention of an order of costs or right to an order of costs. Plaintiff has also not introduced the purported "order of costs" or provided evidence that the "order of costs" was issued by the "Cayman Islands Grand Court" or recognized as a "foreign country money judgment." |
| **Plaintiff's Reply:** Plaintiff's evidence establishes the finality of the judgment; this is not a genuine dispute. ||
| 10.  The post-judgment interest rate on Cayman Islands judgments issued in United States dollars is 2.375%.<br><br>Kendall Decl., ¶ 9. | 10.  Undisputed and immaterial |

## DEFENDANT TONY BOBULINSKI' STATEMENT OF MATERIAL FACTS

| Defendant's Facts | Plaintiff's Response |
|---|---|
| 1. China Branding Group was a Cayman Island corporation, whose | 1, Undisputed and immaterial. |

| | |
|---|---|
| primary business was to provide live event and media content into the Chinese marketplace.<br><br>Declaration of Peter Kendall ("Kendall Decl."), Ex. B (January 23, 2019 Cayman Judgment ("Cayman Judgment") ¶ 3. | |
| 2. In or around 2015, CBG needed to find working capital to fund its growth.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 10. | 2, Undisputed and immaterial. |
| 3. As a result, Roseman, the founder and CEO of CBG, urgently sought ways to quickly infuse funding into the company.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 21. | 3, Undisputed and immaterial. |
| 4. On or about March 5, 2015, Roseman emailed his long-time friend and business associate, Tony Bobulinski, seeking a short-term bridge loan for CBG.<br><br>Declaration of Tony Bobulinski ("Bobulinski Decl.") ¶ 2, Ex. A.) | 4.  Undisputed and immaterial. |
| 5. In that email, Roseman claimed that the loan was to be "a senior secured loan to be paid off in first priority" and "secured by all our assets (content licenses, our production library and our fixed production equipment in our 10k square foot studio in Culver City) and all bridge loan principal and | 5. Undisputed and immaterial. |

| | |
|---|---|
| interest secured in first position." Bobulinski Decl., ¶ 2, Ex. A | |
| 6. During these conversations between Roseman and Bobulinski, Roseman told Bobulinski that CBG owned the rights and interests in certain assets, including a content library, license agreements, and physical assets (including production equipment) (the "Collateral"). Bobulinski Decl., ¶ 3. | 6. Undisputed and immaterial. |
| 7. Roseman acted consistently with his statements that the Collateral was owned by CBG. For example, Roseman offered to take Bobulinski to "come see the Culver studio" in a March 20, 2015 email. Bobulinski Decl., ¶ 4., Ex. B. | 7. Undisputed and immaterial. |
| 8. Roseman also repeated these same statements during a March 25, 2015 in-person meeting at the Peninsula Hotel in Beverly Hills, when he went into further detail explaining CBG's purported assets to Bobulinski. Bobulinski Decl., ¶ 5. | 8. Undisputed and immaterial. |
| 9. Roseman informed Bobulinski that he would take a loan on whatever terms Bobulinski asked for or needed. Bobulinski Decl., ¶ 5. | 9. Undisputed and immaterial. |

| | |
|---|---|
| 10. Bobulinski required that his loan be senior secured by all of CBG's assets.<br><br>Bobulinski Decl., ¶ 5. | 10. Undisputed and immaterial. |
| 11. Roseman also promised Bobulinski that, if CBG were sold, he would receive a 2.5 multiplier of his principal loan amount.<br><br>Bobulinski Decl., ¶ 5. | 11. Disputed as contradictory to the findings of the Cayman Island Court; but immaterial in any event.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 252-254. |
| 12. Roseman agreed to these terms, assuring Bobulinski that any loan he provided would be senior secured by all of CBG's assets and, if CBG was sold, his loan would be senior in order of funding, and that he would be entitled to a 2.5 multiplier of his principal loan amount.<br><br>Bobulinski Decl., ¶¶ 5-6. | 5. Disputed as contradictory to the findings of the Cayman Island Court; but immaterial in any event.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 252-256. |
| 13. Roseman also assured Bobulinski that their understanding would be properly documented by the law firm Sheppard Mullin Richter & Hampton, LLP, counsel for CBG.<br><br>Bobulinski Decl., ¶ 7. | 13. Undisputed and immaterial. |
| 14. Boblulinski trusted Roseman, on the basis of their long-standing friendship and business association. Based on his word, Bobulinski did not retain separate counsel.<br><br>Bobulinski Decl., ¶ 7. | 14. Undisputed and immaterial. |

| | |
|---|---|
| 15. On or about April 15, 2015, Bobulinski entered into a Senior Secured Promissory Note (the "Note") and a Pledge Agreement (the "Pledge Agreement").<br><br>Bobulinski Decl. ¶ 8, Exs. C (Note) and D (Pledge Agreement). | 15. Undisputed and immaterial. |
| 16. Bobulinski entered into the Note and the Pledge Agreement based on Roseman's assurances that the Note was secured by the Collateral, that he would receive a 2.5 multiplier of his principal no matter what, and that Bobulinski would have the right to approve any sale of CBG, and would not have entered into them absent these assurances.<br><br>Bobulinski Decl., ¶ 8. | 16. Disputed as contradictory to the findings of the Cayman Island Court; but immaterial in any event.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 197-200; 252-256. |
| 17. Section 7 of the Pledge Agreement required CBG to obtain Bobulinski's written consent before it could transfer or sell any part of the Collateral.<br><br>Bobulinski Decl. ¶ 8, Ex. D. | 17. Disputed as contradictory to the findings of the Cayman Island Court; but immaterial in any event.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 145-147. |
| 18. The Note had a forum selection clause, requiring any dispute related to the Note or the Pledge Agreement to be brought in California. Specifically, Paragraph 10.4 of the Note stated that CBG "(i) agrees that any legal action, suit or proceeding arising out of or relating to this Note or the Pledge Agreement may be brought in the courts of the State of California or of the United States of America for the Southern District of California, and (ii) submits to the exclusive jurisdiction of | 18. Undisputed and immaterial. |

| | |
|---|---|
| any such court in any such action, suit or proceeding." Bobulinski would not have signed the Note or the Pledge Agreement, absent this clause.<br><br>Bobulinski Decl. ¶ 8, Ex. C (Note) ¶ 10.4. | |
| 19. In the fall of 2015, Bobulinski introduced Roseman to Shing Tao, the CEO and Chairman of Remark Media Inc. ("Remark").<br><br>Bobulinski Decl. ¶ 9. | 19. Undisputed and immaterial. |
| 20. On February 18, 2016, Remark executed a Letter of Intent stating its interest in buying CBG for $23.5 million.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 15. | 20. Undisputed and immaterial. |
| 21. CBG's shareholder, SIG, who had veto rights, opposed the sale.<br><br>Bobulinski Decl., ¶ 10. | 21. Undisputed and immaterial. |
| 22. On March 17, 2016, a special CBG board meeting (not a quarterly or regularly-scheduled meeting) was held wherein CBG's directors, including Roseman, Robert Roche, and Jacob Fisch discussed SIG's opposition to the sale.<br><br>Bobulinski Decl., ¶ 10. | 22. Undisputed and immaterial. |

| | |
|---|---|
| 23. On April 24, 2016, after receiving a valuation of $23.5 million from Remark, CBG sent correspondence to its Noteholders regarding its inability to pay its outstanding payment obligations, despite the fact that the Promissory Notes signed by Bobulinski and all other Noteholders did not have any payment obligations due.<br><br>Bobulinski Decl., ¶¶ 10-11, Ex. C (Note)). | 23. Undisputed as to the fact that correspondence was sent by CBG to Noteholders, but disputed as to the remainder as contradictory to the findings of the Cayman Island Court; but immaterial in any event.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 27. |
| 24. This writing was sent Jacob Fisch at the direction of CBG, and in concert with one of CBG's co-directors, Robert Roche (for whom Fisch worked). Based on his knowledge of CBG's dealings, SIG's objections to the sale to Remark, and in part on the close relationship between Roche and Roseman, Bobulinski believes that CBG and Hickory Grove conspired to initiate sham liquidation proceedings to their benefit.<br><br>Bobulinski Decl., ¶ 12. | 24. Disputed as contradictory to the findings of the Cayman Island Court; but immaterial in any event.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 27. |
| 25. Roche was an owner and principal of CBG's largest creditor, Hickory Grove LLC.<br><br>Bobulinski Decl., ¶ 12; Kendall Decl., Ex. B (Cayman Judgment) ¶¶ 16, 54.) | 25. Undisputed and immaterial. |

| | |
|---|---|
| 26. The April 24, 2016 email from Fisch to the effect that CBG could not meet its obligations under the notes, purported to be an "admission in writing" which, if it was such an admission, would create an "Event of Default" under the Bobulinski Promissory Note and other similar Notes, opening the door for creditors to initiate wind-up proceedings.<br><br>Bobulinski Decl., ¶ 11; Kendall Decl., Ex. B (Cayman Judgment) ¶ 17.) | 26. Disputed as contradictory to the findings of the Cayman Island Court; but immaterial in any event.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 17.) |
| 27. On April 28, 2016, Hickory Grove presented a creditor's winding up petition against CBG to the Cayman Court.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 17. | 27. Undisputed and immaterial. |
| 28. SIG objected to the appointment of the Joint Provisional Liquidators on the grounds that it violated Cayman law.  The Cayman court agreed, and ordered the Joint Official Liquidators ("JOLs") to begin the liquidation process of CBG (the "Cayman Liquidation"), pursuant to a winding up order dated August 18, 2016 issued in the Cayman Islands.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶¶ 17-18; Bobulinski Decl. ¶ 14, Ex. E. | 28. Undisputed and immaterial. |

| | |
|---|---|
| 29. At all times relevant, Hickory Grove owned 33% of RAAD, the company which purportedly owned the "Collateral" which was supposed to be security for Bobulinski's loan to CBG.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 80. | 29. Undisputed and immaterial. |
| 30. On September 20, 2016 CBG entered into an agreement to sell all of its assets to Remark in an Asset and Securities Purchase ("APA") Agreement.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 80. | 30. Undisputed and immaterial. |
| 31. As a condition precedent to the APA, it was agreed that Hickory Grove and RAAD's two other shareholders, a company owned by Roseman's wife and the Roseman Family Trust, would transfer their shares in RAAD to CBG for consideration of $10.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 80. | 31. Undisputed and immaterial. |
| 32. Hickory Grove, within a week of its "loan" to CBG of $670,000, initiated wind-up proceedings, and thereafter, agreed to transfer its shares of RAAD, the company which, according to the JOLs, owned the collateral securing Bobulinski's Note, to CBG for $10. | 32. Undisputed and immaterial. |

| | |
|---|---|
| Kendall Decl., Ex. B (Cayman Judgment) ¶ 80. | |
| 33. It was a further condition precedent to the APA for all of CBG's Noteholders to enter into respective distribution agreements (the "Distribution Agreements"), which would subordinate their claims to CBG's general body of unsecured creditors.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 80. | 33. Undisputed and immaterial. |
| 34. The Distribution Agreements also had the result of negating the pledge agreements of all Noteholders, which all included the same Section 7 as Bobulinski's Pledge Agreement and which prevented CBG from transferring assets without the Noteholders' consent.<br><br>Bobulinski Decl. ¶ 8, Ex. D (Pledge Agreement). | 34. Disputed as contradictory to the findings of the Cayman Island Court; but immaterial in any event.<br><br>Kendall Decl., Ex. B (Cayman Judgment, ¶ 20.) |
| 35. All the Noteholders signed their Distribution Agreements except Bobulinski.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶¶ 20-21; Bobulinski Decl. ¶ 14. | 35. Undisputed and immaterial. |

| | |
|---|---|
| 36. Therefore, Bobulinski's Pledge Agreement remained effective, and Bobulinski had the contractual right to stop any deal by CBG to transfer its assets.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶¶ 20-21; Bobulinski Decl. ¶¶ 8, 10 Ex. D (Pledge Agreement).) | 36. Disputed as contradictory to the findings of the Cayman Island Court; but immaterial in any event.<br><br>Kendall Decl., Ex. B (Cayman Judgment, ¶ 21.) |
| 37. Despite this, CBG pushed for the deal with Remark to close.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 21. | 37. Disputed as contradictory to the findings of the Cayman Island Court; but immaterial in any event.<br><br>Kendall Decl., Ex. B (Cayman Judgment, ¶ 21.) |
| 38. On or about September 19, 2016, the three RAAD shareholders transferred their shares to CBG.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 80. | 38. Undisputed and immaterial. |
| 39. One day later, CBG entered the APA to sell all of its assets to Remark, including its shares of RAAD, which continued to own the Collateral securing Bobulinski's Note. To this date, Bobulinski does not know how the sale of CBG to Remark closed without his required consent, pursuant to the Pledge Agreement.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 80. | 39. Undisputed and immaterial. |

| | |
|---|---|
| 40. Remark's takeover of CBG constituted a "Liquidity Event" under the Note and therefore, according to Roseman and Bobulinski's agreements, CBG was required to pay him the principal of the Note with the promised 2.5x return upon the close of the sale to Remark for a total of $1,625,000.<br><br>Bobulinski Decl. ¶ 8, Ex. C (Note); ¶ 10.) | 40. Disputed as contradictory to the findings of the Cayman Island Court; but immaterial in any event.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 197-200; 252-256. |
| 41. Because the Cayman Liquidation that was initiated under apparent false pretenses by CBG and Hickory Grove, Bobulinski was forced to submit his proof of debt claim in the Cayman court to preserve his rightful interests. But for this sham liquidation, he could have litigated his claim in California per the forum selection clause the parties had negotiated for the Note and Pledge Agreement.<br><br>Bobulinski Decl. ¶¶ 15-16. | 41. Disputed as contradictory to the findings of the Cayman Island Court; but immaterial in any event.<br><br>Kendall Decl., Ex. B (Cayman Judgment, ¶ 27.) |
| 42. The JOLs rejected Bobulinski's Proof of Debt, claiming that Bobulinski was only owed a balance of the principal $650,000 and concluding that Bobulinski's Note was not secured by the Collateral. This dispute was one of the bases for the legal proceeding in the Cayman Litigation. The JOLs also admitted that Bobulinski's company, Global Investment Ventures, LLC, was owed a finder's fee of $224,775. | 42. Disputed to the extent that Bobulinski or Global Ventures, LLC are owed any money from CBG. Instead, the JOLs have only admitted that Bobulinski has a claim for $650,000 and that Global Ventures, LLC has a claim for $224,775 against the CBG estate. |

| | |
|---|---|
| Kendall Decl., Ex. B (Cayman Judgment) ¶¶ 36, 100; Bobulinski Decl. ¶ 15. | |
| 43. During the Cayman Litigation, the JOLs hired purported expert, Mark C. Dosker of Squire Patton Boggs to provide a report analyzing issues certain issues including the APA.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶¶108, 113. | 43. Undisputed and immaterial. |
| 44. In the Cayman Litigation, the JOLs argued that CBG never owned the Collateral. Rather, it was owned by RAAD, an entity that Roseman had never told Bobulinski about in any of their discussions. The JOLs argued:<br><br>"[T]here is no evidence that [CBG] had any assets falling within the operative part of the definition of Collateral in the Pledge,.. the Company carries on business as an investment company… As such, the Company had relatively few assets."<br><br>Bobulinski Decl. ¶¶ 3-6; Kendall Decl., Ex. B (Cayman Judgment) ¶¶ 221. | 44. Undisputed and immaterial. |

| | |
|---|---|
| 45. In direct contravention of his representations to Bobulinski, Roseman made this argument as well.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 222. | 45. Undisputed and immaterial. |
| 46. While Roseman represented that CBG's content library and license agreements were in the United States, he did not distinguish which "content library and license agreements" in the U.S. belonged to RAAD as opposed to CBG.<br><br>Kendall Decl., Ex. B (Cayman Judgment) ¶ 148. | 46. Undisputed and immaterial. |
| 47. The Cayman Court issued a judgment, rejecting Bobulinski's appeal on January 23, 2019.<br><br>Kendall Decl., Ex. B (Cayman Judgment). | 47. Undisputed. |
| 48. During the Cayman Litigation, Bobulinski attempted to conduct discovery that was, in fact, more limited than what is generally available to litigants in U.S. Courts. As a result, Bobulinski was denied the opportunity to conduct meaningful discovery or develop the factual record to challenge the underpinnings of the Cayman Liquidation or the actors involved.<br><br>Bobulinski Decl. ¶ 17. | 48. Disputed as contradictory to the findings of the Cayman Island Court; but immaterial in any event.<br><br>Kendall Decl., Ex. B (Cayman Judgment). |

| | |
|---|---|
| 49. Bobulinski was not able to develop a record as to the legitimacy of the bases for the liquidation, the actors involved, the veracity of CBG's representations upon which the Court based its decision, and CBG's true motives for the liquidation.<br><br>Bobulinski Decl. ¶ 17. | 49.  Disputed as contradictory to the findings of the Cayman Island Court; but immaterial in any event.<br><br>Kendall Decl., Ex. B (Cayman Judgment). |
| 50. After his Proof of Debt was rejected, the JOLs sought costs against Bobulinski. Ultimately, the Cayman court issued three cost certificates: (1) a November 13, 2018, for $56,431.82, (2) a $57,208.58 on January 8, 2019, and (3) a February 5, 2019, default cost certificate in the amount of $562,170.94.<br><br>Kendall Decl. ¶ 5. | 50. Undisputed. |
| 51. On July 10, 2019, Bobulinski filed a complaint against Roseman in California Superior Court. After removal, on July 10, 2019, Bobulinski filed a first amended complaint in the Central District of California, Case No. 2:19-cv-02963-MWF-SSx (the "Roseman Matter"). Bobulinski has two current causes of action against Roseman based on his first amended complaint in the Roseman Matter: (1) fraud in the inducement; and (2) negligent misrepresentation. The case is in discovery and both parties have served and responded to written discovery and have discussed depositions. Bobulinski has also sent third-party subpoenas to Hickory | 51. Undisputed and immaterial. |

| | |
|---|---|
| Grove and Remark, among others. Hickory Grove's deadline to respond to Bobulinski's subpoena is December 18, 2020.<br><br>Bobulinski Decl. ¶ 19. | |
| 52. On September 18, 2020, nearly two weeks before Bobulinski was required to file a responsive pleading, CBG filed a motion for summary judgment ("First Motion"). Counsel for CBG did not attempt to meet and confer on the Motion before it was filed.<br><br>Huggins Decl. ¶ 2; Dkt. 23. | 52. Undisputed and immaterial. |
| 53. On September 18, 2020, Bobulinski's counsel sent an email to CBG's counsel, advising that the First Motion was premature and subject to dismissal under Federal Rule of Civil Procedure 56(d), as Bobulinski had not yet had the opportunity to conduct any discovery in this matter. On September 21, 2020, CBG's counsel responded by email that he did not know what discovery Bobulinski needed. That same day, Bobulinski's counsel responded to CBG's counsel, summarizing the discovery needed. Bobulinski's counsel advised CBG's counsel that that the First Motion was filed in violation of Local Rule 7-3, which requires that parties meet and confer at least seven days before filing a motion for summary judgment.<br><br>Huggins Decl. ¶¶ 3-5, Exs. A-C. | 53. Undisputed and immaterial. |

| | |
|---|---|
| 54. Bobulinski filed an Answer in the instant matter on September 30, 2020. Bobulinski, asserting fifteen affirmative defenses, including the affirmative defense of offset for the outstanding amounts CBG owes him, including the $874,775 that CBG admits it owes him.<br><br>Dkt. 30; Kendall Decl. ¶ 3. | 54. Undisputed and immaterial. |
| 55. On October 22, 2020, the Court denied the First Motion for failure to meet and confer.<br><br>Huggins Decl. ¶ 6; Dkt. 42. | 55. Undisputed and immaterial. |
| 56. Two days later, on Saturday, October 24, 2020, CBG's counsel left a voicemail for Bobulinski's counsel, saying Defendant had been right about the need to meet and confer and asking to meet and confer. On Monday, October 26, 2020, Bobulinski's counsel emailed CBG's counsel, agreeing to meet and confer but asking what the subject of the meet and confer was and if it was another summary judgment motion. Bobulinski's counsel reiterated Bobulinski's need for discovery at that time and suggested a Rule 26 conference at that time.<br><br>Huggins Decl. ¶ 7, Ex. D. | 56. Disputed. CBG's counsel called Bobulinski's counsel on Friday October 23, 3030 but immaterial in any event. |
| 57. After further email exchange, counsel for both parties met and conferred on October 29, 2020, at | 57.  Undisputed and immaterial. |

| | |
|---|---|
| which time CBG's counsel told Bobulinski's counsel that CBG planned to file another motion for summary judgment on the same grounds as the First Motion. Defense counsel reiterated Bobulinski's acute need for discovery in this case, but Plaintiff's counsel indicated Plaintiff would immediately file a second summary judgment motion.<br><br>Huggins Decl. ¶ 8. | |
| 58. On November 3, 2020, CBG served Bobulinski with its first set of special interrogatories. The same day, Bobulinski served CBG with his first set of special interrogatories and first set of requests for production. Both parties' responses are due December 3, 2020.<br><br>Huggins Decl. ¶ 9, Exs. E (Plaintiff's First Set of Special Interrogatories to Defendant), F (Defendant's First Set of Special Interrogatories and First Set of Requests for Production to Plaintiff). | 58.  Undisputed that CBG served Bobulinski with its first set of special interrogatories but the discovery sought is solely to identify Bobulinski's assets in connection with the enforcement of the Writ of Attachment issued by Magistrate Judge Jacqueline Chooljian on October 13, 2020. |
| 59. On November 9, 2020, Plaintiff filed and served its second motion for summary judgment ("Second Motion"), but failed to file or serve a Statement of Undisputed Facts and Conclusions of Law or a proposed order, in violation of Local Rule 56-1.<br><br>Declaration of Teresa L. Huggins | 59.  Undisputed and immaterial. |

| | |
|---|---|
| ("Huggins Decl.") ¶ 11; Dkt. 47; L.R. 56-1.<br><br>China Branding Group (in official liquidation) ("CBG" or "Plaintiff") (*sic*) | |
| 60. On November 16, 2020, Defendant served Plaintiff with a deposition notice. That deposition is currently scheduled for December 15, 2020. That same day, Defendant served Hickory Grove with a deposition notice. That deposition is currently scheduled for December 18, 2020.<br><br>Huggins Decl. ¶ 12, Ex. G. | 60.  Undisputed and immaterial. |
| 61. On November 16, 2020, Bobulinski filed his Opposition to the Second Motion.<br><br>Dkt. 52. | 61.  Undisputed and immaterial. |
| 62. On November 17, 2020, CBG withdrew its Second Motion. Plaintiff filed and served its third motion for summary judgment ("Third Motion") that same day. Plaintiff did not seek request from the Court to file its Third Motion, as the Court's Standing Order requires. | 62.  Undisputed that Plaintiff withdrew its Second Motion.  However the same Second Motion for Summary Judgment that was withdrawn was refiled on November 17, 2020. |
| 63. Bobulinski's discovery sought the following information which is required at a minimum to develop an adequate record in this matter: (1) non-privileged communications between | 63. Undisputed but the proposed discovery is immaterial. |

the JOLs and all parties relevant to the Cayman Liquidation proceedings, including, among others, communications between the JOLs and: Hickory Grove, LLC, Robert Roche, Jacob Fisch, RAAD, Remark, and Adam Roseman; (2) documentation of the purported April 2016 Hickory Grove loan to CBG for $670,000 purportedly provided just prior to the initiation of liquidation proceedings by Hickory Grove, including proof that the loan was perfected, internal deliberations by CBG regarding the loan, communications and other paper trails between CBG and Hickory Grove, Roseman and Roche, Roseman and Fisch, and other agents for CBG and Hickory Grove, respectively regarding the loan; (3) the internal deliberations and communications of CBG and related third parties that led to the Hickory Grove "loan" and subsequent wind-up proceeding; (4) the JOL deliberations and communications with witnesses and others demonstrating their deliberations and communications regarding the JOLs' bases for assessing the propriety of the liquidation; (5) communications, board minutes, internal and external emails, and other documents evidencing CBG's and the JOL's internal deliberations about Bobulinski's senior secured status, the approval of his loan terms, and other issues related to his status in considering Bobulinski's proof of debt claim; (6) the non-privileged communications including, but not limited to, emails, memoranda,

| | |
|---|---|
| notes, and other communications between the JOLs and all CBG related parties, including Roseman, Fisch, Roche, and CBG's largest creditors and shareholders; and (7) other internal documentation of the JOLs indicating the extent to which the JOLs relied upon misrepresentations as to the propriety of the bases for the liquidation and other facts related to Bobulinski's status as a senior secured creditor, the amount Bobulinski was owed, and Bobulinski's right to approve of any sale of CBG's or its related entities' assets.<br><br>Huggins Decl. ¶¶ 9-10, 12, Exs. F, G. | |
| 64. Because this case is in its infancy, Bobulinski has not received CBG's responses to any written discovery, nor has he had the opportunity to conduct any of the depositions he has noticed.<br><br>Huggins Decl. ¶ 13. | 64.  Undisputed and immaterial. |
| 65. To date, CBG has not paid Bobulinski any of the principal amount of $650,000, or the $224,775 finder's fee, both of which CBG admits it owes Bobulinski. Bobulinski was paid $100,000 out of the management pool. | 65.  Undisputed and immaterial. |

1    DATED: December 7, 2020          LAW OFFICES OF ROBERT W. COHEN
                                      A Professional Corporation
2

3                                     By   /s/   Robert W. Cohen
                                          Robert W. Cohen
4                                         Mariko Taenaka
                                          Attorneys for Plaintiff
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Statement of Uncontroverted Facts and Conclusions of Law

1

## **CERTIFICATE OF SERVICE**

2         I hereby certify that on December 7, 2020 a copy of the foregoing document

3   was filed electronically via the Court's CM/ECF system. Pursuant to Local Rule 5-

4   3.2.1 notice of filing will be served on all parties by operation of the Court's

5   CM/ECF system, and parties may access this filing through the Court's CM/ECF

6   system.

7

8                           /s/ Mariko Taenaka

9                           Mariko Taenaka

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28