Ryan G. Baker (Bar No. 214036)
  rbaker@bakermarquart.com
Teresa L. Huggins (Bar. No. 263257)
  thuggins@bakermarquart.com
Sam Meehan (Bar No. 307934)
  smeehan@bakermarquart.com
WAYMAKER LLP
777 S. Figueroa St., Suite 2850
Los Angeles, California, 90017
Telephone:  (424) 652-7800
Facsimile:   (424) 652-7850

*Attorneys for Defendant Tony Bobulinski*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHINA BRANDING GROUP LIMITED (IN OFFICIAL LIQUIDATION), by and through its Joint Official Liquidators, Hugh Dickson of Grant Thornton Specialist Services (Cayman), Limited and David Bennett of Grant Thornton Recovery & Reorganisation Limited,<br><br>          Plaintiff,<br><br>v.<br><br>TONY BOBULINSKI<br><br>          Defendant. | Case No. 2:20-CV-06759 RGK (JC)<br><br>**DEFENDANT TONY BOBULINSKI'S CORRECTED OPPOSITION TO PLAINTIFF CHINA BRANDING GROUP LIMITED'S MOTION FOR ATTORNEYS' FEES**<br><br>*[Filed concurrently with Declaration of Teresa L. Huggins]*<br><br>Judge:  Hon. R. Gary Klausner<br>Date:  March 29, 2021<br>Time:  9:00 a.m.<br>Courtroom:  850<br><br>Complaint Filed: July 28, 2020 |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................... 2

    A.   Bobulinski Files a Proof of Debt Claim in the Cayman Islands ......................... 2

    B.   The JOLs Obtain Three Cost Certificates in the Cayman Islands ...................... 4

    C.   The JOLs Seek Recognition of the Cost Certificates in the United States and
       File Three Summary Judgment Motions ............................................................ 4

    D.   The Court Recognizes the Cost Certificates and Enters Judgment ..................... 5

    E.   CBG Seeks Fees for "Enforcement" of the Cost Certificates ............................ 6

III. LEGAL STANDARD ......................................................................................... 6

IV.  ARGUMENT ...................................................................................................... 6

    A.   The JOLs Are Not Entitled to Attorneys' Fees Under the EJL .......................... 6

       1.   The Court's Judgment Recognized the Cost Certificates Only ...................... 7

       2.    The JOLs Did Not Have a California Judgment to Enforce Entitling Them To
          Attorney Fees for Such Enforcement ........................................................... 8

    B.   The Amount of Attorneys' Fees Plaintiff Seeks Is Unreasonable ...................... 10

V.   CONCLUSION .................................................................................................. 12

DEFENDANT'S CORRECTED OPPOSITION TO PLAINTIFF'S MOTION FOR FEE AWARD

# **TABLE OF AUTHORITIES**

**Cases**

*Bankers Trust Co. v. Mallis*,
  435 U.S. 381 (1978) ..............................................................................7

*Berti v. Santa Beach Properties*,
  145 Cal. App. 4th 70 (2006) ................................................................10

*Howard Johnson Int'l, Inc. v. Ebuehi*,
  Case No. LACV17-09104-VAP,
  2020 WL 2121426 (C.D. Cal. March 18, 2020)................................9, 10

*Imperial Bank v. Pim Electric, Inc*.,
  33 Cal. App. 4th 540 (1995).............................................................1, 8

*In re SNTL Corp*.,
  571 F.3d 826 (9th Cir. 2009) ...............................................................10

*Lanard Toys Ltd. v. Dimple Child, LLC*,
  No. 20-55512, 2021 WL 567773 (9th Cir., Feb. 16, 2021) .............10, 11

*Lorber Industries of Cal. v. Turbulence*,
  175 Cal. App. 3d 532 (1985)................................................................12

*Manco Contracting Co. (W.L.L.) v. Bezdikian*,
  45 Cal. 4th 192 (2008)........................................................................1, 8

*Rosen v. LegacyQuest*,
  225 Cal. App. 4th 375 (2014) ..............................................................10

*Schwarz v. Secretary of Health & Human Services*,
  73 F.3d 895 (9th Cir. 1995)..................................................................11

*York v. Strong*,
  234 Cal. App. 4th 1471 (2015)...............................................................6

**Statutes**

Cal. Civ. Proc. Code § 482.110(a)(b) ......................................................12

Cal. Civ. Proc. Code § 680.230 ........................................................2, 8, 9

DEFENDANT'S CORRECTED OPPOSITION TO PLAINTIFF'S MOTION FOR FEE AWARD

Cal. Civ. Proc. Code § 685.040 .................................................... 1, 6, 7, 9, 10

Cal. Civ. Proc. Code § 1033.5 ........................................................................ 6

Cal. Civ. Proc. Code § 1719 ..................................................................... 7, 9

**Rules**

Fed. R. Civ. P. 58(a) .......................................................................................... 7

L.R. 7-3 ............................................................................................................ 4

L.R. 56-1 .......................................................................................................... 5

DEFENDANT'S CORRECTED OPPOSITION TO PLAINTIFF'S MOTION FOR FEE AWARD

## I.    **INTRODUCTION**

The Enforcement of Judgments Law ("EJL"), California Code of Civil Procedure sections 680.010–724.260, is clear: absent authorization by contract, statute or law, a judgment creditor is ***not*** entitled to recover attorneys' fees incurred in enforcing a judgment.  *See* C.C.P. § 685.040.

In its Motion for Fee Award ("Fee Motion"), Plaintiff China Branding Group Limited ("Plaintiff" or "CBG") argues that it has such authorization based on the Uniform Foreign Country Money Judgment Recognition Act ("UFCMJRA"), C.C.P. § 1713, *et seq.*  According to CBG, the fact that its Joint Official Liquidators (the "JOLs") obtained a judgment in the Cayman Islands ("Cayman Judgment") that awarded fees against Defendant Tony Bobulinski ("Defendant" or "Bobulinski") means it is entitled to all fees it incurred in moving to have the Cost Certificates reflecting those fees ("Cost Certificates") recognized in the United States.

Not so.  This Court's February 18, 2021 Judgment (the "Judgment") only recognized the Cost Certificates, expressly awarding the JOLs the amount of the Cost Certificates, plus interest and costs of suit. (Dkt. 65.) The Judgment made no provision for attorneys' fees and makes no reference to any other aspect of the Cayman Judgment outside the Cost Certificates. The Cost Certificates themselves make no provision for a fee award.  CBG cannot recover fees incurred in enforcing a judgment where they are not provided for in the underlying judgment.  *See Imperial Bank v. Pim Electric, Inc.*, 33 Cal. App. 4th 540, 557-58 (1995).

Moreover, CBG had no relevant enforceable judgment – and therefore nothing to enforce – before this Court entered Judgment on February 18, 2021. The California Supreme Court has made clear there is a difference between recognition of a judgment and enforcement, and "[a] foreign judgment must be recognized before it is enforced." *Manco Contracting Co. (W.L.L.) v. Bezdikian*, 45 Cal. 4th 192, 205 (2008). The EJL is also clear: a judgment for purposes of the statute is a "judgment,

order, or decree entered in a court of this state." C.C.P § 680.230. The JOLs offer no authority for the proposition that this Court should award fees incurred in enforcing a foreign judgment before that judgment is recognized by a California court. Simply put, the JOLs cannot recover fees for enforcing the Judgment before the Judgment was entered by this Court.

Not only are CBG's fees not recoverable under the law, the amount of fees they seek is unreasonable and include a substantial amount of fees incurred only as a result of CBG's failure to comply with applicable court rules. CBG filed *three* summary judgment motions in this case. The first two were procedurally defective and in violation of the Local Rules. Bobulinski pointed out these defects in meet and confer communications and in his oppositions and incurred substantial fees and costs in doing so. If Plaintiff had filed its first summary judgment motion correctly, this case would have presumably ended with this Court's ruling on that motion on October 22, 2020. Instead, Bobulinski was required to expend months responding to CBG's mistakes.  Bobulinski should not also be saddled with CBG's fees associated with those errors. CBG also inappropriately seeks fees for a prejudgment attachment, which did not involve enforcement of the Judgment.

Bobulinski respectfully requests that the Court deny CBG's motion in its entirety.  In the alternative, Bobulinski respectfully requests that the Court disregard all superfluous fees, including all fees incurred after the first summary judgment ruling on October 22, 2020, and all fees incurred in seeking an attachment, and, in any event, award less than $71,896.75 in fees.

## II.   FACTUAL BACKGROUND

### A.   Bobulinski Files a Proof of Debt Claim in the Cayman Islands

On or about April 15, 2015, Plaintiff Tony Bobulinski entered into a Senior Secured Convertible Promissory Note (the "Note") for $500,000, and a Pledge Agreement (the "Pledge") with CBG, based on then CEO, Adam Roseman's

("Roseman"), assurances that the Note was secured by CBG's considerable assets in the United States ("Collateral"), that he would receive a 2.5 multiplier of his principal and would have the right to approve any sale of CBG. (Declaration of Teresa L. Huggins ("Huggins Decl.") ¶ 10, Exh. C (Cayman Judgment) ¶¶ 7-8, 57.) Bobulinski would not have entered into the Note or Pledge absent these assurances. (*Id*. ¶ 57.) Importantly, Section 7 of the Pledge required CBG to obtain Bobulinski's written consent before it could transfer or sell any part of the Collateral. (*Id*. ¶¶ 128, 144.)

In the Fall of 2015, Bobulinski introduced Roseman to Shing Tao of Remark Media, Inc. ("Remark"), who expressed interest in buying CBG. (Huggins Decl. ¶ 10, Exh. C (Cayman Judgment) ¶¶ 15, 121.) On or about April 11, 2016, based on Roseman's continuing assurances, Bobulinski agreed to loan an additional $150,000 to CBG as a bridge to sale. (*Id*. ¶¶ 12-13.)

SIG, one of CBG's creditors, opposed the sale. (Huggins Decl. ¶ 10, Exh. C (Cayman Judgment) ¶ 16.)  To obstruct SIG's blocking rights, in the Spring of 2016, CBG's largest creditor, Hickory Grove, entered a winding up petition in the Cayman Islands for a provisional liquidation. (*Id*. ¶ 17.)  SIG filed suit in the Cayman Islands, and the Cayman court ordered CBG into official liquidation instead. (*Id*. ¶¶ 17-18.) Ultimately, the JOLs were appointed to begin the liquidation process (the "Cayman Liquidation"). (*Id*. ¶ 18.)  Because Remark's purchase of CBG purportedly constituted a "Liquidity Event" under the Note, Bobulinski believed CBG was required to pay him the principal of the Note with the 2.5x return Roseman had promised him. (*Id*. ¶ 61.) In April 2017, Bobulinski submitted a proof of debt for $1,625,000 plus legal fees ("Proof of Debt Claim"). (*Id*. ¶¶ 56, 126.) The JOLs rejected the claim and argued Bobulinski was only entitled to his $650,000 principal, and a $224,775 finder's fee for finding Remark as a buyer for CBG, on the grounds that the Note was not secured by the Collateral, as Roseman had said it was.  (*Id*. ¶¶ 72, 79, 148.)

## B. The JOLs Obtain Three Cost Certificates in the Cayman Islands

In July 2017, Bobulinski filed suit with the Grand Court of the Cayman Islands challenging the JOLs' determination in a proceeding entitled *In the Matter of China Branding Group Limited (In Official Liquidation),* Cause No. FSD 52 of 2016 (RMJ) (the "Cayman Litigation"). On January 23, 2019, the Cayman Court issued a judgment (the "Cayman Judgment"), rejecting Bobulinski's appeal of the denial of his Proof of Debt Claim. (Huggins Decl. ¶ 10, Exh. C (Cayman Judgment).)

The Cayman Court also issued three Cost Certificates against Bobulinski, as follows: (1) November 13, 2018, in the amount of $56,431.82, (2) January 8, 2019, in the amount of $57,208.58; and (3) February 5, 2019, in the amount of $562,170.94. (Huggins Decl. ¶ 10, Exh. C (Cost Certificates).) The Cost Certificates do not have an attorneys' fee provision; in fact, they do not mention attorneys' fees. (*Id.*).

## C. The JOLs Seek Recognition of the Cost Certificates in the United States and File Three Summary Judgment Motions

On July 28, 2020, CBG, by and through the JOLs, filed the instant matter against Bobulinski in the Central District of California, alleging that, pursuant to the UFCMJRA, C.C.P. § 1713, *et seq.,* or the principles of comity, this Court should recognize the Cost Certificates. (Dkt. 1, ¶ 1 ("This is an action for recognition of a foreign final judgment pursuant to the Uniform Foreign Country Money Judgments Recognition Act.").) Plaintiff filed three summary judgment motions:

**First Motion**. On September 18, 2020, nearly two weeks before Bobulinski's responsive pleading was due, CBG filed a motion for summary judgment ("First Motion"), arguing "as a matter of law the Cayman Island Judgment now merits recognition." (Dkt. 23 at 5:28.) "On September 21, 2020, Bobulinski advised Plaintiff that the Local Rules require the parties to meet and confer at least seven days before filing a summary judgment motion. *See* L.R. 7-3; (Huggins Decl. ¶ 3, Exh. A.) Plaintiff refused to withdraw its motion, and Bobulinski opposed the First Motion

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEE AWARD

based, *inter alia*, on the failure to meet and confer. (Dkt. 29.) On October 22, 2020, this Court denied the First Motion on this basis. (Dkt. 42.)  Bobulinski incurred substantial fees and costs in opposing the motion.

**Second Motion**. Two days after the Court denied its First Motion, Plaintiff asked Defendant to meet and confer. (Huggins Decl. ¶ 5.) The parties did so, but, less than a week later, on November 9, 2020, Plaintiff filed its second motion for summary judgment ("Second Motion"), on the same grounds as the First Motion. (Dkts. 47-48.) Plaintiff failed to file or serve a Statement of Uncontroverted Facts and Conclusions of Law or otherwise identify any undisputed facts, again in violation of the Local Rules. L.R. 56-1. Plaintiff also failed to file or serve a proposed order, in further violation of the Local Rules.  *Id*.  On November 16, 2020, Bobulinski opposed the Second Motion based, *inter alia*, on the grounds that it was procedurally defective. (Dkt. 52.) On November 17, 2020, apparently in response to Defendant's opposition, Plaintiff withdrew its Second Motion. (Dkt. 54.) Bobulinski incurred substantial fees and costs opposing the Second Motion.

**Third Motion**. On November 17, 2020, Plaintiff filed yet a third motion for summary judgment ("Third Motion"), on the same grounds as the first two motions. (Dkts. 56-57.)  Again, the matter was fully briefed, and again Bobulinski incurred fees and costs in opposing the motion.

**D.   The Court Recognizes the Cost Certificates and Enters Judgment**

On January 25, 2021, the Court granted the Third Motion (the "Order").  (Dkt. 63.)  In making its ruling, the Court pointed out that the remaining balance on the Cost Certificates was $634,393.52, and post-judgment interest was 2.375%. (*Id.* at 2.)

Accordingly, on February 18, 2021, Court entered Judgment against Bobulinski in the amount of $662,855.95, plus costs of suit (the "Judgment").  (Dkt. 65.)  The Judgment did not provide for attorneys' fees.  (*Id*.)  The Court has entered no other Judgment in this matter.  (Dkt.)

### E.    CBG Seeks Fees for "Enforcement" of the Cost Certificates

On February 19, 2021, CBG submitted an Application to the Clerk to Tax Costs in the amount of $645.00, pursuant to the Judgment.  (Dkt. 66.) Four days later, on February 23, 2021, CBG filed this Fee Motion, arguing it was also entitled to all fees incurred in "enforcing" a foreign judgment in the United States because the Court had recognized the Cayman Judgment, which, in turn, provided for attorneys' fees. The JOLs sought all fees incurred from the inception of the case, including fees incurred for their procedurally defective motions and for a prejudgment attachment.

## III.    LEGAL STANDARD

Section 685.040 of the Enforcement of Judgments Law, or EJL, provides: "The judgment creditor is entitled to the reasonable and necessary costs of enforcing a judgment.... Attorney's fees incurred in enforcing a judgment are not included in costs collectible under this title if the underlying judgment includes an award of attorney's fees to the judgment creditor pursuant to [section 1033.5, subd. (a)(10)(A)]." *Id.; see also York v. Strong*, 234 Cal. App. 4th 1471, 1477 (2015) (Under Section 685.040, "a litigant entitled to costs for successfully enforcing a judgment is entitled to costs, but not attorney fees unless there is some other legal basis for such an award.")  Section 1033.5 permits fees "allowable as costs" when authorized by "(A) Contract; (B) Statute; or (C) Law." *See* C.C.P. § 1033.5.

## IV.    ARGUMENT

### A.    The JOLs Are Not Entitled to Attorneys' Fees Under the EJL

The EJL clearly provides that a judgment creditor is ***not*** entitled to fees incurred in enforcing a judgment, unless fees are authorized by contract, statute or law.  *See* C.C.P. § 685.040.  The JOLs argue they have such authorization because the Cayman Judgment awarded them fees, pursuant to Cayman law, and this Court, in granting summary judgment enforced the Cayman Judgment in the United States According to the JOLs, the fact that fees were included in the Cayman Judgment

1  means that they can recover fees "with respect to enforcement of the judgment" in the
2  United States, pursuant to Section 685.040. (Mot. 4:17-28.)

3     The argument fails for two reasons: (1) this Court entered Judgment for the
4  Cost Certificates only, and (2) the JOLs had no relevant judgment to enforce until this
5  Court entered its February 18, 2021 Judgment.  As a result, the JOLs cannot recover
6  the fees they seek as a matter of law.

7            **1.    The Court's Judgment Recognized the Cost Certificates Only**

8     The JOLs first argue that they are entitled to fees because this Court recognized
9  the Cayman Judgment in the United States (Mot. 4:17-20 ("with this Court's grant of
10 summary judgment, then, the Cayman Islands judgment is '[c]onclusive between the
11 parties to the same extent as the judgment of a sister state entitled to full faith and
12 credit' and '[e]nforceable in the same manner and to the same extent as a judgment
13 rendered in this state.'") (citing C.C.P. § 1719(a), (b).)

14    But to constitute a valid, enforceable judgment, entry of a judgment is required.
15 *See* Fed. R. Civ. P. 58(a) ("[e]very judgment and amended judgment must be set out
16 in a separate document"); *Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 386 (1978)
17 ("[n]either the courtroom minute sheet nor the court's docket book constitute a
18 separate document" for purposes of Rule 58(a).)

19    Here, the Court has only entered one judgment: its February 18, 2021 Judgment.
20 In that Judgment, this Court recognized the three Cost Certificates, awarding the
21 JOLs the amount of the Cost Certificates, plus interest and costs of suit. (Dkt. 65.)
22 The Court did not enter judgment as to any other aspect of the Cayman Judgment,
23 and made no provision for fees.  (*Id*.)  As a result, the JOLs have no judgment
24 enforceable in the United States for anything other than the Cost Certificates.

25    Moreover, the Cost Certificates are just a foreign judgment that the JOLs sought
26 to have recognized in the United States.  The Cost Certificates themselves say
27 nothing about fees, and the JOLs do not argue that they do. (Huggins Decl. ¶ 10, Exh.
28

C (Cost Certificates).) The JOLs provide no authority for the proposition that they are entitled to fees incurred in seeking recognition of a judgment in the United States, where the award itself does not make such a provision. *See Imperial Bank,* 33 Cal. App. 4th at 557-58 ("The *absence of any fee award in the underlying judgment* precludes the recovery of fees as costs in the trial court for enforcing the money judgment.") (emphasis added).

## 2. The JOLs Did Not Have a California Judgment to Enforce Entitling Them To Attorney Fees for Such Enforcement

The JOLs' claim fails for an additional reason: the JOLs did not have a final, enforceable California judgment until this Court recognized the Cost Certificates on February 18, 2021.

Indeed, the EJL is limited to judgments issued in a court of the State of California. *See* C.C.P. § 680.230 (defining "judgment" for purposes of the EJL as "a judgment, order, or decree entered in a court of this state"). Further, the California Supreme Court has made clear: a judgment cannot be considered "enforceable" until it has been recognized. *See Manco,* 45 Cal. 4th at 205 ("A foreign judgment must be recognized before it is enforced."). As the *Manco* court put it, "[t]here is an analytical difference between *recognition* of a foreign judgment and *enforcement* of that judgment, noting in relevant part, that the "'domestication' of the foreign judgment enables the judgment creditor to pursue all the enforcement avenues available for recovering domestic money judgments." *Id.* at 205, 208 (emphasis in original). The requirement that recognition must proceed enforcement is buttressed by the language of the UFCMJRA itself, which provides, in relevant part,

> If the court in a proceeding under Section 1718 finds that the foreign-country judgment is entitled to recognition under this chapter *then*, to the extent that the foreign-country judgment grants or denies recovery of a sum of money, the foreign-country judgment is both of the following:

(a) ***Conclusive between the parties*** to the same extent as the judgment of a sister state entitled to full faith and credit in this state would be conclusive.

(b) ***Enforceable in the same manner and to the same extent as a judgment rendered in this state***.

C.C.P. § 1719 (emphasis added).

Thus, until the "judgment of a court of a foreign country" is recognized under the UFCMJRA, it is not considered a "judgment, order, or decree entered in a court of this state" for purposes of recovering enforcement fees under Sections 683.230 and 685.040. Accordingly, an action to recognize a foreign-money judgment cannot be considered "reasonable and necessary costs of enforcing a judgment" because the Code defines a judgment for purposes of recovering costs under Section 685.040 as a "judgment, order, or decree entered in a court of this state." *See* C.C.P. § 683.230.

Here, the JOLs had no valid, enforceable judgment in California until this Court entered its Judgment on February 18, 2021. Before then, they only had an unrecognized foreign judgment.  They are not entitled to fees incurred before this Court's Judgment was entered and the Cost Certificates determined enforceable. The JOLs offer no authority for the proposition that this Court should grant fees for the enforcement of a foreign judgment before it is recognized by a United States court.

Indeed, the authority the JOLs do offer is inapposite. In *Howard Johnson Int'l, Inc. v. Ebuehi*, Case No. LACV17-09104-VAP, 2020 WL 2121426, at *2 (C.D. Cal. March 18, 2020) (Mot. 5), the court held that fees were recoverable under Section 685.040 for enforcing the judgment because "the underlying Judgment entered by the District of New Jersey included an attorneys' fees award pursuant to the terms of a franchise agreement between Plaintiff and Defendants, thereby satisfying the second prong of California Code of Civil Procedure § 685.040." Here there is no such

contract or underlying United States judgment providing for an award of fees and *Howard Johnson* is inapplicable.

Likewise, in *Berti v. Santa Beach Properties*, 145 Cal. App. 4th 70, 77 (2006) (Mot. 4-5), the court held that Corporations Code section 15634 allows for an award of post-judgment attorney fees, and thus, attorneys' fees incurred in enforcing the judgment were recoverable as costs under 685.040.  The Corporations Code has no applicability to this case and *Berti* has no bearing here.

Finally, in *Rosen v. LegacyQuest*, 225 Cal. App. 4th 375 (2014) (Mot. 5) the plaintiff was seeking fees incurred in enforcing her judgment against the sureties. All of the costs plaintiff sought were incurred *after* entry of a California judgment. In holding that she was entitled to fees, the court held that section 996.480(a)(2), which allows for fees incurred in obtaining a judgment against the surety, also provided the basis for fees incurred in enforcing the judgment. *Id*. at 384. Here, there is no similar statutory provision allowing for the recovery of fees in the underlying judgment.

In sum, the JOLs have no authority for the proposition they seek to enforce here: that a United States court should award fees incurred before a judgment is recognized under the UFCMJRA.

**B.   The Amount of Attorneys' Fees Plaintiff Seeks Is Unreasonable**

The JOLs do not have a California judgment that would entitle them to fees, but even if they did, the fees sought here are unreasonable and therefore not recoverable. *See In re SNTL Corp*., 571 F.3d 826, 842 (9th Cir. 2009) (fees must be reasonable).  In considering whether fees are reasonable, a court considers the hours "reasonably worked" multiplied by a "reasonable hourly rate." *Lanard Toys Limited v. Dimple Child, LLC*, No. 20-55512, 2021 WL 567773, at *3 (9th Cir., Feb. 16, 2021). Where a claim is unsuccessful, courts will reduce the hours worked.  *Id*.

In *Lanard Toys Limited*, the Ninth Circuit affirmed a district court ruling that an award of fees under the Copyright Act should be reduced by plaintiff's

unsuccessful claims.  Specifically, the court had calculated the fee award by determining the reasonable lodestar fee multiplied by the hours reasonably worked. The court then adjusted the proposed lodestar "by excluding several hours related to [plaintiff's] unsuccessful claims from the billing records," and awarding plaintiff "twenty percent of the lodestar amount, in proportion to [plaintiff] having prevailed on one out of five claims and having won roughly twenty percent of the damages it originally sought."  *Id*.  Ultimately, the court reduced the fee award from the $248,898 requested to $48,074.20.  *Id*. The Ninth Circuit affirmed, holding "[t]his approach is in line with Supreme Court precedent." *Id*. (internal quotations omitted); *see also Schwarz v. Sec'y of Health & Human Servs*., 73 F.3d 895, 904 (9th Cir. 1995) ("Once a district court concludes that a plaintiff has pursued unsuccessful claims that are unrelated to the successful claim, its task is to exclude from the calculation of a reasonable fee all hours spent litigating the unsuccessful claims.").

Plaintiff here brought *three* summary judgments. The first two were procedurally improper, were recognized as such and opposed by Bobulinski on this basis. Bobulinski filed an opposition to the First Motion based on CBG's failure to meet and confer, and the Court denied the First Motion on those grounds. Plaintiff withdrew its Second Motion after Bobulinski filed an opposition, pointing out Plaintiff had failed to file a Statement of Uncontroverted Facts and Conclusions of Law or a proposed order in further violation of the Local Rules. Bobulinski should not be required to pay for Plaintiff's errors. *Lanard Toys*, 2021 WL 567773, at *2. If Plaintiff had filed its First Motion in adherence to the Local Rules, this case would have presumably ended with the Court's first ruling on October 22, 2020. Instead, because of Plaintiff's mistakes, Bobulinski was forced to incur substantial unnecessary fees and costs in opposing two defective motions.  Bobulinski has already paid for Plaintiff's errors with the fees he has had to pay his own lawyers. Bobulinski should not be required to pay CBG for its errors. Indeed, 200 hours in

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEE AWARD

attorneys' fees in a case where Plaintiff filed its first motion for summary judgment before Defendant had even filed a responsive pleading is indeed excessive. Should the Court award fees, Bobulinski respectfully requests that the Court discount all hours after the first summary judgment ruling on October 22, 2020.

Plaintiff's request for fees incurred in seeking a writ of attachment is similarly misplaced. It is axiomatic that "[a]ttachment is a prejudgment remedy which requires a court to make a *preliminary* determination of the merits of a dispute." *Lorber Industries of Cal. v. Turbulence*, 175 Cal. App. 3d 532, 535 (1985) (emphasis added). Thus, seeking fees incurred for the enforcement of a judgment inherently conflicts with fees incurred in securing a prejudgment remedy. Moreover, there is no provision entitling a party to fees incurred in prosecuting a writ of attachment. Code of Civil Procedure section 482.110 states, "plaintiff's application for a right to attach order… may include an estimate of the costs and allowable attorney's fees" which may be included in the court's discretion, as part of "the amount to be secured by the attachment." C.C.P. § 482.110(a)(b).  However, the comments to the statute make clear that "this section does not provide any authority for the award of costs or attorney's fees not otherwise made recoverable by contract or statute." *Id*., 1976 Law Revision Commission Comments. Not only is Plaintiff's request for these fees unsupported, it highlights the fact that Plaintiff cannot recover fees for enforcing a judgment under Section 685.040, as it is seeking fees incurred in prosecuting a prejudgment remedy.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's Motion in its entirety.  In the alternative, in light of Plaintiff's numerous, costly errors, the Court should reduce fees incurred and all legal work after the Court's first October 22, 2020 Order, and all fees incurred in seeking an attachment, and, in any event, award less than $71,896.75 in fees.

DATED:  March 9, 2021

WAYMAKER LLP

By: */s/ Ryan G. Baker*

Ryan G. Baker
Teresa Huggins
*Attorneys for Defendant Tony Bobulinski*

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEE AWARD