1  Anthony R. Bisconti (SBN 269230)
   tbisconti@bklwlaw.com
2  **BIENERT KATZMAN LITTRELL WILLIAMS LLP**
3  601 W. 5th Street, Ste. 720
   Los Angeles, CA 90071
4  Telephone (213) 528-3400
   Facsimile (949) 369-3701
5
6  Attorneys for Defendant Tony Bobulinski
7
8           **IN THE UNITED STATES DISTRICT COURT**
9           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
10
   CHINA BRANDING GROUP LIMITED          Case No.: 2:20-CV-06759 RGK (JC)
11 (IN OFFICIAL LIQUIDATION), by and     Hon. R. Gary Klausner
   through its Joint Official Liquidators, Hugh   Presiding Judge
12 Dickson of Grant Thornton Specialist
   Services (Cayman), Limited and David   Hon. Jacqueline Chooljian,
13 Bennett of Grant Thornton Recovery &   Magistrate Judge
   Reorganisation Limited,
14
15        Plaintiff,                      **NOTICE OF MOTION AND**
                                          **MOTION TO QUASH**
16 v.                                     **SUBPOENAS SERVED ON (I)**
                                          **CITIBANK, N.A. AND (II) YDS**
17 TONY BOBULINSKI                        **INVESTMENT COMPANY, LLC;**
                                          **DECLARATIONS OF ANTHONY**
18        Defendant.                      **R. BISCONTI AND TONY**
                                          **BOBULINSKI IN SUPPORT**
19                                        **THEREOF; [PROPOSED] ORDER**
20
21                                        [Submitted to Hon. Jacqueline
                                          Chooljian, United States Magistrate
22                                        Judge, Crtrm 750]
23
24                                        Hearing Information:
                                          Date:    June 1, 2021
25                                        Time:    9:30 a.m.
                                          Crtrm:   750
26
27                                        Action filed:      July 28, 2020
28

**TO PLAINTIFF CHINA BRANDING GROUP LIMITED (IN OFFICIAL LIQUIDATION), THE HONORABLE JACQUELINE CHOOLJIAN, UNITED STATES MAGISTRATE JUDGE, AND ANY OTHER PARTY ENTITLED TO NOTICE:**

**PLEASE TAKE NOTICE** that on June 1, 2021, at 9:30 a.m. in Courtroom 750 in the Roybal Federal Building and United States Courthouse, located at 255 E. Temple Street, Los Angeles, California 90012, Defendant Tony Bobulinski ("Defendant" or "Mr. Bobulinski") will move the Court for an order prohibiting or otherwise limiting the production or other disclosure of the materials, or portions thereof, requested in subpoenas (the "Subpoenas") served on (i) Citibank, N.A. ("Citibank") and (ii) YDS Investment Company, LLC ("YDS"), by Plaintiff China Branding Group, Limited (In Official Liquidation) ("Plaintiff" or "CBG").

Mr. Bobulinski's motion is based upon this notice, the attached Memorandum of Points and Authorities, the attached declarations of Anthony R. Bisconti (the "Bisconti Decl.") and Tony Bobulinski (the "Bobulinski Decl."), all files and pleadings in this matter, and all other matters of which this Court may take judicial notice. Mr. Bobulinski makes the motion following the conference of counsel pursuant to Local Rules 7-3 and 37-1.

Dated: May 3, 2021

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
By: /s/ Anthony R. Bisconti
    Anthony R. Bisconti
    Attorneys for Defendant
    Tony Bobulinski

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  RELEVANT BACKGROUND ......................................................................... 2

  A.  Mr. Bobulinski loans $650,000 to CBG based on its CEO's representations. .................................................................................. 2

  B.  Mr. Bobulinski submits his proof of debt; the Cayman Court upholds the JOLs' denial and finds CBG has no assets. ................. 2

  C.  The JOLs seek recognition of the Cost Certificates in the United States and file three summary judgment motions. ......................... 3

  D.  Mr. Bobulinski sues Roseman and discovers new information. .................... 4

  E.  The Citibank Subpoena. ......................................................................... 4

  F.  The YDS Subpoena ................................................................................ 5

  G.  Mr. Bobulinski obtains counsel for these collection proceedings, who promptly seeks an extension of the response deadlines for the Subpoenas to permit the parties to meet and confer. ..................... 6

III.  THE COURT SHOULD QUASH THE SUBPOENAS ........................................... 7

  A.  CBG did not first seek the requested information from Mr. Bobulinski and has not demonstrated a need to subpoena third parties. ................................................................................................. 9

  B.  CBG did not provide proper notice of the Subpoenas to Mr. Bobulinski. ................................................................................. 11

  C.  The Subpoenas seek information protected by the California right of privacy. .................................................................................. 12

  D.  The Subpoenas seek irrelevant information. ................................ 14

IV.  CONCLUSION ................................................................................................ 15

1

## TABLE OF AUTHORITIES

2

*Page(s)*

3

**Cases**

4

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,

5
   300 F.R.D. 406 (C.D. Cal. 2014) .................................................................. 10

6

*Auto-Owners Ins. Co. v. Southeast Floating Dock, Inc.*,

7
   231 F.R.D. 426 (M.D. Fla. 2005) .................................................................. 8

8

*Bada Co. v. Montgomery Ward & Co.*,

9
   32 F.R.D. 208 (S.D. Cal. 1963) .................................................................... 10

10

*Blaw Knox Corp. v. AMR Indus., Inc.*,

11
   130 F.R.D. 400 (E.D. Wis. 1990 .................................................................. 10

12

*Bronson v. Henry Ford Health Sys.*,

13
   2016 WL 3197555 (E.D. Mich. June 9, 2016) ............................................. 12

14

*Burak v. Scott*,

15
   29 F. Supp. 775 (D.D.C. 1939) ..................................................................... 15

16

*Cacique, Inc. v. Robert Reiser & Co., Inc.*,

17
   169 F.3d 619 (9th Cir. 1999) ......................................................................... 8

18

*Corser v. County of Merced*,

19
   2006 WL 2536622 (E.D. Cal. Aug. 31, 2006) ............................................. 13

20

*Davis v. Leal*,

21
   43 F. Supp. 2d 1102 (E.D. Cal. 1999) .......................................................... 12

22

*DIRECTV, Inc. v. Trone*,

23
   209 F.R.D. 455 (C.D. Cal. 2002) .................................................................. 8

24

*Gordon v. Superior Court*,

25
   65 Cal. Rptr. 2d 53 Cal. App. 4th 1546 (1997) ........................................... 12

26

*Griffith v. State Farm Mut. Auto. Co.*,

27
   230 Cal. App. 3d 59 (1991) ....................................................................... 9, 13

28

*High Tech med. Instrumentation, Inc. v. New Image Indus., Inc.*,
   161 F.R.D. 86 (N.D. Cal. 1995) .................................................................. 10

*Internet Direct Response, Inc. v. Buckley*,
   2010 WL 1752181 (C.D. Cal. 2010) ......................................................... 15

*JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*,
   926 F. 3d 251 (5th Cir. 2019) ............................................................. 11, 14

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
   62 F. Supp. 3d 358 (S.D.N.Y. 2014) ....................................................... 15

*Medical Components, Inc. v. Classic Medical, Inc.*,
   210 F.R.D. 175 (M.D.N.C. 2002) ............................................................ 10

*Mirra v. Jordan*,
   2014 WL 2511020 (S.D.N.Y. May 28, 2014) ......................................... 12

*NML Capital, Ltd. V. Republic of Argentina*,
   2015 WL 1186548 (D. Nev. 2015) .......................................................... 11

*Paul v. Superior Court*,
   2012 WL 5380921 (Cal. App. Nov. 2, 2012) ......................................... 13

*SCC Acquisitions, Inc. v. Superior Court*,
   243 Cal. App. 4th 741 (2015) .................................................................. 11

*Solais v. Vesuvio's II Pizza & Grill, Inc.*,
   2015 WL 6110859 (M.D. N.C. Oct. 16, 2015) ...................................... 12

*Transcor, Inc. v. Furney Charters, Inc.*,
   212 F.R.D. 588 (D. Kan. 2003) ................................................................. 8

*Valley Bank of Nevada v. Superior Court*,
   15 Cal. 3d 652, 125 Cal. Rptr. 553 (Cal. 1975) ..................................... 12

**Statutes**

Cal. Civ. Proc. Code § 708.030 ...................................................................... 10

Cal. Civ. Proc. Code § 1985.3 .................................................................... 1, 13

Cal. Civ. Proc. Code § 2025.240(a) ............................................................... 11

## **Rules**

Fed. R. Civ. P. 26(b) ...................................................................................8, 10, 14

Fed. R. Civ. P. 26(c)(1). ....................................................................................7

Fed. R. Civ. P. 26(d)(1) .....................................................................................8

Fed. R. Civ. P. 34 ............................................................................................10

Fed. R. Civ. P. 37 .........................................................................................7, 15

Fed. R. Civ. P. 45(a)(4) ...............................................................................11, 12

Fed. R. Civ. P. 45(d)(3)(A) ................................................................................8

Fed. R. Evid. 501 .........................................................................................1, 12

## **Other Authorities**

Wright & Miller, 8A *Fed. Prac. & Proc., Civ.2d* (1990) ...................................10

Cal. Prac. Guide Enf. J. & Debt Ch. 6G-3 ........................................................11

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

CBG[1] issued the Subpoenas to Citibank and YDS, seeking Mr. Bobulinski's confidential financial information and account records. However, in addition to the various other issues identified below warranting an order quashing the Subpoenas, the Subpoenas do not serve any legitimate discovery purpose. Accordingly, by this motion, Mr. Bobulinski seeks an order quashing the Subpoenas issued by CBG to Citibank and YDS purportedly in aid of CBG's judgment or execution.

CBG's Subpoenas exceed the bounds of permissible discovery and should be quashed for at least four reasons. First, the subpoenas are harassing and impose an undue burden because CBG failed to seek the requested information from Mr. Bobulinski himself before issuing its unjustifiably invasive Subpoenas to third parties Citibank and YDS. Second, CBG failed to give proper notice of the Subpoenas to Mr. Bobulinski as required by applicable state and federal rules. Third, the requested information is protected by Mr. Bobulinski's right of privacy under the California Constitution and California Code of Civil Procedure under section 1985.3, which apply to this matter under Rule 501 of the Federal Rules of Evidence. Fourth, the Subpoenas seek irrelevant information; CBG has had an attachment order in place since October 2020 and already levied on Mr. Bobulinski's Citibank account, such that any discovery from Citibank will not further aid CBG's judgment or execution, and Mr. Bobulinski has not worked at YDS for a decade nor has he received any payment from YDS during the time frame specified in the YDS Subpoena.

Accordingly, and as explained more fully below, the Court should enter a protective order quashing CBG's Subpoenas.

---

[1] Capitalized terms have the meaning given to them in the Notice accompanying this memorandum unless otherwise specifically defined.

## II.     RELEVANT BACKGROUND

### A.     Mr. Bobulinski loans $650,000 to CBG based on its CEO's representations.

In or around March 2015, former CEO of CBG Adam Roseman ("Roseman") reached out to his longtime friend and business associate, Mr. Bobulinski, to ask him to make a loan to CBG to bridge it to sale. Interested in helping his friend, on or about April 15, 2015, Mr. Bobulinski entered a Senior Secured Convertible Promissory Note (the "Note") for $500,000, and a Pledge Agreement (the "Pledge") with CBG, based on Roseman's assurances that (i) the Note was secured by CBG's considerable assets in the United States ("Collateral"), (ii) Mr. Bobulinski would receive a 2.5 multiplier of his principal, and (iii) Mr. Bobulinski would have the right to approve any sale of CBG. *See* Dkt. No. 1-2 ("Cayman Judgment") ¶¶ 7-8, 57. Mr. Bobulinski would not have entered the Note or Pledge absent these assurances. *Id.* ¶ 57. Importantly, Section 7 of the Pledge required CBG to obtain Mr. Bobulinski's written consent before it could transfer or sell any part of the Collateral. *Id.* ¶¶ 128, 144.

In the Fall of 2015, Mr. Bobulinski introduced Roseman to Shing Tao of Remark Media, Inc. ("Remark"), who expressed interest in buying CBG. *See* Cayman Judgment ¶¶ 15, 121. On or about April 11, 2016, based on Roseman's continuing assurances, Mr. Bobulinski agreed to loan an additional $150,000 to CBG as a bridge to sale. *Id.* ¶¶ 12-13.

SIG, one of CBG's creditors, opposed the sale. *Id.* ¶ 16. To obstruct SIG's blocking rights, in the Spring of 2016, CBG's largest creditor, Hickory Grove, entered a winding up petition in the Cayman Islands for a provisional liquidation. *Id.* ¶ 17. SIG filed suit in the Cayman Islands, and the Cayman court ordered CBG into official liquidation instead. *Id.* ¶¶ 17-18. Ultimately, the JOLs were appointed to begin the liquidation process. *Id.* ¶ 18.

### B.     Mr. Bobulinski submits his proof of debt; the Cayman Court upholds the JOLs' denial and finds CBG has no assets.

Because Remark's purchase of CBG purportedly constituted a "Liquidity Event" under the Note, Mr. Bobulinski believed CBG was required to pay him the principal of the

Note with the 2.5x return Roseman had promised him. *See* Cayman Judgment ¶ 61. In April 2017, Mr. Bobulinski submitted a proof of debt for $1,625,000 plus legal fees ("Proof of Debt Claim"). *Id.* ¶¶ 56, 126. CBG, by and through its Joint Official Liquidators (the "JOLs"), rejected the claim and argued Mr. Bobulinski was only entitled to his $650,000 principal, and a $224,775 finder's fee for finding Remark as a buyer for CBG, on the grounds that the Note was not secured by the Collateral, as Roseman had said it was. *Id.* ¶¶ 72, 79, 148.

In July 2017, Mr. Bobulinski filed suit with the Grand Court of the Cayman Islands challenging the JOLs' determination in a proceeding entitled *In the Matter of China Branding Group Limited (In Official Liquidation),* Cause No. FSD 52 of 2016 (RMJ). On January 23, 2019, the Cayman Court issued the Cayman Judgment, rejecting Mr. Bobulinski's appeal of the denial of his Proof of Debt Claim. *See* Dkt. No. 1-2.

## C. The JOLs seek recognition of the Cost Certificates in the United States and file three summary judgment motions.

The Cayman Court also issued three Cost Certificates against Mr. Bobulinski, as follows: (1) November 13, 2018, in the amount of $56,431.82, (2) January 8, 2019, in the amount of $57,208.58; and (3) February 5, 2019, in the amount of $562,170.94. *See* Dkt. Nos. 1-1 and 1-3 (Cost Certificates).

On July 28, 2020, CBG, by and through the JOLs, filed this case against Mr. Bobulinski, alleging that, pursuant to the California's Uniform Foreign-Country Money Judgements Recognition Act, C.C.P. § 1713, *et seq.,* or the principles of comity, the Court should recognize the Cost Certificates. Dkt. No. 1 ¶ 1 ("This is an action for recognition of a foreign final judgment pursuant to the Uniform Foreign Country Money Judgments Recognition Act.").

CBG filed three summary judgment motions. The Court denied the first motion without prejudice due to certain defects identified by the Court. *See* Dkt. No. 42. CBG withdrew the second motion after Mr. Bobulinski opposed, pointing out that the motion was not accompanied by a separate statement of uncontroverted facts and conclusions of law.

*See* Dkt. Nos. 52 and 54. However, on January 25, 2021, the Court granted CBG's third motion for summary judgment (the "Order"). *See* Dkt. No. 63. In making its ruling, the Court pointed out that the remaining balance on the Cost Certificates was $634,393.52, and post-judgment interest was 2.375%. *Id.* at 2.

Accordingly, on February 18, 2021, the Court entered Judgment against Mr. Bobulinski in the amount of $662,855.95, plus costs of suit (the "Judgment"). Dkt. No. 65. Mr. Bobulinski appealed the Judgment. *See* Dkt. No. 73 (Notice of Appeal). On February 23, 2021, CBG filed a Motion for Attorneys' Fees. Dkt. No. 67. The Court denied that motion on March 31, 2021. Dkt. No. 78. CBG noticed the appeal of that denial. Dkt No. 83.

### D.   Mr. Bobulinski sues Roseman and discovers new information.

On February 21, 2019, Mr. Bobulinski sued Roseman for (1) fraud in the inducement, (2) negligent misrepresentation, and (3) breach of fiduciary duty. That action is currently pending as Case No. 2:19-cv-02963 MWF-JPR in the Central District of California (the "Roseman Matter"). Through recently obtained discovery in the Roseman Matter, Mr. Bobulinski has obtained new information concerning CBG's transfer of assets on the eve of the sale, without Mr. Bobulinski's knowledge or consent and in violation of the pledge agreement, among other things. Mr. Bobulinski intends to bring a separate motion addressing these facts in further detail.

### E.   The Citibank Subpoena.

On March 31, 2021, CBG issued a Subpoena to Citibank. The Subpoena seeks "Any and all documents evidencing all correspondences relating to and transactions to and from any and all accounts, including but not limited to checking accounts, savings accounts, brokerage accounts, retirement accounts, investment accounts, held in the name of Tony Bobulinski (SSN: xxx-xx-xxxx, DOB xx/xx/xxxx), including but not limited to bank statements, wire confirmations, copies of cancelled checks, signature cards, email

correspondence, from January 1, 2020 through the date of production." *See* Bisconti Decl. Ex. 1 (Citibank Subpoena).

Mr. Bobulinski was not personally served with notice of the Subpoena to Citibank. Instead, notice was sent to Mr. Bobulinski's attorneys in the Roseman Matter (and who represented him in the underlying proceedings in this case and on appeal of the judgment), but who do not represent him in connection with CBG's judgment collection and related discovery efforts. Bobulinski Decl. ¶ 2. Mr. Bobulinski was not personally served with notice of the Citibank Subpoena by CBG, and CBG's counsel did not ask or confirm whether Mr. Bobulinski's counsel in the Roseman Matter and underlying litigation in this case had authorization to accept service of the notice on Mr. Bobulinski's behalf. *Id.*

Although the Subpoena to Citibank has a return date of April 20, 2021, Mr. Bobulinski's counsel is informed that Citibank was not served with the Subpoena until April 20, 2021. Citibank further advised Mr. Bobulinski's counsel that the new response date for the Subpoena is May 4, 2021. Bisconti Decl. ¶ 4.

### F.   The YDS Subpoena.

Mr. Bobulinski once worked for YDS but has not worked for them since 2011. Bobulinski Decl. ¶ 3. On April 20, 2021, CBG issued a Subpoena to YDS, with a return date of May 10, 2021. Again, CBG provided notice to Mr. Bobulinski's attorneys in the Roseman Matter and underlying litigation without confirming their representation in the collection proceedings or authorization to accept such service. *Id.* ¶ 2. Mr. Bobulinski was not provided with notice of the YDS Subpoena personally. *Id.*

The YDS Subpoena seeks:

Any and all documents discussing, refencing [*sic*], concerning or relating to (1) Tony or Anthony Bobulinski (SSN: xxx-xx-xxxx, DOB xx/xx/xxxx) (Bobulinski) or (2) any entity in which Tony or Anthony Bobulinski in a manager, member, officer, director or maintains any ownership interest in (Bobulinski Related Entities) from January 1, 2019 through date of production.  Documents should include, but are not limited to, email exchanges with Bobulinski, payroll records or checks payable to

> Bobulinski or Bobulinski Related Entities, commission agreements, employment agreements, commission statements, independent contractor agreements, service agreements entered into or effect from January 1, 2019 through the date of production in which Bobulinski or Bobulinski Related Entities are a party.

Bisconti Decl. Ex. 2 (YDS Subpoena). As discussed below, once Mr. Bobulinski was able to retain undersigned counsel to represent him in connection with CBG's collection efforts, CBG's counsel advised Mr. Bobulinski's undersigned counsel that it had agreed to revise the YDS Subpoena request as follows (with the underlined language representing the amendment to the original request):

> Any and all documents discussing, refencing [*sic*], concerning or relating to payment for services or work rendered or provided by or payments due and owing to (1) Tony or Anthony Bobulinski (SSN: xxx-xx-xxxx, DOB xx/xx/xxxx) ("Bobulinski") or (2) any entity in which Tony or Anthony Bobulinski is a manager, member, officer, director or maintains any ownership interest in ("Bobulinski Related Entities") from January 1, 2019 through the date of production.  Documents should include, but are not limited to, email exchanges with Bobulinski regarding payments for services performed or provided to YDS Investments Co., payroll records or checks payable to Bobulinski or Bobulinski Related Entities, commission agreements, employment agreements, commission statements, independent contractor agreements, service agreements entered into or in effect from January 1, 2019 through the date of production in which Bobulinski or Bobulinski Related Entities are a party.

Bisconti Decl. Ex. 3 (4/29/2021 Email from 12:31 p.m.).

> **G.    Mr. Bobulinski obtains counsel for these collection proceedings, who promptly seeks an extension of the response deadlines for the Subpoenas to permit the parties to meet and confer.**

On April 28, 2021, Mr. Bobulinski obtained counsel to handle the collections issues, including this motion. Bobulinski Decl. ¶ 2. In light of the impending response deadlines on the Subpoenas, Mr. Bobulinski requested that CBG agree to voluntarily suspend or

continue the return deadlines for the Subpoenas so that the Subpoenas could be evaluated and, if necessary, the parties could meet and confer and proceed pursuant to Local Rule 37-1 *et seq. See* Bisconti Decl. ¶ 5 and Ex. 3. CBG initially indicated it would be willing to provide a short extension if Mr. Bobulinski provided preliminary concerns/objections with the Subpoenas to allow further time to meet and confer. Mr. Bobulinski thereafter provided the grounds for Mr. Bobulinski's objections, and the parties conferred regarding their respective positions. At that point, CBG indicated its understanding that once Mr. Bobulinski filed a motion to quash, it would automatically stay production pursuant to the subpoenas and, therefore, there was no need for CBG to voluntarily continue or suspend the return dates. *See id.* Ultimately, CBG took the position that Local Rule 37 did not apply to this Motion because the Subpoena was served pursuant to Rule 69, which is not one of the enumerated Rules to which Local Rule 37 appiles, such that a joint stipulation is not necessary and Mr. Bobulinski could proceed with filing a motion to quash. *Id.* CBG also acknowledged, however, that upon the filing of this motion, "any obligations to produce will be automatically stayed." Bisconti Dec. ¶ 5 and Ex. 3. In light of the foregoing, Mr. Bobulinski files this motion.

## III.   THE COURT SHOULD QUASH THE SUBPOENAS

Rule 26(c) of the Federal Rules of Civil Procedure provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . [and t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: "(A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or the location of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . ."

Fed. R. Civ. P. 26(c)(1).

Rule 45(d)(3) also provides that a court "must quash or modify a subpoena that: … (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

Good cause for a protective order quashing or modifying a subpoena therefore exists either "if the subpoenas seek irrelevant information," *Auto-Owners Ins. Co. v. Southeast Floating Dock, Inc.*, 231 F.R.D. 426, 428 (M.D. Fla. 2005), or "to prevent harm by limiting disclosure of relevant and necessary information," *Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F.3d 619, 622-623 (9th Cir. 1999) (quotation and citations omitted).

Under Rule 26, discovery is improper unless the information sought "is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(d)(1). However, "[i]f the party seeking discovery fails to show both the relevance of the requested information and the need for the material in developing its case, there is no reason for the discovery request to be granted . . . ." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 459 (C.D. Cal. 2002).

Additionally, the Court must limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. Proc. 26(b)(2)(C).

When the requested discovery does not indicate the relevance to the claims or defenses on its face, the requesting party has the burden of showing its relevance. *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003). Additionally, CBG has the burden of making a particularized showing of need, which is balanced against Mr. Bobulinski's rights, before it can obtain financial information or any other private

information protected under state law. *See Griffith v. State Farm Mut. Auto. Co.*, 230 Cal. App. 3d 59, 67-68 (1991).

### A. CBG did not first seek the requested information from Mr. Bobulinski and has not demonstrated a need to subpoena third parties.

Even if some portion of the discovery CBG seeks by its Subpoenas was marginally relevant and not protected by the California right to privacy (issues discussed below), CBG's Subpoenas are unjustifiable given CBG's failure to first attempt to obtain discovery from Mr. Bobulinski himself. CBG apparently targeted the third-parties Citibank and YDS to avoid dealing with Mr. Bobulinski directly, through which process Mr. Bobulinski would be able to ensure his private financial and other confidential information is properly protected from improper disclosure. The importance of affording Mr. Bobulinski the opportunity to protect is confidential information is readily apparent, given that CBG's collection efforts have already resulted in Mr. Bobulinski's confidential personal information being publicly filed in violation of his rights to privacy and Rule 5.2 of the Federal Rules of Civil Procedure.[2] To this end, prior to the filing of this motion the parties agreed to submit a stipulated protective order consistent with the Court's preferred form of protective order, which Mr. Bobulinski anticipates will be submitted to the Court shortly. *See* Bisconti Decl. ¶ 6.

Rule 26 instructs that the Court must limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action," and discovery is permitted only on any "nonprivileged matter that is relevant to any party's claim or defense and  proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether

---

[2] Mr. Bobulinski is separately filing an *ex parte* application to seal the improper disclosure of his private information.

MOTION TO QUASH SUBPOENAS SERVED ON (I) CITIBANK, N.A.  AND (II) YDS INVESTMENT COMPANY, LLC

the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C).

Under this rule, if the documents sought may be available from a party, they must first be obtained from the party pursuant to Rule 34 rather than subpoenaed from a nonparty witness. *See, e.g., Bada Co. v. Montgomery Ward & Co.*, 32 F.R.D. 208, 209-210 (S.D. Cal. 1963); *Medical Components, Inc. v. Classic Medical, Inc.*, 210 F.R.D. 175, 180, n.9 (M.D.N.C. 2002); Wright & Miller, 8A *Fed. Prac. & Proc., Civ.2d*, §2204 (1990). This is no different in the post-judgment scenario; "a judgment creditor must make a threshold showing of necessity and relevance when attempting to obtain discovery of a non-judgment debtor pursuant to Rule 69(a)." *Blaw Knox Corp. v. AMR Indus., Inc.*, 130 F.R.D. 400, 403 (E.D. Wis. 1990 (citing third party concerns).

CBG, however, issued the Subpoenas to Citibank and YDS, seeking Mr. Bobulinski's confidential account records, payment history, and information pertaining to irrelevant (and unknowing) third parties, all without requesting the information from Mr. Bobulinski first (or waiting for Mr. Bobulinski's responses). CBG could have sought the information requested by the Subpoenas from Mr. Bobulinski directly in the first instance, pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure. Indeed, CBG was required to do so. *See* Fed. R. Civ. P. 26(b); *see also Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014) ("If the party seeking information can easily obtain the same information without burdening the non-party, the court will quash the subpoena [. . .] A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same requests.").

"The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *High Tech med. Instrumentation, Inc. v. New Image Indsu., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995). Similarly, California law imposes limitations on third party post-judgment discovery. Cal. Civ. Proc. Code § 708.030 only permits post-judgment documentation production requests to be made to the judgment

debtor, not third parties. *See SCC Acquisitions, Inc. v. Superior Court*, 243 Cal. App. 4th 741, 752-53 (2015); Cal. Prac. Guide Enf. J. & Debt Ch. 6G-3; § 6:1391.8 ("A judgment creditor may serve inspection demands only upon the judgment debtor, not third persons").

By issuing the Subpoenas to third-parties Citibank and YDS, CBG is conducting an end-run of its duty to seek discovery from Mr. Bobulinski himself and meaningfully confer on any objections or ensure that to the extent any information is produced, it is pursuant to a valid protective order in the form already approved by this Court. CBG instead directly targeted Citibank and YDS to circumvent the glaring problems of relevance and the California right to privacy, as well as harass Mr. Bobulinski by demanding unfettered access to sensitive financial information.

Additionally, "[t]o obtain discovery from a nonparty, a judgment creditor must make a threshold showing. Under federal law, a judgment creditor must show (1) the necessity and relevance of [the] discovery sought or (2) that the relationship between the judgment debtor and the nonparty is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets." *NML Capital, Ltd. V. Republic of Argentina*, 2015 WL 1186548, at *6 (D. Nev. 2015). Post-judgment discovery must be "limit[ed]" and "must be relevant to the purpose of obtaining information on hidden or concealed assets, including assets that may have been fraudulently transferred." *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 926 F. 3d 251, 256 (5th Cir. 2019) (citations omitted). Here, there is no evidence of any attempt to hide money or improperly transfer it.

Under these circumstances, a protective order should be entered quashing the Subpoenas until CBG can show that it is necessary to seek information from third-parties Citibank and YDS.

### B.   CBG did not provide proper notice of the Subpoenas to Mr. Bobulinski.

Before serving the Subpoenas on Citibank and YDS, CBG was required to serve notice of the Subpoenas on Mr. Bobulinski. *See* Fed. R. Civ. P. 45(a)(4); Cal. Civ. Proc. Code § 2025.240(a). Here, while CBG mailed notice of the Subpoenas on Mr. Bobulinski's attorneys in the Roseman Matter and who handled the underlying litigation (and appeal

therefrom), these attorneys had not agreed to represent Mr. Bobulinski post-judgment in his capacity as judgment debtor. CBG did not confirm whether those attorneys were authorized to accept service of the Subpoenas on Mr. Bobulinski's behalf. Accordingly, the Court should quash the Subpoenas for failure to provide the requisite notice to Mr. Bobulinski. *See, e.g., Bronson v. Henry Ford Health Sys.*, 2016 WL 3197555, at *2 (E.D. Mich. June 9, 2016) (granting motion to quash for failing to comply with Rule 45(a)(4)); *Solais v. Vesuvio's II Pizza & Grill, Inc.*, 2015 WL 6110859, at *15 (M.D. N.C. Oct. 16, 2015) (same) (collecting cases); *Mirra v. Jordan*, 2014 WL 2511020, at *3 (S.D. N.Y. May 28, 2014) (quashing subpoenas for failure to comply with Rule 45(a)(4) on the ground that "the notice provision is mandatory and failure to abide by this requirement constitutes grounds to quash a subpoena").

## C. The Subpoenas seek information protected by the California right of privacy.

CBG's Subpoenas should also be quashed because they seek information protected by the right of privacy under California state law, and CBG failed to follow the proper procedures required for such Subpoenas in any event. California privacy protections apply to this case because Rule of Evidence 501 states in pertinent part:

[I]n a civil case, state law governs privilege regarding a claim or defense

for which state law supplies the rule of decision.

Here, CBG filed the complaint pursuant to California Code of Civil Procedure section 1713 *et seq. See* Dkt. No. 1 at ¶ 1. The Court granted CBG's third summary judgment motion under that statute. *See* Dkt. No. 63. California privacy protections therefore apply.

A party's confidential financial information is "presumptively privileged" under Article 1, section 1 of the California Constitution. *Davis v. Leal*, 43 F. Supp. 2d 1102, 1110-11 (E.D. Cal. 1999); *accord Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 656-57, 125 Cal. Rptr. 553 (1975) (recognizing presumptive privilege in confidential financial affairs under state constitutional privacy right, despite omission from state evidence code); *Gordon v. Superior Court*, 65 Cal. Rptr. 2d 53, 55 Cal. App. 4th 1546 (1997).  Discovery

of such matters is allowed only when the requesting party makes a "particularized showing of need" and that "compelling public need" for discovery outweighs the fundamental right of privacy. *Griffith*, 230 Cal. App. 3d at 67-68; *Paul v. Superior Court*, 2012 WL 5380921, at *3 (Cal. App. Nov. 2, 2012) (unpublished). It is not enough that the matters sought to be discovered "might" lead to other relevant evidence. *Paul*, 2012 WL 5380921, at *2.

CBG cannot show any compelling need that overcomes Mr. Bobulinski's right to privacy in his confidential financial records held by Citibank and YDS. Even if CBG had issued narrower subpoenas to Citibank and YDS, CBG can show no "need" to subpoena that information from these third parties having not even sought or awaited timely responses to discovery from Mr. Bobulinski himself.

In addition to the state constitutional privilege held by Mr. Bobulinski, California statute additionally protects Mr. Bobulinski's privacy interest in his personal records by prohibiting the third parties from producing them unless CBG complies with certain notice requirements and the Court rules on this motion. *See* Cal. Code Civ. Proc. § 1985.3; *see also Corser v. County of Merced*, 2006 WL 2536622, at *2 (E.D. Cal. Aug. 31, 2006) (assuming that section 1985.3 states a state law privilege, but holding it did not apply to case under Rule of Evidence 501 because federal law, not state law, provided rule of decision). CBG appears to have served the Subpoenas immediately upon Citibank and YDS without first serving Mr. Bobulinski with (i) the Subpoenas, (ii) an affidavit supporting the issuance of the Subpoenas, or (iii) the notice and statutorily required information at least five days earlier. *See* Cal. Code Civ. Proc. § 1985.3(b)(3) § 1985.3(e). California law prohibits Citibank and YDS from producing Mr. Bobulinski's records unless and until the Court orders production. *See* Cal. Code Civ. Proc. § 1985.3(g).

In short, the records requested in CBG's Subpoenas to Citibank and YDS also seek unwarranted discovery Mr. Bobulinski's confidential financial information protected by the California right of privacy. Since CBG can make no particularized showing of need for that information from third parties that outweighs Mr. Bobulinski's privacy interests, its Subpoenas should be quashed.

**D.     The Subpoenas seek irrelevant information.**

The Court should also quash the Subpoenas because they seek irrelevant information, and therefore exceed the scope of permissible discovery. As noted above, post-judgment discovery from third parties is limited to identification of hidden or concealed assets, and there must be a showing made to support the same. *DataTreasury Corp.*, 926 F. 3d at 256. Here, there are no such allegations made against Mr. Bobulinski. Indeed, Mr. Bobulinski is not a typical judgment debtor—it is undisputed that he loaned substantial sums to CBG, which have never been repaid. The judgment against Mr. Bobulinski stems from the legal fees and costs incurred in connection with his efforts to enforce the debt *owed to him*— which he was ultimately unable to do because of Roseman's misrepresentations. This is not a case where the judgment debtor improperly took money and absconded with it or has demonstrated some other risk of concealing assets.

Furthermore, there is no reasonable basis for CBG to subpoena Citibank. CBG has had a pre-judgment attachment order in place since October 2020. *See* Dkt. No. 40. Additionally, CBG has already levied Mr. Bobulinski's Citibank account. *See* Dkt. No. 82. As a result, CBG does not need the information sought by the subpoena to Citibank in aid of its judgment or execution, because CBG has already taken enforcement actions against Mr. Bobulinski's account at Citibank. Accordingly, the discovery sought by the Citibank Subpoena is not proportional to the needs of the case, is harassing, and imposes an undue burden. Fed. R. Civ. P. 26(b)(1).

The same is true as to the Subpoena to YDS, even as purportedly revised by CBG.[3] As drafted, the request seeks wide swaths of information ("[a]ny and all documents discussing, referencing, concerning or relating to payment for services or work rendered or provided by or payments due and owing to") not only about Mr. Bobulinski, but unrelated third parties, including entities in which Mr. Bobulinski does not even maintain an interest (e.g., any entity in which Mr. Bobulinski was a manager, officer, or director, even if he does

---

[3] Mr. Bobulinski has not received notice of any revised subpoena to YDS, and bases the "narrowed" request to YDS based on the representation of CBG's counsel.

not have an ownership interest). As to Mr. Bobulinski, he has not worked for YDS for a decade, so there will be nothing relevant to CBG's collection efforts in that regard. As to third parties, post-judgment discovery into a non-party's assets is generally not permitted (absent a showing of an alter ego relationship with the debtor as described above). "The[] rules do not [] give to a judgment creditor any right to subject to the judgment the property of persons other than the judgment debtor, nor to require the disclosure of assets of persons other than the judgment debtor […] [nonparties] cannot be required, by the Rules of Civil Procedure referred to, to make disclosure of their individual assets." *Burak v. Scott*, 29 F. Supp. 775, 776 (D.D.C. 1939); "The general rule is that non-party discovery is limited to a search for the defendant's hidden assets." *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 361 (S.D.N.Y. 2014). "[A] third party inquiry must be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment, [and] inquiry into the assets of third persons is [only] permissible where the relationship between the judgment debtor and third person is sufficient to raise a reasonable doubt about the bona fides of any transfer of assets between them." *Internet Direct Response, Inc. v. Buckley*, 2010 WL 1752181 at *2 (C.D. Cal. 2010).

Accordingly, the Subpoenas seek information beyond the permissible limits of discovery, even in the post-judgment context, and must be quashed.

## IV.   CONCLUSION

For the foregoing reasons, the Court should quash the Subpoenas. Alternatively, if the Court believes the parties must comply with Local Rule 37, the Court should issue an order staying the Subpoenas pending the resolution of a regularly noticed motion made pursuant to Local Rule 37.

Dated: May 3, 2021

**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
By: /s/ Anthony R. Bisconti
    Anthony R. Bisconti
    Attorneys for Defendant
    Tony Bobulinski

MOTION TO QUASH SUBPOENAS SERVED ON (I) CITIBANK, N.A.  AND (II) YDS INVESTMENT COMPANY, LLC

# CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and I am a resident and employed in Los Angeles County, California; that my business address is 601 W. 5th Street, Ste. 720, Los Angeles, California 90071; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court for the Central District of California, and at whose direction I caused service of the foregoing document **NOTICE OF MOTION AND MOTION TO QUASH SUBPOENAS SERVED ON (I) CITIBANK, N.A. AND (II) YDS INVESTMENT COMPANY, LLC; DECLARATIONS OF ANTHONY R. BISCONTI AND TONY BOBULINSKI IN SUPPORT THEREOF; [PROPOSED] ORDER** on all interested parties as follows:

**[X]** **BY ELECTRONIC TRANSMISSION:** by electronically filing the foregoing with the Clerk of the District Court using its CM/ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies all parties in this case, or via E-mail at the addresses below:

Mariko Taenaka (mt@robertwcohenlaw.com)
Robert W. Cohen (rwc@robertwcohenlaw.com)

**[ ]** **BY MAIL** - I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 3, 2021 at Los Angeles, California.

/s/ Elizabeth Garcia
Elizabeth Garcia