Anthony R. Bisconti (SBN 269230)
tbisconti@bienertkatzman.com
**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
601 W. 5th Street, Ste. 720
Los Angeles, CA 90071
Telephone (213) 528-3400
Facsimile (949) 369-3701

Attorneys for Defendant Tony Bobulinski

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

CHINA BRANDING GROUP LIMITED
(IN OFFICIAL LIQUIDATION), by and
through its Joint Official Liquidators, Hugh
Dickson of Grant Thornton Specialist
Services (Cayman), Limited and David
Bennett of Grant Thornton Recovery &
Reorganisation Limited,

       Plaintiff,

v.

TONY BOBULINSKI

       Defendant.

Case No.: 2:20-CV-06759 RGK (JC)
Hon. R. Gary Klausner
Presiding Judge

Hon. Jacqueline Chooljian,
Magistrate Judge

**NOTICE OF MOTION AND
MOTION TO QUASH SUBPOENA
ISSUED TO DEFENDANT TONY
BOBULINSKI AND FOR
PROTECTIVE ORDER LIMITING
DISCOVERY; DECLARATION OF
ANTHONY R. BISCONTI IN
SUPPORT THEREOF;
[PROPOSED] ORDER**

[Submitted to Hon. Jacqueline
Chooljian, United States Magistrate
Judge, Crtrm 750]

Hearing Information:
Date:   July 13, 2021
Time:   10:30 a.m.
Crtrm:  750

Action filed:      July 28, 2020

1

TO PLAINTIFF CHINA BRANDING GROUP LIMITED (IN OFFICIAL LIQUIDATION), THE HONORABLE JACQUELINE CHOOLJIAN, UNITED STATES MAGISTRATE JUDGE, AND ANY OTHER PARTY ENTITLED TO NOTICE:

PLEASE TAKE NOTICE that on July 13, 2021, at 10:30 a.m. in Courtroom 750 in the Roybal Federal Building and United States Courthouse, located at 255 E. Temple Street, Los Angeles, California 90012, Defendant Tony Bobulinski ("Defendant" or "Mr. Bobulinski") will move the Court for an order prohibiting or otherwise limiting the production or other disclosure of the materials, or portions thereof, requested in a subpoena (the "Subpoena") issued by Plaintiff China Branding Group, Limited (In Official Liquidation) ("Plaintiff" or "CBG") to Mr. Bobulinski.

Mr. Bobulinski's motion is based upon this notice, the attached Memorandum of Points and Authorities, the attached declaration of Anthony R. Bisconti (the "Bisconti Decl."), all files and pleadings in this matter, and all other matters of which this Court may take judicial notice.

Dated: June 21, 2021

BIENERT KATZMAN LITTRELL WILLIAMS LLP
By: /s/ Anthony R. Bisconti
    Anthony R. Bisconti
    Attorneys for Defendant
    Tony Bobulinski

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On April 14, 2021, CBG[1] issued the Subpoena to Mr. Bobulinski. The Subpoena calls for the production of thirty (30) separate categories of documents that were to be produced at the same time and place of a previously scheduled judgment debtor examination ("JDE"). On June 14, 2021, the Court granted Mr. Bobulinski's application to continue the JDE and extend the time to respond to the Subpoena (the "June 14 Order"). *See* Dkt. 110. The Court set a conferral and briefing schedule to resolve objections to the Subpoena. *See id.* at ¶ 3. If Mr. Bobulinski posts a bond in the amount of the judgment plus two years' worth of judgment interest at any point, schedule and hearing will be mooted or vacated. *Id.*

While the parties met and conferred regarding the Subpoena and were able to resolve several of their disputes, certain disputes remain unresolved. Mr. Bobulinski accordingly makes this motion to quash and for a protective order limiting discovery with respect to Request Nos. 3, 6, 9, 11, 12, 18, and 20-30 of the Subpoena. *See* Bisconti Decl. Ex. 1 (Subpoena). These requests either seek disclosure of protected information without the requisite showing by CBG, seek irrelevant information, or improperly seek information and documents concerning the financial affairs of non-debtor third parties.

Accordingly, and as explained more fully below, the Court should enter a protective order quashing or limiting the Subpoena with respect to these requests.

### II.   RELEVANT BACKGROUND

#### A.   Mr. Bobulinski loans $650,000 to CBG based on its CEO's representations.

In or around March 2015, former CEO of CBG Adam Roseman ("Roseman") solicited Mr. Bobulinski for a loan to CBG to bridge it to sale. Mr. Bobulinski entered a Senior Secured Convertible Promissory Note (the "Note") for $500,000, and a Pledge Agreement (the "Pledge") with CBG, based on Roseman's assurances that (i) the Note was

---

[1] Capitalized terms have the meaning given to them in the Notice accompanying this memorandum unless otherwise specifically defined.

secured by CBG's considerable assets in the United States ("Collateral"), (ii) Mr. Bobulinski would receive a 2.5 multiplier of his principal, and (iii) Mr. Bobulinski would have the right to approve any sale of CBG. *See* Dkt. No. 1-2 ("Cayman Judgment") ¶¶ 7-8, 57. Mr. Bobulinski would not have entered the Note or Pledge absent these assurances. *Id.* ¶ 57. Section 7 of the Pledge required CBG to obtain Mr. Bobulinski's written consent before it could transfer or sell any part of the Collateral. *Id.* ¶¶ 128, 144.

In the Fall of 2015, Mr. Bobulinski introduced Roseman to Shing Tao of Remark Media, Inc. ("Remark"), who expressed interest in buying CBG. *See* Cayman Judgment ¶¶ 15, 121. On or about April 11, 2016, based on Roseman's continuing assurances, Mr. Bobulinski agreed to loan an additional $150,000 to CBG as a bridge to sale. *Id.* ¶¶ 12-13.

SIG, one of CBG's creditors, opposed the sale. *Id.* ¶ 16. To obstruct SIG's blocking rights, in the Spring of 2016, CBG's largest creditor, Hickory Grove, entered a winding up petition in the Cayman Islands for a provisional liquidation. *Id.* ¶ 17. SIG filed suit in the Cayman Islands, and the Cayman court ordered CBG into official liquidation instead. *Id.* ¶¶ 17-18. Ultimately, Joint Official Liquidators ("JOLs") were appointed to begin the liquidation process. *Id.* ¶ 18.

**B.    The Cayman proceedings and Judgment by this Court.**

In April 2017, Mr. Bobulinski submitted a proof of debt for $1,625,000 ("Proof of Debt Claim"). Cayman Judgment ¶¶ 56, 126. The JOLs rejected the claim and argued Mr. Bobulinski was only entitled to his $650,000 principal, and a $224,775 finder's fee for finding Remark as a buyer for CBG, on the grounds that the Note was not secured by the Collateral, as Roseman had said it was. *Id.* ¶¶ 72, 79, 148. On January 23, 2019, the Cayman Court issued the Cayman Judgment, rejecting Mr. Bobulinski's appeal of the denial of his Proof of Debt Claim.  *See* Dkt. No. 1-2. The Cayman Court issued three Cost Certificates against Mr. Bobulinski, as follows: (1) November 13, 2018, in the amount of $56,431.82, (2) January 8, 2019, in the amount of $57,208.58; and (3) February 5, 2019, in the amount of $562,170.94. *See* Dkt. Nos. 1-1 and 1-3 (Cost Certificates).

On July 28, 2020, CBG, by and through the JOLs, filed this case against Mr. Bobulinski seeking recognition of the Cost Certificates. Dkt. 1. On January 25, 2021, the Court granted CBG's third motion for summary judgment (the "Order"). *See* Dkt. No. 63. On February 18, 2021, the Court entered Judgment against Mr. Bobulinski in the amount of $662,855.95, plus costs of suit (the "Judgment"). Dkt. 65. The Judgment is on appeal.

### C.   Mr. Bobulinski sues Roseman and discovers new information.

On February 21, 2019, Mr. Bobulinski sued Roseman for (1) fraud in the inducement, (2) negligent misrepresentation, and (3) breach of fiduciary duty (the "Roseman Matter").[2] Through recently obtained discovery in the Roseman Matter, Mr. Bobulinski obtained new information concerning CBG's transfer of the assets that constituted the Collateral to its subsidiaries, including RAAD Productions LLC ("RAAD"), on the eve of the sale of CBG to Remark, without Mr. Bobulinski's knowledge or consent and in violation of the Pledge. In addition, through another agreement, RAAD, which was only an "affiliate" of CBG, was made a wholly owned subsidiary of CBG the day before the sale of CBG.  Roseman entered all these assignments and transfer agreements with the JOLs without informing Mr. Bobulinski.  The transfers allowed the JOLs to argue, and the Cayman court to find, that "there is no evidence that the Company [CBG] had any assets falling within the operative part of the definition of the Collateral in the Pledge, i.e., content library, license agreements, and physical assets such as production equipment in the United States . . . the United States content was owned by RAAD."

### D.   CBG issues the Subpoena and the Court issues the June 14 Order.

According to the face of the Subpoena, CBG issued it on April 14, 2021. Bisconti Decl. Ex. 1. However, CBG claimed that it did not serve the Subpoena (along with the order setting the JDE) until May 23, 2021. *See* Dkt. 98-99. On June 4, 2021, Mr. Bobulinski moved *ex parte* to continue the JDE and Subpoena response deadline. The Court denied that application without prejudice, and on June 11, 2021, Mr. Bobulinski submitted a second

---

[2] Case No. 2:19-cv-02963 MWF-JPR in the Central District of California.

application to continue the JDE and Subpoena response deadline. After requiring further submissions from the parties, *see* Dkt. Nos. 107-109, the Court entered the June 14 Order.

Consistent with the Court's June 14 Order, the parties then met and conferred regarding the Subpoena. Bisconti Decl. ¶ 3. The parties were able to resolve several of their disputes, but several disputes remain with respect to certain of the Subpoena's requests. *Id.* Specifically, the parties did not resolve Mr. Bobulinski's objections with respect to Request Nos. 3, 6, 9, 11, 12, 18, and 20-30. *Id.* Additionally, the parties did not agree on the relevant time period for the requests. Mr. Bobulinski's position is that the relevant period should be limited to January 1, 2019, as the final cost certificate (on which the Judgment is premised) was not entered until February 5, 2019; a number of CBG's requests have no time limitation or seek records from January 1, 2018 forward.

## III.    THE COURT SHOULD LIMIT THE SUBPOENA

Rule 26(c) of the Federal Rules of Civil Procedure provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . [and t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: "(A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or the location of expenses, for the disclosure or discovery; (C) prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way . . . ." Fed. R. Civ. P. 26(c)(1).

Additionally, the Court must limit discovery if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. Proc. 26(b)(2)(C).

4

Rule 45(d)(3) also provides that a court "must quash or modify a subpoena that: … (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

Good cause for a protective order quashing or modifying a subpoena therefore exists either "if the subpoenas seek irrelevant information," *Auto-Owners Ins. Co. v. Southeast Floating Dock, Inc.*, 231 F.R.D. 426, 428 (M.D. Fla. 2005), or "to prevent harm by limiting disclosure of relevant and necessary information," *Cacique, Inc. v. Robert Reiser & Co., Inc.*, 169 F.3d 619, 622-623 (9th Cir. 1999) (quotation and citations omitted).

Under Rule 26, discovery is improper unless the information sought "is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(d)(1). However, "[i]f the party seeking discovery fails to show both the relevance of the requested information and the need for the material in developing its case, there is no reason for the discovery request to be granted . . . ." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 459 (C.D. Cal. 2002).

"The[] rules do not [] give to a judgment creditor any right to subject to the judgment the property of persons other than the judgment debtor, nor to require the disclosure of assets of persons other than the judgment debtor […] [nonparties] cannot be required, by the Rules of Civil Procedure referred to, to make disclosure of their individual assets." *Burak v. Scott*, 29 F. Supp. 775, 776 (D.D.C. 1939); "The general rule is that non-party discovery is limited to a search for the defendant's hidden assets." *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 361 (S.D.N.Y. 2014). "[A] third party inquiry must be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment, [and] inquiry into the assets of third persons is [only] permissible where the relationship between the judgment debtor and third person is sufficient to raise a reasonable doubt about the bona fides of any transfer of

assets between them." *Internet Direct Response, Inc. v. Buckley*, 2010 WL 1752181 at *2 (C.D. Cal. 2010).

As set forth below, the Court should limit discovery with respect to Request Nos. 3, 6, 9, 11, 12, 18, and 20-30 of the Subpoena.

## A.     Request No. 6.

The Subpoena's sixth request, and Mr. Bobulinski's objection thereto, are set forth below:

> Request No. 6:  All tax returns filed by YOU with any governmental body for the years 2018 through the present.

> Mr. Bobulinski's Objection to Request No. 6: Mr. Bobulinski further objects to this request on the grounds that it seeks personal or sensitive information protected by privacy rights afforded to Mr. Bobulinski and others, protected proprietary or business information, and/or protected tax and financial information. Mr. Bobulinski further objects to this request on the grounds that it seeks documents that are not reasonably calculated to lead to the discovery of assets for execution. Mr. Bobulinski further objects to this request to the extent it seeks documents that are protected by any recognized privileges, or information that is otherwise confidential. Mr. Bobulinski also objects to the time frame of the request.

CBG has the burden of making a particularized showing of need, which is balanced against Mr. Bobulinski's rights, before it can obtain financial information or any other private information protected under state law. *See Griffith v. State Farm Mut. Auto. Co.*, 230 Cal. App. 3d 59, 67-68 (1991). A party's confidential financial information is "presumptively privileged" under Article 1, section 1 of the California Constitution. *Davis v. Leal*, 43 F. Supp. 2d 1102, 1110-11 (E.D. Cal. 1999); *accord Valley Bank of Nevada v. Superior Court*, 15 Cal. 3d 652, 656-57, 125 Cal. Rptr. 553 (1975); *Gordon v. Superior Court*, 65 Cal. Rptr. 2d 53, 55 Cal. App. 4th 1546 (1997).  Discovery of such matters is allowed only when the requesting party makes a "particularized showing of need" and that "compelling public need" for discovery outweighs the fundamental right of privacy. *Griffith*, 230 Cal. App. 3d at 67-68; *Paul v. Superior Court*, 2012 WL 5380921, at *3 (Cal.

App. Nov. 2, 2012) (unpublished).  It is not enough that the matters sought to be discovered "might" lead to other relevant evidence. *Paul*, 2012 WL 5380921, at *2.

Additionally, courts are typically reluctant to require disclosure of tax returns because of both "the private nature of the sensitive information contained therein" and "the public interest in encouraging the fling by tax payers of complete and accurate returns." *Smith v. Bader*, 83 F.R.D. 437, 438 (S.D.N.Y. 1979). Indeed, the Ninth Circuit has found that "a public policy against unnecessary public disclosure [of tax returns] arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975). "Accordingly, the Court may only order the production of plaintiff's tax returns if they are relevant and when there is a compelling need for them because the information sought is not otherwise available." *Aliotti v. The Vessel Sonora*, 217 F.R.D. 496, 497–98 (N.D.Cal.2003).

Here, CBG can make no showing of a compelling reason to require the disclosure of Mr. Bobulinski's tax returns. The information contained in Mr. Bobulinski's tax returns may be readily available in other documents requested by CBG. For example, request number four (4) in the Subpoena seeks documents relating to Mr. Bobulinski's income. There is no reason to require disclosure of Mr. Bobulinski's sensitive private tax information in this case. Accordingly, the Court should limit the Subpoena by ruling that CBG is not entitled to Mr. Bobulinski's tax returns.

### B.   Request Nos. 11, 12, and 18.

The Subpoena's eleventh, twelfth, and eighteenth requests, and Mr. Bobulinski's objections thereto, are set forth below:

Request No. 11:  The lease or rental agreement for YOUR current residence.

Mr. Bobulinski's Objection to Request No. 11: Mr. Bobulinski objects to this request on the grounds that it seeks documents that are not reasonably calculated to lead to the discovery of assets for execution.

Request No. 12:  All documents evidencing life insurance policies in which YOU are named as an owner, insured or beneficiary.

Mr. Bobulinski's Objection to Request No. 12: Mr. Bobulinski objects to this request as being overbroad, unduly burdensome, invasive, harassing, and oppressive. Mr. Bobulinski further objects to this request on the grounds that it seeks documents that are not reasonably calculated to lead to the discovery of assets for execution.

Request No. 18:  All statements from IRAs, 401ks, Keogh, Profit Sharing or other pension or retirement funds held in YOUR name or in which YOU have an interest.

Mr. Bobulinski's Objection to Request No. 18: Mr. Bobulinski objects to this request as being overbroad, unduly burdensome, invasive, harassing, and oppressive. Mr. Bobulinski further objects to this request as being vague and ambiguous, including but not limited to with respect to the phrase "in which you have an interest." Mr. Bobulinski further objects to this request on the grounds that it seeks personal or sensitive information protected by privacy rights afforded to Mr. Bobulinski and others, protected proprietary or business information, and/or protected tax and financial information. Mr. Bobulinski further objects to this request on the grounds that it seeks documents that are not reasonably calculated to lead to the discovery of assets for execution.

With respect to Request No. 11, Mr. Bobulinski should not be required to produce documents related to the lease of his current residence, because such information is not reasonably calculated to lead to the discovery of admissible evidence relevant to the location of Mr. Bobulinski's assets or source of those assets.

With respect to Requests Nos. 12 and 18, these requests seek discovery concerning life insurance policies and retirement accounts. Judgment Creditors, such as CBG, may only obtain discovery "to locate non-exempt assets held by the judgment debtor." *Laufman v. Elliston*, 2008 WL 681829, AT *4 (D. Ariz. Mar. 7, 2008). Retirement accounts and life insurance policies are generally exempt. *See* Cal. Code Civ. Pro. §704.115 (retirement accounts); Cal. Code Civ. Pro. § 704.100 (life insurance). Because these requests seek discovery into exempt assets, Mr. Bobulinski should not be required to produce any documents or evidence in response to these requests.

8

### C.     Request Nos. 3, 9, 20 through 30.

The parties were also unable to resolve Mr. Bobulinski's objections to Request Nos. 3, 9 and 20 through 30. These requests are reproduced below. Because Mr. Bobulinski's objections to these requests is materially identical, it is reproduced only once following the requests for purposes of efficiency:

Request No. 3:   All employment agreements, independent contractor agreements, commission agreements or any other agreements in which YOU or an entity owned by YOU is a party and provides a service for which YOU or YOUR entity is compensated.

Request No. 9:   All documents including but not limited to mortgage statements and appraisals evidencing or relating to all real estate held in YOUR name or in which YOU maintain an interest.

Request No. 20:   All documents evidencing or relating to YOUR ownership interest in any corporation, LLC, LP, partnership or other business entity.

Request No. 21:   All monthly and periodic statements from and after January 1, 2018 related to all bank accounts, savings accounts, checking account, savings and loan account, credit union accounts, brokerage and investment accounts, and all accounts from any other financial institution held in the name of any corporation, LLC, LP, partnership or other business entity in which you maintain an interest.

Request No. 22:    All tax returns for any corporation, LLC, LP, partnership or other business entity in which you maintain an interest filed with any governmental body from 2018 to the present.

Request No. 23:   All financial statements for any corporation, LLC, LP, partnership or other business entity in which you maintain an interest, for the period beginning January 1, 2018 to the present.

Request No. 24:    All general ledger reports for any corporation, LLC, LP, partnership or other business entity in which you maintain an interest, for the period beginning January 1, 2018 to the present.

Request No. 25:    All profit and loss statements for any corporation, LLC, LP, partnership or other business entity in which you maintain an interest, for the period beginning January 1, 2018 to the present.

Request No. 26:    All trial balance statements for any corporation, LLC, LP, partnership or other business entity in which you maintain an interest, for the period beginning January 1, 2018 to the present.

Request No. 27:    All documents evidencing or relating to accounts receivable for any corporation, LLC, LP, partnership or other business entity in which you maintain an interest, for the period beginning January 1, 2018 to the present.

Request No. 28:    All documents evidencing or relating to services performed by any corporation, LLC, LP, partnership or other business entity in which you maintain an interest, for the period beginning January 1, 2018 to the present.

Request No. 29:    All documents evidencing or relating to real, personal or intangible property owned by or held in the name of any corporation, LLC, LP, partnership or other business entity in which you maintain an interest, for the period beginning January 1, 2018 to the present.

Request No. 30:   All documents that identify YOUR business associates by name, address and telephone number.

Mr. Bobulinski's Objection: Mr. Bobulinski objects to this request as being overbroad, unduly burdensome, invasive, harassing, and oppressive. Mr. Bobulinski further objects to this request as being vague and ambiguous, including but not limited to with respect to the phrases "evidencing or relating to" and "in which you maintain an interest." Mr. Bobulinski further objects to this request on the grounds that it seeks personal or sensitive information protected by privacy rights afforded to Mr. Bobulinski and others, protected proprietary or business information, and/or protected tax and financial information. Mr. Bobulinski further objects to this request on the grounds that it seeks documents that are not reasonably calculated to lead to the discovery of assets for execution. Mr. Bobulinski further objects to this request to the extent it seeks documents that are protected by any recognized privileges, or information that is otherwise confidential. Mr. Bobulinski further objects to this request as seeking discovery from and related to nonparties to this case, including financial information of third parties. Mr. Bobulinski also objects to the time frame of the request.

These requests impermissibly seek information concerning the assets and finances of non-judgment debtor third parties, including tax returns, financial statements, and profit and

loss statements of third parties. Rule 69 does not permit CBG to inquire and obtain the financial documents of third parties; the law is clear that the private and confidential financial information of non-debtor third parties deserves extra protection from the courts. *High Tech med. Instrumentation, Inc. v. New Image Indsus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995). While a judgment creditor can typically inquire into a third party's knowledge of the judgment debtor's assets, "inquiry into the assets and finances of the third party is not permitted." *Textron Financial Corp. v. Gallegos*, 2016 WL 4077505 at *4 (S.D. Cal. Aug. 1 2016). Rather, post-judgment discovery into the assets of a non-party requires "a somewhat heightened showing of necessity and relevance" through some demonstration of concealed or fraudulent transfers or an alter ego relationship. *Sherbank of Russia v. Traisman*, 2016 WL 4479533 (D. Conn. Aug. 23, 2016) (citation omitted).

Additionally, to obtain discovery into the finances of nonparties, "a judgment creditor must make a threshold showing. Under federal law, a judgment creditor must show (1) the necessity and relevance of [the] discovery sought or (2) that the relationship between the judgment debtor and the nonparty is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets." *NML Capital, Ltd. V. Republic of Argentina*, 2015 WL 1186548, at *6 (D. Nev. 2015); *see also Magnaleasing Inc. v. State Island Mall*, 76 F.R.D. 559, 561-62 (S.D.N.Y. 1977); *Falicia v. Advanced Tenant Srvcs., Inc.*, 235 F.R.D. 5, 9 (D.C. 2006).  Post-judgment discovery into the affairs of third-parties must be "limit[ed]" and "must be relevant to the purpose of obtaining information on hidden or concealed assets, including assets that may have been fraudulently transferred." *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 926 F. 3d 251, 256 (5th Cir. 2019) (citations omitted).

Here, there is no evidence of any attempt to hide money or improperly transfer it. Rather, it is undisputed that Mr. Bobulinski loaned substantial sums to CBG, which have never been repaid. The judgment against Mr. Bobulinski stems from the legal fees and costs incurred in connection with his efforts to enforce the debt *owed to him*—which he was ultimately unable to do because of Roseman's misrepresentations. This is not a case where the judgment debtor improperly took money and absconded with it or has demonstrated

some other risk of concealing assets. There is no basis for CBG to inquire into the finances of third parties, as these requests seek to do.[3]

Finally, Request No. 30 seeks a list of Mr. Bobulinski's "business associates." That term is completely vague and could mean anyone and everyone that Mr. Bobulinski has ever interacted with on a business matter. Not only is this unduly broad, but it is not reasonably calculated to identify assets subject to execution. Rather, it appears designed to provide CBG with the a mechanism to harass Mr. Bobulinski and interfere with his business by indiscriminately contacting those with whom he may have dealt with at some unspecified time on anything that may constitute a business matter. This far exceeds the scope of permissible discovery under Rule 69.

Accordingly, the Court should limit the Subpoena with respect to these requests. If CBG comes into any evidence in the future that would warrant seeking discovery into the financial affairs and assets of non-debtor third parties, it should be required to make that showing with specific evidence as to specific third parties.

## IV.    CONCLUSION

For the foregoing reasons, the Court should quash the Subpoena and issue a protective order limiting the Subpoena to the extent set forth above.


Dated: June 21, 2021                    **BIENERT KATZMAN**
                                        **LITTRELL WILLIAMS LLP**
                                        By: */s/ Anthony R. Bisconti*
                                               Anthony R. Bisconti
                                               *Attorneys for Tony Bobulinski*

---

[3] Additionally, as noted in Mr. Bobulinski's objection to these requests, they are extremely overbroad. As drafted they seek all of the requested information with respect to any entity in which Mr. Bobulinski has any type of interest, regardless of the size or nature of his position.

**CERTIFICATE OF SERVICE**

I declare that I am a citizen of the United States and I am a resident and employed in Los Angeles County, California; that my business address is 601 W. 5th Street, Ste. 720, Los Angeles, California 90071; that I am over the age of 18 and not a party to the above-entitled action.

I am employed by a member of the United States District Court for the Central District of California, and at whose direction I caused service of the foregoing document **NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA ISSUED TO DEFENDANT TONY BOBULINSKI AND FOR PROTECTIVE ORDER; DECLARATION OF ANTHONY R. BISCONTI IN SUPPORT THEREOF; [PROPOSED] ORDER** on all interested parties as follows:

**[X]   BY ELECTRONIC TRANSMISSION:** by electronically filing the foregoing with the Clerk of the District Court using its CM/ECF System pursuant to the Electronic Case Filing provision of the United States District Court General Order and the E-Government Act of 2002, which electronically notifies all parties in this case, or via E-mail at the addresses below

Mariko Taenaka (mt@robertwcohenlaw.com)
Robert W. Cohen (rwc@robertwcohenlaw.com)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 21, 2021 at Los Angeles, California.

/s/ Elizabeth Garcia
Elizabeth Garcia